M. ANDERSON BERRY (262879)
GREGORY HAROUTUNIAN (330263)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Facsimile: (916) 924-1829
*aberry@justice4you.com*
*gharoutunian@justice4you.com*

TERENCE R. COATES (*pro hac vice* forthcoming)
**MARKOVITS, STOCK & DEMARCO, LLC**
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Phone: (513) 665-0204
Fax: (513) 665-0219
*tcoates@msdlegal.com*

JOSEPH M. LYON (*pro hac vice* forthcoming)
**THE LYON FIRM, LLC**
2754 Erie Avenue
Cincinnati, OH 45208
Phone: (513) 381-2333
Fax: (513) 721-1178
*jlyon@thelyonfirm.com*

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELIA REMOUNDOS, JOHN BIEGGER, and ANNE BIEGGER, on behalf of themselves and on behalf of all others similarly situated, | Case No.: 4:22-cv-00749 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| LENDUS, LLC, | DEMAND FOR JURY TRIAL |
| Defendant. | |

Plaintiffs Evangelia Remoundos, John Biegger, and Anne Biegger ("Plaintiffs") bring this

Class Action Complaint against LendUS, LLC ("Defendant" or "LendUS"), in their individual

CLASS ACTION COMPLAINT

capacity and on behalf of all others similarly situated, and allege, upon personal knowledge as to

their own actions and their counsels' investigations, and upon information and belief as to all other

matters, as follows:

**INTRODUCTION**

1.     Defendant is a mortgage company based in Alamo, California.[1] It is the surviving

product of a merger between two mortgage companies.[2]

2.     Plaintiffs bring this class action against Defendant for its failure to properly secure

and safeguard Personally Identifiable Information provided by its clients or mortgage brokers,

including, without limitation, first and last names, mailing addresses, dates of birth, Social Security

numbers, and tax information ("PII").

3.     On December 21, 2021, Defendant identified "unauthorized access" to LendUS

email accounts connected to its servers.[3] It later learned that "an unauthorized person accessed

certain accounts at various times between February 2, 2021 and March 22, 2021," and that PII

from its network may have been compromised (the "Data Breach").[4]

4.     Defendant failed to use reasonable industry standard security measures, which

would have prevented this type of attack from being successful. Defendant's failure to use such

measures is particularly egregious given the amount of highly sensitive PII that it maintains and

the prevalence of data security incidents in the finance and banking industries.

5.     By obtaining, collecting, using, and deriving a benefit from the PII of Plaintiffs and

Class Members, Defendant assumed legal and equitable duties to those individuals to protect and

safeguard that information from unauthorized access and intrusion.

6.     Hackers can access and then offer for sale this unencrypted, unredacted PII to

criminals. The exposed PII of Plaintiffs and Class Members can be sold on the dark web. Plaintiffs

and Class Members now face a present and continuing lifetime risk of identity theft, which is

---

[1] https://www.lend.us/ (last visited Feb. 2, 2022).
[2] *Id.*
[3] https://apps.web.maine.gov/online/aeviewer/ME/40/3a0c4c95-a995-4ffb-88b4-57e8cc0ff702.shtml (last visited Feb. 2, 2022).
[4] *Id.*

CLASS ACTION COMPLAINT

heightened here by the loss of Social Security numbers.

7.      Plaintiffs bring this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Plaintiffs and Class Members; (ii) warn Plaintiffs and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure its network containing protected PII using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to negligence and violates federal and state statutes.

8.      Plaintiffs and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; and (iv) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

9.      Defendant disregarded the rights of Plaintiffs and Class Members by recklessly or negligently failing to implement and maintain adequate and reasonable measures to ensure that the PII of Plaintiffs and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As a result, the PII of Plaintiffs and Class Members was compromised through disclosure to a known criminal organization. Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

CLASS ACTION COMPLAINT

1

## **PARTIES**

2

*Plaintiff Evangelia Remoundos*

3      10.    Plaintiff Evangelia Remoundos is, and at all times relevant has been, a resident and

4   citizen of San Francisco, California. Plaintiff received a "Notice of Data Breach" letter dated

5   January 19, 2022, on or about that date. The letter notified her that on December 21, 2021, LendUS

6   determined that in the compromised email accounts, information such as her full name and Social

7   Security Number had been accessed. The letter further advised that she should "remain vigilant by

8   reviewing" financial accounts and credit reports for signs of fraud.

9      11.    Upon information and belief, Defendant continues to maintain Plaintiff

10  Remoundos' PII.

11  *Plaintiff John Biegger*

12     12.    Plaintiff John Biegger was at all times relevant a resident and citizen of

13  Jacksonville, Florida. Plaintiff Biegger received a "Notice of Data Breach" letter dated January

14  19, 2022, on or about that date. The letter notified him that on December 21, 2021, LendUS

15  determined that in the compromised email accounts, information such as his full name, financial

16  account number, and payment card number had been accessed. The letter further advised that he

17  should "remain vigilant by reviewing" financial accounts and credit reports for signs of fraud.

18     13.    Upon information and belief, Defendant continues to maintain Plaintiff Biegger's

19  PII.

20  *Plaintiff Anne Biegger*

21     14.    Plaintiff Anne Biegger was at all times relevant a resident and citizen of

22  Jacksonville, Florida. Plaintiff Biegger received a "Notice of Data Breach" letter dated January

23  19, 2022, on or about that date. The letter notified her that on December 21, 2021, LendUS

24  determined that in the compromised email accounts, information such as her full name, financial

25  account number, and payment card number had been accessed. The letter further advised that she

26  should "remain vigilant by reviewing" financial accounts and credit reports for signs of fraud.

27     15.    Upon information and belief, Defendant continues to maintain Plaintiff Biegger's

28

-4-

PII.

*Defendant LendUS, LLC*

16.   Defendant LendUS, LLC is a California State registered mortgage company with its principal office located at 3240 Stone Valley Road West, Alamo California 94507.

17.   Upon information and belief, LendUS is an LLC created as a combination of RPM Mortgage and American Eagle Mortgage.[5] All of Plaintiffs' claims stated herein are asserted against Defendant and any of its owners, predecessors, partners, successors, subsidiaries, agents and/or assigns.

## JURISDICTION AND VENUE

18.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant, including Plaintiffs Mr. and Mrs. Biegger, who are residents of Florida.

19.   This Court has personal jurisdiction over Defendant because Defendant has its principal place of business within this District.

20.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in, were directed to, and/or emanated from this District. Defendant resides within this judicial district and a substantial part of the events giving rise to the claims alleged herein occurred within this judicial district.

## FACTUAL ALLEGATIONS

*Background*

21.   Defendant provides various mortgage and loan services to individuals in several states across the country, including its home state of California. It offers an app and various educational tools to help assist first time homebuyers, or buyers proceeding without the assistance

[5] https://www.lend.us/ (last visited Feb. 2, 2022).

-5-

CLASS ACTION COMPLAINT

of a financial advisor, as well as various financing or refinancing services for experienced homebuyers.

22.     Plaintiffs and Class Members, however, were not direct customers of Defendant.

23.     Plaintiffs and Class Members and/or Plaintiffs' and Class Members' agents or employers relied on the sophistication of Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiffs and Class Members demand security to safeguard their PII.

24.     Defendant had a duty to adopt reasonable measures to protect the PII of Plaintiffs and Class Members from involuntary disclosure to third parties.

***The Data Breach***

25.     On December 21, 2021, Defendant identified "unauthorized access to some LendUS employee email accounts."[6] According to Defendant, it then "took immediate steps to secure the email accounts and began an investigation."[7] However, it has not stated when the unusual activity first occurred.

26.     The unauthorized access to Defendant's email accounts occurred between February 2, 2021 and March 22, 2021 – at least nine months before LendUS even discovered that the unauthorized access occurred.[8]

27.     Despite a protracted investigation into the Data Breach, assisted by the services of an unnamed cybersecurity firm, Defendant was unable to determine what emails, attachments, or other data might have been downloaded by the unauthorized assailant.

28.     Defendant failed to use reasonable industry standard security measures, which would have prevented this type of attack. Defendant's failure to use such measures is particularly

---

[6] https://www.jdsupra.com/legalnews/data-breach-alert-lendus-llc-3790258/#:~:text=If%20you%20receive%20a%20data,retained%20your%20sensitive%20personal%20information. (Last visited Feb. 2, 2022).

[7] *Id.*

[8] *Id.*

CLASS ACTION COMPLAINT

egregious given the amount of highly sensitive PII that it maintains and the prevalence of data security incidents in the finance and banking industries.

29.     In notice letters subsequently sent to victims of the Data Breach, Defendant acknowledged its duty to safeguard the PII in its possession: "The privacy and security of information entrusted to us is of the utmost importance to LENDUS, and we take this incident very seriously…. Please know that the security of your information is of paramount importance to us, and we deeply regret any worry or inconvenience this incident may have caused."[9]

30.     The notice letters sent to victims of the Data Breach also acknowledged that its previous cybersecurity policies and procedures were lacking and need improvement: "[W]e are working to review our existing policies and procedures, including our information security plan, to evaluate additional measures and safeguards to protect against this type of incident in the future."[10]

31.     The notice letters to victims of the Data Breach did not provide the details of the Data Breach, the vulnerabilities exploited, or the remedial measures undertaken to ensure such a breach does not occur again.

32.     The unencrypted PII of Plaintiffs and Class Members may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Plaintiffs and Class Members. Unauthorized individuals can easily access the PII of Plaintiffs and Class Members.

33.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining for Plaintiffs and Class Members, causing the exposure of PII for many customers and/or its customers' employees, such as encrypting the information or deleting it when it is no longer needed. [11]

---

[9] https://oag.ca.gov/system/files/001%20LendUS%20CA%20Adult%20CA%20CM%201%20YR_AF443_v02.pdf (last visited Feb. 2, 2022).

[10] *Id.*

[11] It is clear that the information exposed in the Data Breach was unencrypted: California law requires companies to notify California residents "whose **unencrypted** personal information was, or is reasonably

CLASS ACTION COMPLAINT

34.     As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[12]

35.     To prevent and detect cyber-attacks and/or ransomware attacks Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

---

believed to have been, acquired by an unauthorized person" due to a "breach of the security of the system[.]" Cal. Civ. Code § 1798.82(a)(1) (emphasis added). Defendant notified the California Attorney General of the Data Breach on Jan. 19, 2022, evidencing that the exposed data was unencrypted.

[12] How to Protect Your Networks from RANSOMWARE, at 3, *available at:* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited Feb. 2, 2022).

CLASS ACTION COMPLAINT

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have written access to those files, directories, or shares.
- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.
- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.
- Consider disabling Remote Desktop protocol (RDP) if it is not being used.
- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.
- Execute operating system environments or specific programs in a virtualized environment.
- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[13]

36.    To prevent and detect cyber-attacks Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use caution with links and when entering website addresses**. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your

---

[13]   *Id*. at 3-4.

CLASS ACTION COMPLAINT

organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**. Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[14]

37.    To prevent and detect cyber-attacks or ransomware attacks Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

-Apply latest security updates
-Use threat and vulnerability management
-Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

-        Prioritize and treat commodity malware infections as potential full compromise;

---

[14] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), *available at:* https://us-cert.cisa.gov/ncas/tips/ST19-001 (last visited Feb. 2, 2022).

CLASS ACTION COMPLAINT

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

**Apply principle of least-privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events;

**Harden infrastructure**

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[15]

38.     The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent ransomware attacks, resulting in the Data Breach and the exposure of the PII of at least 12,000 individuals, including Plaintiffs and Class Members.

***Defendant Acquires, Collects, and Stores the PII of Plaintiffs and Class Members***

39.     Defendant has historically acquired, collected, and stored the PII of Plaintiffs and Class Members.

40.     As part of receiving services from Defendant, Plaintiffs and Class Members and/or Plaintiffs' and Class Members' agents or employers, as customers of Defendant, are required to give their sensitive and confidential PII to Defendant. Defendant retains this information.

41.     By obtaining, collecting, and storing the PII of Plaintiffs and Class Members,

---

[15] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at:* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited Feb. 2, 2022).

CLASS ACTION COMPLAINT

Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII from disclosure.

42.    Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Defendant to keep their PII confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

43.    Defendant could have prevented this Data Breach by properly and adequately securing and encrypting the files and file servers containing the PII of Plaintiffs and Class Members.

44.    Defendant's policies on its website include promises and legal obligations to maintain and protect PII, demonstrating an understanding of the importance of securing PII. Indeed, Defendant has an entire page of its website dedicated to cybersecurity awareness.[16]

45.    Defendant's negligence in safeguarding the PII of Plaintiffs and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

46.    Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiffs and Class Members from being compromised.

***Defendant Knew or Should Have Known of the Risk Because the Financial Industry is Particularly Susceptible to Cyber Attacks***

47.    Defendant knew and understood unprotected or exposed PII in the custody of banks, such as Defendant, is valuable and highly sought after by nefarious third parties seeking to illegally monetize that PII through unauthorized access.

48.    Defendant had obligations created by contract, industry standards, common law, and representations made to Plaintiffs and Class Members and/or to Plaintiffs' and Class Members' agents or employers, and the general public, to keep their PII confidential and to

---

[16] *See* https://www.lend.us/PDFs/lendus-privacy.pdf; https://www.lend.us/ccpa/ (last visited Feb. 2, 2022).

CLASS ACTION COMPLAINT

protect it from unauthorized access and disclosure.

49.     Plaintiffs and Class Members and/or Plaintiffs' and Class Members' agents or employers, provided their PII to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with their obligations to keep such information confidential and secure from unauthorized access.

50.     Defendant's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches preceding the date of the breach.

51.     Indeed, data breaches, such as the one experienced by Defendant, have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known and completely foreseeable to the public, including Defendant.

52.     According to the Federal Trade Commission ("FTC"), identity theft wreaks havoc on consumers' finances, credit history, and reputation and can take time, money, and patience to resolve.[17] Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank and finance fraud.[18]

53.     The PII of Plaintiffs and Class Members was taken by hackers to engage in identity theft and/or to sell it to other criminals who will purchase the PII for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

54.     Defendant knew, or reasonably should have known, of the importance of

---

[17]     *See Taking Charge, What to Do If Your Identity is Stolen*, FTC, 3 (Apr. 2013), https://dss.mo.gov/cd/older-youth-program/files/taking-charge-what-to-do-if-identity-is-stolen.pdf (last visited Feb. 2, 2022).

[18]     *Id*. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 CFR § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." *Id*.

CLASS ACTION COMPLAINT

safeguarding the PII of Plaintiffs and Class Members and of the foreseeable consequences that would occur if Defendant's data security systems were breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members as a result of a breach.

55.     Plaintiffs and Class Members now currently face years of constant surveillance and monitoring of their financial and personal records and loss of rights.  Plaintiffs and Class Members are incurring, and will continue to incur, such damages in addition to any fraudulent use of their PII.

56.     The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiffs and Class Members, such as encrypting the data so unauthorized third parties could not see the PII.

***Defendant Failed to Comply with Industry Standards***

57.     A number of industry and national best practices have been published and should have been used as a go-to resource and authoritative guide when developing Defendant's cybersecurity practices.

58.     Best cybersecurity practices that are standard include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

59.     Upon information and belief, Defendant failed to meet the minimum standards of the following cybersecurity frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established standards in reasonable cybersecurity readiness.

60.     These foregoing frameworks are existing and applicable industry standards in

Defendant's industry, and Defendant failed to comply with these accepted standards, thereby opening the door to a cyber-attack and causing the Data Breach.

***Value of Personally Identifiable Information***

61.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[19] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[20]

62.     The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, Personal Information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[21] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[22] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[23]

63.     Social Security numbers, for example, are among the worst kind of PII to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

A dishonest person who has your Social Security number can use it to get other

---

[19] 17 C.F.R. § 248.201 (2013).
[20] *Id.*
[21] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited Feb. 2, 2022).
[22] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited Feb. 2, 2022).
[23] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited Feb. 2, 2022).

CLASS ACTION COMPLAINT

personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[24]

64.     It is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

65.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[25]

66.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number, driver's license number, name, and date of birth.

67.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[26]

---

[24] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Feb. 2, 2022).
[25] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last visited Feb. 2, 2022).
[26] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited Feb. 2, 2022).

CLASS ACTION COMPLAINT

68.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

69.     The fraudulent activity resulting from the Data Breach may not come to light for years.

70.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for
> up to a year or more before being used to commit identity theft. Further, once stolen
> data have been sold or posted on the Web, fraudulent use of that information may
> continue for years. As a result, studies that attempt to measure the harm resulting
> from data breaches cannot necessarily rule out all future harm.[27]

71.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiffs and Class Members, including Social Security numbers and dates of birth, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members as a result of a breach.

72.     Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

73.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's server(s), amounting to potentially thousands of individuals' detailed, PII, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

74.     In the breach notification letter, Defendant made an offer of 12 months of credit monitoring and identity theft services. This is wholly inadequate to compensate Plaintiffs and

---

[27] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last visited Feb. 2, 2022).

CLASS ACTION COMPLAINT

Class Members as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft, and medical and financial fraud, and it entirely fails to provide sufficient compensation for the unauthorized release and disclosure of Plaintiffs' and Class Members' PII.

75.     The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiffs and Class Members.

76.     The ramifications of Defendant's failure to keep secure the PII of Plaintiffs and Class Members are long lasting and severe. Once PII is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

***Defendant Violated the FTC Act***

77.     Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

78.     Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and the Nationwide Class.

***Plaintiff Evangelia Remoundos' Experience***

79.     Plaintiff Remoundos' PII was acquired by Defendant.  The PII included her name, Social Security number, tax returns, IRS Form W-2, payroll records, and other tax information and her dependents' PII.

CLASS ACTION COMPLAINT

80.     To date, LendUS has done next to nothing to adequately protect Plaintiff Remoundos and Class Members, or to compensate them for their injuries sustained in this Data Breach.

81.     Defendant's data breach notice letter downplays the theft of Plaintiff Remoundos' and Class Members' PII, when the facts demonstrate that the PII was targeted, accessed, and exfiltrated in a criminal cyberattack. The fraud and identity monitoring services offered by Defendant are only for one year, and it places the burden squarely on Plaintiffs and Class Members by requiring them to expend time signing up for the service and addressing timely issues when the service number for enrollment does not work properly.

82.     Plaintiff Remoundos and Class Members have been further damaged by the compromise of their PII.

83.     Plaintiff Remoundos' PII was compromised in the Data Breach and was likely stolen and in the hands of cybercriminals who illegally accessed LendUS's network for the specific purpose of targeting the PII.

84.     Plaintiff Remoundos typically takes measures to protect her PII and is very careful about sharing her PII. She has never knowingly transmitted unencrypted PII over the internet or other unsecured source.

85.     Plaintiff Remoundos stores any documents containing her PII in a safe and secure location. And she diligently chooses unique usernames and passwords for her online accounts.

86.     As a result of the Data Breach, Plaintiff Remoundos has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach. She monitors her accounts and credit scores and has sustained emotional distress. Furthermore, as the head of the household she has spent time assisting her dependents to understand the Data Breach and has assisted them in applying for credit monitoring services. This is time that was lost and unproductive and took away from other activities and work duties.

87.     Plaintiff Remoundos also suffered actual injury in the form of damages to and diminution in the value of her PII—a form of intangible property that she entrusted to Defendant

for the purpose of obtaining services from Defendant, which was compromised in and as a result of the Data Breach.

88.     Plaintiff Remoundos suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

89.     Plaintiff Remoundos has suffered continuing and certainly imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII, especially her Social Security Number, being placed in the hands of criminals.

90.     Defendant obtained and continues to maintain Plaintiff Remoundos' PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure. She would have retrieved her and her dependents' PII from Defendant had she known that it would fail to maintain adequate data security. Her PII was compromised and disclosed as a result of the Data Breach.

91.     As a result of the Data Breach, Plaintiff Remoundos anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, she is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

***Plaintiff John Biegger Experience***

92.     Plaintiff Biegger was required to provide his PII to his mortgage company, RPM Mortgage as part of a mortgage application.[28]   The PII included his full name, address, Social Security number, tax returns, IRS Form W-2, payroll records, and other tax information.

93.     Plaintiff Biegger's PII was compromised in the Data Breach and was likely stolen and in the hands of cybercriminals who illegally accessed LendUS's network for the specific purpose of targeting the PII.

---

[28] RPM Mortgage is a division of LendUS. https://www.rpm-mtg.com/#about (last visited Feb. 2, 2022).

94.    Plaintiff Biegger typically takes measures to protect his PII and is very careful about sharing his PII. He has never knowingly transmitted unencrypted PII over the internet or other unsecured source.

95.    Plaintiff Biegger stores any documents containing his PII in a safe and secure location and he diligently chooses unique usernames and passwords for online accounts.

96.    As a result of the Data Breach, Plaintiff Biegger has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach. He monitors accounts and credit scores and has sustained emotional distress.

97.    Plaintiff Biegger also suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that he entrusted to Defendant for the purpose of obtaining services from Defendant, which was compromised in and as a result of the Data Breach.

98.    Plaintiff Biegger suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of privacy.

99.    Plaintiff Biegger has suffered continuing and certainly imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, especially his Social Security Number, being placed in the hands of criminals.

100.    Defendant obtained and continues to maintain Plaintiff Biegger's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure. Defendant required the PII from him when he received services from Defendant. However, he would not have entrusted his PII to Defendant had he known that it would fail to maintain adequate data security. His PII was compromised and disclosed as a result of the Data Breach.

101.    As a result of the Data Breach, Plaintiff Biegger anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, he is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

CLASS ACTION COMPLAINT

*Plaintiff Anne Biegger Experience*

102.   Plaintiff Anne Biegger was required to provide her PII to RPM Mortgage as part of a mortgage application.  The PII included her full name, address, Social Security number, tax returns, IRS Form W-2, payroll records, and other tax information.

103.   Plaintiff Anne Biegger's PII was compromised in the Data Breach and was likely stolen and in the hands of cybercriminals who illegally accessed LendUS's network for the specific purpose of targeting the PII.

104.   Plaintiff Anne Biegger typically takes measures to protect her PII and is very careful about sharing her PII. She has never knowingly transmitted unencrypted PII over the internet or other unsecured source.

105.   Plaintiff Anne Biegger stores any documents containing her PII in a safe and secure location and he diligently chooses unique usernames and passwords for online accounts.

106.   As a result of the Data Breach, Plaintiff Anne Biegger has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach. She monitors accounts and credit scores and has sustained emotional distress.

107.   Plaintiff Anne Biegger also suffered actual injury in the form of damages to and diminution in the value of her PII—a form of intangible property that she entrusted to Defendant for the purpose of obtaining services from Defendant, which was compromised in and as a result of the Data Breach.

108.   Plaintiff Anne Biegger suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of privacy.

109.   Plaintiff Anne Biegger has suffered continuing and certainly imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII, especially his Social Security number, being placed in the hands of criminals.

CLASS ACTION COMPLAINT

110.    Defendant obtained and continues to maintain Plaintiff Anne Biegger's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure. Defendant required the PII from her when she received services from Defendant. However, she would not have entrusted her PII to Defendant had she known that it would fail to maintain adequate data security. Her PII was compromised and disclosed as a result of the Data Breach.

111.    As a result of the Data Breach, Plaintiff Anne Biegger anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, she is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## CLASS ALLEGATIONS

112.    Plaintiffs bring this nationwide class action pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and on behalf of all members of the following class:

All individuals whose PII was compromised in the data breach announced by Defendant on or about January 19, 2022 (the "Nationwide Class").

113.    Plaintiffs also seek certification of a California sub-class defined as follows:

All individuals residing in California whose PII was compromised in the data breach announced by Defendant on or about January 19, 2022 (the "California Subclass").

114.    The Nationwide Class and California Subclass are collectively referred to herein as the "Class" or "Classes."

115.    Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

116.    Plaintiffs reserve the right to modify or amend the definitions of the proposed

CLASS ACTION COMPLAINT

Classes before the Court determines whether certification is appropriate.

117.  <u>Numerosity</u>: The members of the Classes are so numerous that joinder of all members is impracticable, if not completely impossible. The Classes are apparently identifiable within Defendant's records.

118.  <u>Commonality</u>: Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting solely individual members of the Classes. Among the questions of law and fact common to the Classes that predominate over questions which may affect individual Class Members, including the following:

   a.  Whether and to what extent Defendant had a duty to protect the PII of Plaintiffs and Class Members;

   b.  Whether Defendant had a duty not to disclose the PII of Plaintiffs and Class Members to unauthorized third parties;

   c.  Whether Defendant had a duty not to use the PII of Plaintiffs and Class Members for non-business purposes;

   d.  Whether Defendant failed to adequately safeguard the PII of Plaintiffs and Class Members;

   e.  Whether and when Defendant actually learned of the Data Breach;

   f.  Whether Defendant adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII had been compromised;

   g.  Whether Defendant violated the law by failing to promptly notify Plaintiffs and Class Members that their PII had been compromised;

   h.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

   i.  Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

   j.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to

CLASS ACTION COMPLAINT

safeguard the PII of Plaintiffs and Class Members;

k.   Whether Plaintiffs and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendant's wrongful conduct;

l.   Whether Plaintiffs and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

m.   Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

119.   <u>Typicality</u>: Plaintiffs' claims are typical of those of the other members of the Classes because Plaintiffs, like every other member, were exposed to virtually identical conduct and now suffers from the same violations of the law as other members of the Classes.

120.   <u>Adequacy</u>: Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that he has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiffs seek no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiffs have retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

121.   <u>Superiority and Manageability</u>: Under Rule 23(b)(3), a class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Classes is impracticable.  Individual damages for any individual Class Member are likely to be insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendant's misconduct would go unpunished.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

122.   Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Classes as a whole.

123.   Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.  Such particular issues include, but are not limited to:

a.   Whether Defendant owed a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

b.   Whether Defendant breached a legal duty to Plaintiffs and the Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

c.   Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the data breach; and

e.   Whether Class Members are entitled to actual damages, credit monitoring or other injunctive relief, and/or punitive damages as a result of Defendant's wrongful conduct.

## COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiffs and the Nationwide Class)

124.   Plaintiffs re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 123.

125.   As a condition of receiving services from Defendant, Defendant's current and former customers were obligated to provide Defendant with their PII or the PII of their employees, including, but not limited to, first and last names, mailing addresses, dates of birth, Social Security numbers, and tax information.

126.   Plaintiffs and the Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

127.   Defendant has full knowledge of the sensitivity of the PII and the types of harm

that Plaintiffs and the Class could and would suffer if the PII were wrongfully disclosed.

128.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiffs and the Class involved an unreasonable risk of harm to Plaintiffs and the Class, even if the harm occurred through the criminal acts of a third party.

129.    Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the PII of Plaintiffs and the Class in Defendant's possession was adequately secured and protected.

130.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove former customers' PII that Defendant was no longer required to retain pursuant to regulations or legitimate business purposes.

131.    Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the PII of Plaintiffs and the Class.

132.    Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant on the one hand and Plaintiffs and the Class on the other. That special relationship arose because Plaintiffs and the Class entrusted Defendant with their confidential PII, a necessary part receiving services from Defendant.

133.    Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiffs or the Class.

134.    A breach of security, unauthorized access, and resulting injury to Plaintiffs and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

135.    Plaintiffs and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiffs and the Class, the critical importance of providing

CLASS ACTION COMPLAINT

adequate security of that information, and the necessity for encrypting or redacting PII stored on Defendant's systems.

136.    Defendant's own conduct created a foreseeable risk of harm to Plaintiffs and the Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions to not comply with industry standards for the safekeeping of the PII of Plaintiffs and the Class, including basic encryption techniques freely available to Defendant.

137.    Plaintiffs and the Class had no ability to protect their PII that was in, and possibly remains in, Defendant's possession.

138.    Defendant was in a position to protect against the harm suffered by Plaintiffs and the Class as a result of the Data Breach.

139.    Defendant had and continues to have a duty to adequately disclose that the PII of Plaintiffs and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiffs and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

140.    Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiffs and the Class.

141.    Defendant has admitted that the PII of Plaintiffs and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

142.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiffs and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiffs and the Class during the time the PII was within Defendant's possession or control.

143.    Defendant improperly and inadequately safeguarded the PII of Plaintiffs and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

CLASS ACTION COMPLAINT

144.    Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the PII of Plaintiffs and the Class in the face of increased risk of theft.

145.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of its current and former patients' PII.

146.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiffs and the Class the existence and scope of the Data Breach.

147.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiffs and the Class, the PII of Plaintiffs and the Class would not have been compromised.

148.    There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Plaintiffs and the Class and the present harm, or risk of imminent harm, suffered by Plaintiffs and the Class. The PII of Plaintiffs and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

149.    Defendant's violation of California and federal statutes also constitute negligence *per se*. Specifically, as described herein, Defendant has violated California's data breach statute, Cal. Civ. Code § 1798.81.5, which requires Defendant to undertake reasonable measures to safeguard the PII of Plaintiffs and the Class, as well as the FTC Act.

150.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax

fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of Plaintiffs and the Class; and (viii) costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and the Class.

151.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

152.    Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Class have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect the PII in its continued possession.

153.    Plaintiffs and Class Members are therefore entitled to damages, including restitution and unjust enrichment, declaratory and injunctive relief, and attorneys' fees, costs, and expenses.

## COUNT II
### CALIFORNIA CONSUMER PRIVACY ACT
**(On Behalf of Plaintiff Remoundos and the California Subclass)**

154.    Plaintiff Remoundos and the California Subclass re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 153.

155.    Defendant violated section 1798.150(a) of the California Consumer Privacy Act ("CCPA") by failing to prevent Plaintiff Remoundos' and the California Subclass' PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violations of its

duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the PII.

156.    The PII of Plaintiff Remoundos and the California Subclass was subjected to unauthorized access and exfiltration, theft, or disclosure as a direct and proximate result of Defendant's violation of its duty under the CCPA.

157.    Plaintiff Remoundos and the California Subclass lost money or property, including but not limited to the loss of legally protected interest in the confidentiality and privacy of their PII, nominal damages, and additional losses as a direct and proximate result of Defendant's acts described above.

158.    Defendant knew, or should have known, that their network computer systems and data security practices were inadequate to safeguard PII and that the risk of a data breach or theft was highly likely. Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect PII, such as properly encrypting the PII so in the event of a data breach the PII cannot be read by an unauthorized third party. As a result of the failure to implement reasonable security procedures and practices, the PII of Plaintiff Remoundos and members of the California Subclass was exposed.

159.    Defendant is organized for the profit or financial benefit of its owners and collects PII as defined in Cal. Civ. Code section 1798.140.

160.    Plaintiff Remoundos and the California Subclass seek injunctive or other equitable relief to ensure that Defendant hereinafter adequately safeguard PII by implementing reasonable security procedures and practices. This relief is important because Defendant still holds PII related to Plaintiff Remoundos and the California Subclass. Plaintiff Remoundos and the California Subclass have an interest in ensuring that their PII is reasonably protected.

161.    On February 4, 2022, Plaintiffs' counsel mailed a CCPA notice letter to Defendant via certified mail. If Defendant does not cure the effects of the Data Breach, which would require retrieving the PII or securing the PII from continuing and future use, within 30 days of delivery of the CCPA notice letter (which Plaintiff Remoundos believes any such cure is not possible under

CLASS ACTION COMPLAINT

these facts and circumstances), Plaintiff Remoundos intends to amend this complaint to seek actual damages and statutory damages of no less than $100 and up to $750 per customer record subject to the Data Breach on behalf of the California Subclass as authorized by the CCPA.

## COUNT III
### VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code § 17200, *et seq.*
### (On Behalf of Plaintiff Remoundos and the California Subclass)

162.    Plaintiff Remoundos re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 161.

163.    By reason of the conduct alleged herein, Defendant engaged in unlawful and unfair business practices within the meaning of California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200, *et seq.*

164.    Defendant stored the PII of Plaintiff Remoundos and Subclass Members in its computer systems.

165.    Defendant knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with federal regulations and that would have kept Plaintiff Remoundos' and Subclass Members' PII secure and prevented the loss or misuse of that PII.

166.    Defendant did not disclose at any time that Plaintiff Remoundos' and Subclass Members' PII was vulnerable to hackers because Defendant's data security measures were inadequate and outdated, and Defendant was the only one in possession of that material information, which Defendant had a duty to disclose.

*Unlawful Business Practices*

167.    Defendant engaged in unlawful business acts and practices by failing to establish adequate security practices and procedures as set forth above, by soliciting and gathering the PII of Plaintiff Remoundos and the Subclass knowing that the information would not be adequately protected, and by storing the PII of Plaintiff Remoundos and the Subclass in an unsecure electronic network, all in violation of California's data breach statute, Cal. Civ. Code § 1798.81.5, which

requires Defendant to undertake reasonable measures to safeguard the PII of Plaintiff Remoundos and the Subclass, as well as the FTC Act.

168.    Plaintiff Remoundos and Subclass Members suffered injury in fact and lost money or property as the result of Defendant's unlawful business practices. In addition, Plaintiff Remoundos' and Subclass Members' PII was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the hacked information is of tangible value. Plaintiff Remoundos and Subclass Members have also suffered consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.

***Unfair Business Practices***

169.    Defendant engaged in unfair business practices under the "balancing test." The harm caused by Defendant's actions and omissions, as described in detail above, greatly outweigh any perceived utility. Indeed, Defendant's failure to follow basic data security protocols and failure to disclose inadequacies of Defendant's data security cannot be said to have had any utility at all. All of these actions and omissions were clearly injurious to Plaintiff Remoundos and Subclass Members, directly causing the harms alleged below.

170.    Defendant engaged in unfair business practices under the "tethering test." Defendant's actions and omissions, as described in detail above, violated fundamental public policies expressed by the California Legislature. *See, e.g.*, Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendant's acts and omissions thus amount to a violation of the law.

171.    Plaintiff Remoundos and Subclass Members suffered injury in fact and lost money or property as the result of Defendant's unfair business practices. Plaintiff Remoundos' and Subclass Members' PII was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the hacked information is of tangible value. Plaintiff Remoundos and Subclass Members have also suffered consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.

172.    As a result of Defendant's unlawful and unfair business practices in violation of the UCL, Plaintiff Remoundos and Subclass Members are entitled to damages, injunctive relief, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and Class Members, request judgment against Defendant and that the Court grant the following:

A.    For an order certifying the Class, as defined herein, and appointing Plaintiffs and their Counsel to represent each such Class;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiffs and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiffs and Class Members;

C.    For injunctive relief requested by Plaintiffs, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members, including but not limited to an order:

i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii.    requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

CLASS ACTION COMPLAINT

iii.   requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiffs and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members;

iv.   requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiffs and Class Members;

v.   prohibiting Defendant from maintaining the PII of Plaintiffs and Class Members on a cloud-based database;

vi.   requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.   requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.   requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix.   requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x.   requiring Defendant to conduct regular database scanning and securing checks;

xi.   requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiffs and Class

1    Members;

2    xii.    requiring Defendant to routinely and continually conduct internal training and

3            education, and on an annual basis to inform internal security personnel how to

4            identify and contain a breach when it occurs and what to do in response to a

5            breach;

6    xiii.   requiring Defendant to implement a system of tests to assess its employees'

7            knowledge of the education programs discussed in the preceding

8            subparagraphs, as well as randomly and periodically testing employees'

9            compliance with Defendant's policies, programs, and systems for protecting

10           personal identifying information;

11   xiv.    requiring Defendant to implement, maintain, regularly review, and revise as

12           necessary a threat management program designed to appropriately monitor

13           Defendant's information networks for threats, both internal and external, and

14           assess whether monitoring tools are appropriately configured, tested, and

15           updated;

16   xv.     requiring Defendant to meaningfully educate all Class Members about the

17           threats that they face as a result of the loss of their confidential PII to third

18           parties, as well as the steps affected individuals must take to protect themselves;

19   xvi.    requiring Defendant to implement logging and monitoring programs sufficient

20           to track traffic to and from Defendant's servers; and for a period of 10 years,

21           appointing a qualified and independent third-party assessor to conduct a SOC 2

22           Type 2 attestation on an annual basis to evaluate Defendant's compliance with

23           the terms of the Court's final judgment, to provide such report to the Court and

24           to counsel for the class, and to report any deficiencies with compliance of the

25           Court's final judgment;

26   D.    For an award of damages, including actual, statutory, nominal, and consequential

27         damages, as allowed by law in an amount to be determined;

28

-36-

CLASS ACTION COMPLAINT

E.      For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.      For prejudgment interest on all amounts awarded; and,

G.      Such other and further relief as this Court may deem just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs hereby demand that this matter be tried before a jury.

DATED: February 4, 2022          Respectfully Submitted,


By: */s/ M. Anderson Berry*
M. ANDERSON BERRY (262879)
GREGORY HAROUTUNIAN (330263)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Facsimile: (916) 924-1829
*aberry@justice4you.com*
*gharoutunian@justice4you.com*


TERENCE R. COATES (*pro hac vice* forthcoming)
**MARKOVITS, STOCK & DEMARCO, LLC**
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Phone: (513) 665-0204
Fax: (513) 665-0219
*tcoates@msdlegal.com*


JOSEPH M. LYON (*pro hac vice* forthcoming)
**THE LYON FIRM, LLC**
2754 Erie Avenue
Cincinnati, OH 45208
Phone: (513) 381-2333
Fax: (513) 721-1178
*jlyon@thelyonfirm.com*


*Attorneys for Plaintiffs and the Proposed Class*

CLASS ACTION COMPLAINT