M. Anderson Berry (SBN 262879)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916)239-4778
Facsimile: (916) 924-1829
aberry@justice4you.com

*Attorney for Plaintiffs and the Proposed Classes*

*[Additional counsel listed on signature page.]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| EVANGELIA REMOUNDOS, JOHN BIEGGER, and ANNE BIEGGER, on behalf of themselves and on behalf of all others similarly situated, | Case No.:  3:22-cv-00749-EMC |
| | *[The Honorable Edward M. Chen]* |
| Plaintiffs, | |
| v. | **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT** |
| LEND US, LLC, | |
| Defendant. | Complaint Filed:        February 4, 2022 |

# **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................ 1

II.   STATEMENT OF FACTS ..................................................................... 3

III.  PROCEDURAL HISTORY.................................................................... 3

IV.   THE SETTLEMENT TERMS ................................................................ 4

      A.    Proposed Settlement Class Definition .................................... 4

      B.    Settlement Benefits – Monetary Relief.................................... 4

            1.    Expense and Lost-Time Cash Payment. ...................... 5

            2.    Other Extraordinary Expense Reimbursement ........... 5

            3.    California Subclass Benefits ...................................... 6

      C.    Non-Monetary Settlement Benefits – Aura Financial Shield.............. 6

      D.    LendUs's Business Practice Changes ..................................... 8

      E.    Class Notice and Settlement Administration............................ 9

      F.    Attorneys' Fees and Representative Plaintiffs' Service Awards ........... 10

      G.    Comparison of Settlement Benefits Against Full Recovery ................ 11

      H.    Release .......................................................................... 12

V.    ARGUMENT ................................................................................. 12

      A.    The Settlement Satisfies Rule 23(a)..................................... 13

            1.    The proposed Class is sufficiently numerous ........... 13

            2.    The Settlement Class and California Subclass Satisfy the Commonality Requirement...................................... 13

            3.    Plaintiffs' claims and defenses are typical to those of the Settlement Class ................................................ 14

            4.    Plaintiffs will adequately protect the interests of the Class ................... 14

      B.    The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement.......... 15

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.:  3:22-cv-00749-EMC

-ii-

1                          1.              Common Questions Predominate ........................................................ 15

2                          2.              Class Action is Superior to Other Methods of Adjudication ................ 16

3             C.        The Settlement Should Be Preliminarily Approved Pursuant to Rule 23(e) ...... 17

4                          1.              The Strength of Plaintiffs' Case ............................................................ 18

5

6                          2.              The Risk, Expense, Complexity, and Likely Duration of  Further

7                                        Litigation ................................................................................................ 19

8                          3.              The Risk of Maintaining Class Action Status Through Trial ................ 20

9                          4.              The Amount Offered in Settlement........................................................ 20

10                          5.              The Extent of Discovery Completed and the Stage of  Proceedings ..... 22

11                          6.              Class Counsel's Experience and Views ................................................ 22

12                            7.              Governmental Participants ..................................................................... 23

13                            8.              The Reaction of the Class Members to the Proposed Settlement .......... 23

14                          9.              Lack of Collusion Among the Parties .................................................... 23

15             D.        The Court Should Approve the Proposed Notice Program ................................ 23

16             E.        Appointment of the Claims Administrator ...................................................... 25

17             F.        Appointment of Settlement Class Counsel ....................................................... 25

18

19  VI.    CONCLUSION................................................................................................................ 26

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.:  3:22-cv-00749-EMC

-iii-

## TABLE OF AUTHORITIES

Page(s)

Cases

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................... 13, 15, 17

*Bykov v. DC Trans. Servs., Inc.*,
   No. 2:18-cv-1692 DB, 2019 WL 1430984 (E.D. Cal. Mar. 29, 2019) ................................... 17

*Calderon v. Wolf Firm*,
   No. SACV 16-1622-JLS(KESx), 2018 WL 6843723 (C.D. Cal. Mar. 13, 2018) ................. 21

*Celano v. Marriott Int'l Inc.*,
   242 F.R.D. 544 (N.D. Cal. 2007) .................................................................................. 13

*Chester v. TJX Cos., Inc.*,
   No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788 (C.D. Cal. Dec. 5, 2017) ................... 19

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ...................................................................................... 12

*Dennis v. Kellogg Co.*,
   No. 09-cv-1786-L(WMc), 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ........................... 19

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ..................................................................................................... 23

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) .................................................................................. 13, 14

*Franklin v. Kaypro Corp.*,
   884 F.2d 1222 (9th Cir. 1989) ...................................................................................... 18

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) ........................................................................................ 18

*Gribble v. Cool Transps. Inc.*,
   No. CV 06-4863 GAF (SHx), 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) ...................... 18

*Grimm v. Am. Eagle Airlines, Inc.*,
   11-00406 JAK(MANx), 2014 WL 1274376 (C.D. Cal. Sept. 24, 2014) ............................. 20

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.: 3:22-cv-00749-EMC

-iv-

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................ 14, 15, 18

*Hartranft v. TVI, Inc.*,
    No. 15-01081-CJC-DFM, 2019 WL 1746137 (C.D. Cal. Apr. 18, 2019) ............................. 25

*Hillman v. Lexicon Consulting, Inc.*,
    No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869 (C.D. Cal. April 27, 2017) ............... 22

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................ 18

*In re Brinker Data Incident Litig.*,
    No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ....................... 20

*In re Facebook Biometric Info. Priv. Litig.*,
    No. 15-CV-03747-JD, 2021 WL 757025 (N.D. Cal. Feb. 26, 2021) ................................ 10

*In re Google LLC St. View Elec. Commc'ns Litig.*,
    No. 10-MD-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) .......................... 15

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ........................................................ 15, 24

*In Re Marriott Int. Inc. Customer Data Security Breach Litig.*,
    No. 19-md-2879, 2022 WL 1396522 (D. Md. May 3, 2022) ...................................... 20

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ............................................................ 10

*In re Online DVD-Rental Antitrust Litig.*,
    779 F. 3d 934 (9th Cir. 2015) ............................................................ 25

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................... 17

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,
    No. 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ..................... 14

*In re Yahoo Mail Litig.*,
    No. 13-CV-4980, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) ................................ 11, 12

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ............................................................ 16

*Keegan v. Am. Honda Motor Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012) ......................................................... 15

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.:  3:22-cv-00749-EMC

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ................................................................. 19, 22

*Local Joint Exec. Bd. of Culinary/ Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ................................................................. 16

*Malta v. Fed. Home Loan Mortg. Corp.*,
    No. 10-CV-1290 BEN NLS, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ............................ 16

*Meyer v Portfolio Recovery Assocs.*,
    707 F.3d 943 (9th Cir. 2012) ................................................................. 14

*Murillo v. Pac. Gas & Elec. Co.*,
    266 F.R.D. 468 (E.D. Cal. 2010) ............................................................. 18

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................. 23

*Norton v. Maximus, Inc.*,
    No. 1:14-cv-0030, 2017 WL 1424636 (D. Idaho Apr. 17, 2017) .............................. 23

*Pauley v. CF Entm't*,
    No. 2:13-CV-08011-RGK-CW, 2020 WL 5809953 (C.D. Cal. July 23, 2020) ............... 10, 11

*Paz v. AG Adriano Goldschmeid, Inc.*,
    No. 14CV1372DMS(DHB), 2016 WL 4427439 (S.D. Cal. Feb. 29, 2016) ...................... 19

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ......................................................................... 24

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ............................................................... 10

*Reyes v. Experian Info. Sols., Inc.*,
    No. SACV1600563AGAFMX, 2020 WL 466638 (C.D. Cal. Jan. 27, 2020) ...................... 17

*Smith v. Triad of Ala., LLC*,
    2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017) ...................... 20

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ...................................................................... 15

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................................... 13

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ............................................................... 16

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.: 3:22-cv-00749-EMC

Rules

Fed. R. Civ. P. 23 ................................................................................................passim

Other Authorities

Fed. Prac. and Proc. (2nd Ed. 1986) ....................................................................... 15

Manual for Complex Litigation (Fourth) ................................................................. 13

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.:  3:22-cv-00749-EMC

-vii-

1    Under Fed. R. Civ. P. 23(e), Plaintiffs Evangelia Remoundos, John Biegger, and Anne
2    Biegger ("Plaintiffs") on behalf of themselves and the Settlement Class, respectfully move this
3    Court to enter the proposed Order Granting Preliminary Approval of Class Action Settlement
4    (attached as **Exhibit 1**). Plaintiffs have consulted with Defendant LendUS, LLC ("LendUS" and
5    "Defendant") before filing this Motion and determined that the Motion is unopposed. The
6    grounds for the Court's potential granting of this unopposed Motion are included in the
7    accompanying Memorandum in Support.

**PLAINTIFFS' MEMORANDUM IN SUPPORT**

**I.    PRELIMINARY STATEMENT**

10    Plaintiffs have reached an agreement with LendUS, LLC to settle this class action on the
11    terms set forth in the Settlement Agreement.[1] The proposed Settlement will provide substantial
12    settlement benefits to the Settlement Class, consisting of (1) reimbursement of ordinary expenses
13    and lost time up to $500 per Class Member; (2) reimbursement of extraordinary expenses up to
14    $2,500 per Class Member, (3) $50 per California Subclass member in recognition of the enhanced
15    statutory rights afforded under California law; (4) Aura's Financial Shield Services ("Financial
16    Shield") for a period of eighteen months; and (5) injunctive relief in the form of LendUS agreeing
17    to implement certain cybersecurity and business practice enhancements. *See generally* S.A.[2] The
18    Settlement, if approved, will resolve all claims asserted against Defendant in this class action.

19    The proposed Settlement was reached at a time when the Parties understood the strengths
20    and weaknesses of their respective positions. Specifically, the Settlement was the product of a
21    series of arms'-length negotiations over the course of several months and was memorialized only
22    after LendUS shared with Plaintiffs' counsel critical informal discovery, that included: (1)
23    examples of the various notifications LendUS sent to certain state Attorney Generals; (2) the
24    improved data  business practices that LendUS has implemented and will implement in the future
25    (3) information evaluating and qualifying Kroll Settlement Administration as settlement
26    administrator for this Settlement; (4) the additional cybersecurity enhancements that LendUS is

27

28    [1] The Settlement Agreement ("S.A.") is attached as **Exhibit 2**.
      [2] Capitalized terms not defined herein are stated in S.A.

willing to commit to as part of this Settlement; (5) detailed information about how the Data Incident occurred; (5) confirmation of the types of PII compromised; and (6) documentation sufficient to confirm the class size. Declaration of M. Anderson Berry in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, ¶ 17 ("Berry Decl.") (attached as **Exhibit 8**). Plaintiffs and Class Counsel, based on their evaluation of the facts and applicable law and their recognition of the substantial risk and expense of continued litigation, respectfully submit that the proposed Settlement in the Class's best interests and will provide an immediate and meaningful recovery.

Before the Final Fairness Hearing, Plaintiff will submit detailed papers supporting the proposed Settlement and will ask the Court to determine whether the proposed Settlement is fair, reasonable, and adequate. At this time, however, Plaintiffs request only that the Court grant preliminary approval of the proposed Settlement so that notice under Fed. R. Civ. P. 23(e)(2) may be provided to Class Members. Specifically, Plaintiffs request that the Court enter the proposed Order Granting Preliminary Approval of Class Action Settlement, submitted herewith, which among other things, will:

1. Preliminarily approve the Settlement and Settlement Agreement as fair, reasonable, and adequate for the Settlement Class and California Subclass;

2. Conditionally certify the Settlement Class and California Subclass;

3. Designate Plaintiffs as representatives for the Class;

4. Designate M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corporation, Terence R. Coates of Markovits, Stock & DeMarco, LLC, and Joseph M. Lyon of The Lyon Firm, LLC as Class Counsel;

5. Designate Kroll Settlement Administration as the Claims Administrator;

6. Approve the form, content, and methods of the Long and Short Notices;

7. Establish procedures and schedule deadlines for notice to Class Members, and for Class Members to object and/or opt out of the Settlement, and to submit a Claim Form;

8. Schedule deadlines for the filing of papers in support of final approval, and in support

1    of attorneys' fees and Representative Plaintiffs' Service Awards;

2    9.    Schedule a date for the Final Fairness Hearing; and,

3    10. Establish other requirements and procedures to effectuate the Settlement.

4    **II.    STATEMENT OF FACTS**

5    In January 2022, LendUS notified approximately 11,500 individuals of the Data Incident.

6    Complaint (Doc. 1), ¶¶ 10, 12, 14, 38. LendUS offered these individuals only one year of

7    complimentary credit and identity monitoring services as a result of the Data Incident. *Id.*, ¶ 74.

8    Plaintiffs brought this action on behalf of all persons whose PII Plaintiffs allege was

9    compromised by LendUS's failure to: (i) adequately protect PII; (ii) warn of its inadequate

10   information security practices; and (iii) effectively monitor its network for security

11   vulnerabilities and incidents. Plaintiffs allege that LendUS's conduct amounts to negligence and

12   violates federal and state statutes. *Id.*, ¶ 7. Plaintiffs, through this class action lawsuit, allege that

13   they and Class Members have suffered injury as a result of LendUS's conduct, including: (i) lost

14   or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection,

15   and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost

16   opportunity costs associated with attempting to mitigate the actual consequences of the Data

17   Incident, including but not limited to lost time, and (iv) the continued and certainly increased risk

18   to their PII, which remains in LendUS's possession and is subject to further unauthorized

19   disclosures so long as LendUS fails to undertake appropriate and adequate measures to protect

20   the PII. *Id.*, ¶ 8.

21   **III.    PROCEDURAL HISTORY**

22   On February 4, 2024, Plaintiffs filed this lawsuit asserting claims against LendUS relating

23   to the Data Incident (the "Litigation"). Over the course of several months, Plaintiffs' counsel

24   continued to investigate the facts of the Data Incident, and the Parties engaged in informal

25   discovery, leading to informed settlement negotiations. Berry Decl., ¶ 11. The parties then agreed

26   to participate in early mediation. *Id.* With a mediation on the horizon, the parties continued to

27   rigorously pursue arm's length settlement negotiations and were able to reach a settlement in

28   principle on almost all essential terms of relief to the putative Class. *Id.* The parties executed the

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No.:  3:22-cv-00749-EMC

-3-

Settlement Agreement on June 20, 2022. *Id.*, ¶ 2.

## IV.    THE SETTLEMENT TERMS

### A.    Proposed Settlement Class Definition

The Settlement will provide relief for the following Settlement Class (S.A. 1.29):

> All persons to whom LendUS mailed notice that between February 2, 2021 and March 22, 2021, LendUS was the target of a criminal cyberattack in which third-party criminals gained 'unauthorized access to some LendUS employee email accounts' and may have gained unauthorized access to the notified individual's PII.

In comparison, the Nationwide Class as alleged in the Complaint (Doc. 1, ¶ 112) was defined as:

> All individuals whose PII was compromised in the data breach announced by Defendant on or about January 19, 2022 (the "Nationwide Class").

While the Settlement Class definition is more detailed than the definition within the Complaint, both definitions include the same impacted group of approximately 11,500 individuals who had their PII compromised in LendUS's Data Incident.

The Settlement also provides for a California subclass to address California Class Members' California Consumer Privacy Act ("CCPA") claim. The California Subclass is defined as:

> All persons residing in California between February 2, 2021 and March 22, 2021 to whom LendUS mailed notice that between February 2, 2021 and March 22, 2021, LendUS was the target of a criminal cyberattack in which third-party criminals gained "unauthorized access to some LendUS employee email accounts" and may have gained unauthorized access to the notified individual's PII.

S.A. 1.2. Again, the California Subclass definition is more detailed than described in the Complaint, where it was defined as:

> All individuals residing in California whose PII was compromised in the data breach announced by Defendant on or about January 19, 2022 (the "California Subclass").

Doc. 1, ¶ 113.

### B.    Settlement Benefits – Monetary Relief

The Settlement provides for three separate forms of monetary relief: (1) reimbursement of ordinary expenses and lost time up to $500 per Class Member; (2) reimbursement of extraordinary expenses up to $2,500 per Class Member; and (3) $50 per California Subclass member in recognition of the enhanced statutory rights afforded under California law. S.A. ¶¶

2.1-2.3.[3]

1.   <u>Expense and Lost-Time Cash Payment.</u>

The first category of payments is designed to provide reimbursement for ordinary out-of-pocket expenses related to the Data Incident and to compensate Class Members for time spent dealing with the effects of the Data Incident. S.A. ¶ 2.1. Ordinary expense reimbursements may be claimed at up to $500 per Class Member. *Id.* Notably, this category of reimbursements specifically includes reimbursement for up to three hours of lost time spent dealing with any effects of the Data Incident, compensated at $20 per hour. *Id.* Reimbursable ordinary expenses also include:

> (i) unreimbursed bank fees; (ii) unreimbursed card reissuance fees; (iii) unreimbursed overdraft fees; (iv) unreimbursed charges related to unavailability of funds; (v) unreimbursed late fees; (vi) unreimbursed over-limit fees; (vii) long distance telephone charges; (viii) cell minutes (if charged by minute), Internet usage charges (if charged by the minute or by the amount of data usage and incurred solely as a result of the Data Incident), and text messages (if charged by the message and incurred solely as a result of the Data Incident); (ix) unreimbursed charges from banks or credit card companies; (x) interest on payday loans due to card cancellation or due to over-limit situation incurred solely as a result of the Data Incident; (xi) costs of credit report(s), credit monitoring, and/or other identity theft insurance products purchased by members of the Settlement Class between October 11, 2021 and the date of the Claims Deadline; and  (xii) other losses incurred by Settlement Class Members determined by the Settlement Administrator to be fairly traceable to the Data Incident, including, but not limited to, the cost of postage and gas for local travel.

*Id.*

The cash payment portion of the monetary award for lost time is valued at $694,200.00 (11,570 Class Members x $60.00). Berry Decl., ¶ 23. Class Members will also be able to receive cash reimbursement for out-of-pocket losses under this Settlement benefit in addition to the cash payment for lost time.

2.   <u>Other Extraordinary Expense Reimbursement.</u>

The second category provides for reimbursement of extraordinary expenses, up to $2,500 per Settlement Class Member, incurred from February 2, 2021 through and including the end of

---

[3] This is a claims-made settlement. It does not create a common fund. Accordingly, the issue of reversion does not apply here because all settlement funds will be exhausted through the claims process.

the Claims Deadline for documented, unreimbursed out-of-pocket expenses incurred due to the Data Incident. S.A. ¶ 2.2. Claims under this category would include losses due to actual identity theft that resulted in unreimbursed financial charges that were not covered in S.A. ¶ 2.1. While counsel does not expect many claims under this category, this extraordinary expense component allows for compensation for the most severely impacted, adding substantial value to the Settlement.

### 3.   California Subclass Benefits.

In addition to the above benefits, California Subclass Members are eligible for a separate damages award. The amount awarded to California Subclass Members who submit a Valid Claim shall be $50, which is in addition to a claim for ordinary out-of-pocket expenses. S.A. ¶ 2.3. With approximately 5,387 California Subclass Members, the $50 payment made available to each such member creates a total benefit of an additional $269,350.00 to the California Subclass ($50 x 5,387). Berry Decl., ¶ 26.

### C.   Non-Monetary Settlement Benefits – Aura Financial Shield

In addition to the potential cash benefits outlined above, all Settlement Class Members will receive a unique identification number and password through the notice program so that they receive access to Aura's Financial Shield Services for a period of eighteen (18) months. S.A. 2.4. This settlement benefit is automatic for all Class Members and only requires the Class Members to sign up for Financial Shield without having to submit a claim under the Settlement for such relief.

The financial fraud coverage provided through Financial Shield includes the following services,

a)   Up to $1 Million Dollars reimbursement insurance through AIG covering losses due to identity theft and stolen funds;

b)   Financial transaction monitoring, including monitoring of all financial accounts registered by the Settlement Class Member, such as credit card

accounts, bank accounts (checking and savings) and investment accounts, for transactions exceeding selected thresholds;

c)   Continuous monitoring for high-risk transactions, including payday loans, wire transfers, and account openings, that involve the Settlement Class Member's personal information;

d)   Notification of attempts to use the Settlement Class Member's Social Security Number as part of an identity verification event, such as requesting a replacement credit or debit card; filing an insurance claim; updating personal information on an existing account; and/or opening a new account;

e)   Fictitious identity monitoring, which notifies the Settlement Class Member when his or her Social Security Number is being used in association with someone else's name and/or address;

f)   Online tax fraud monitoring and alerts, which monitors online income tax filings through TurboTax and alerts the Settlement Class Member if a tax return is filed using his or her Social Security Number;

g)   Home title monitoring, including monitoring properties identified by a Settlement Class Member and notifying the Settlement Class Member when an existing property title is changed, removed, or new titles are added to his or her name;

h)   Dark web monitoring, which continuously monitors the dark web for the Settlement Class Member's personal information;

i)   Public record monitoring, which monitors public records for address changes, automotive tickets, and arrests associated with the Settlement Class Member's name and Social Security number;

j)       Credit security freeze assistance, which provides the Settlement Class Member a central location to link to one of ten different consumer reporting agencies to freeze and unfreeze his or her credit files; and,

k)       Lost wallet protection, which provides a customer support line where the Settlement Class Member can receive help in canceling and replacing lost credit cards.

Financial Shield Services from Aura, like those provided for by the Settlement Agreement, retail for $135 per year per person, for a total of $202.50 for 18 months. Berry Decl., ¶ 28. Because all 11,570 Settlement Class Members will receive this benefit in addition to any monetary recovery they claim, the value of this benefit obtained for the Class is valued at over $2,342,925 ($202.50 x 11,570 class members) given that is approximately what it would cost for each class member to individually purchase this product on the open market and they will receive their claim identification number and password for participating in this settlement benefit without submitting a claim. *Id.*, ¶¶ 27-28.

Plaintiffs' pursuit of this case made broad settlement benefits available to the Class, including, but not limited to, $2,342,925 for 18 months of Financial Shield, $694,200 for lost time, and $269,350 for California Class Members (over $3,389,350 in value). *Id.*, ¶ 29. Because the Aura Financial Shield benefit is automatic ($2,342,925) without the need for an additional claim from Class Members and even assuming a claims rate of 5% for just for lost time and for California Class Members (($694,200 + $269,350 = $963,550); (5% of $963,550 = $48,177.50), the benefits received by Class Members without the need to submit proof for out-of-pocket or extraordinary expenses would be $2,391,102.50 ($2,342,925 + $48,177.50). *Id.* Class Counsel's attorneys' fees and cost reimbursement award is capped at $195,000.00 (approximately 8.2% of the value assuming a 5% claims rate) and was not negotiated until after the settlement benefits were negotiated and set for Class Members. *Id.*, ¶ 31.

D.    **LendUs's Business Practice Changes**

In addition to the foregoing settlement benefits, LendUS agrees to implement and/or maintain certain reasonable steps to adequately secure its systems and environments, including

taking the steps listed in **Exhibit 3**. S.A. ¶ 2.5. These changes will benefit those members of the Settlement Class whose information remains in LendUS's possession, and also other customers who use LendUS in the future. The settlement reached here played an integral role in ensuring that these business practices changes were made by LendUS.

### E. Class Notice and Settlement Administration

Notice will be paid for by Defendant, separate and apart from any funds available to Settlement Class Members. Notice will be given to the Settlement Class via individual notice, which will be given primarily by emailing the Short-Form Notice (attached at **Exhibit 4**) or mailing the Postcard Notice (attached as **Exhibit 5**) to the email and postal addresses associated with the accounts of Class Members. Berry Decl., ¶ 45.

A Long Notice (attached as **Exhibit 6**), will also be posted on the settlement website, www.LendUSsettlement.com, along with other important documents such as the Settlement Agreement, a copy of these preliminary approval filings, and the motions for final approval and for attorneys' fees and expenses. S.A. § 3.2(b), (d). The notice documents are clear and concise and directly apprise Class Members of all the information they need to know to make a claim or to opt-out or object to the Settlement. Fed. R. Civ. P. 23(c)(2)(B).

Furthermore, a toll-free number with interactive voice response, FAQs, and an option to speak to a live operator will be made available to address Class Members' inquiries. S.A, § 3.2(e). Kroll Settlement Administration, a nationally recognized and well-regarded class action settlement administrator, has been retained to serve as Claims Administrator, subject to the Court's approval. Berry Decl., ¶ 19. The Claims Administrator has estimated that notice and administration costs will total approximately $67,000. *Id*., ¶ 55. Kroll was selected after the Parties received three competing bids for settlement administration services. *Id*. at ¶ 56.

Class Counsel, based on their experience with data breach cases and in consultation with Kroll about the claims process in this case, anticipate that there will be a claims rate in this case of between 3-9% of the Class (in other words, roughly 350 to 1,050 claims). The Claim Form (attached as **Exhibit 7**) implemented in this case is very similar to that which Class Counsel have used in similar class action settlements involving data breach incidents with relatively similar

Settlement benefits under a claims-made settlement. Berry Decl., ¶ 51. Class Counsel are recommending the content of the Claim Form in this case because of Class Counsel's experience in successfully soliciting claims and allocating settlement benefits in similar class action cases. *Id*. Class Counsel's projections also comport with previous statements by the Northern District of California in similar matters. *See In re Facebook Biometric Info. Priv. Litig.*, No. 15-CV-03747-JD, 2021 WL 757025, at *2 (N.D. Cal. Feb. 26, 2021) (noting that consumer class actions typically have a claims rate between 4% and 9%).

### F. Attorneys' Fees and Representative Plaintiffs' Service Awards

The Settlement also provides that Class Counsel will be paid a cap of $195,000.00 in attorneys' fees, inclusive of any costs and case expenses, and Representative Plaintiffs will be paid Service Awards in the amount of $2,000.00 each. S.A. ¶¶ 1.27, 7.1, 7.2, 7.3, 7.5. These amounts will be paid separate and apart from the Class relief and were not negotiated until the benefits were negotiated in principle for the Settlement Class. *Id*., ¶¶ 7.1, 7.2. Class Counsel's attorneys' fees and cost reimbursement award is capped at $195,000.00. Berry Decl., ¶ 39.

Class Counsel's fee request of approximately 8.2% (assuming a 5% claims rate) of the value readily available to the Class as noted in Section IV.C. above, which is well within the range of reasonableness for settlements of this nature and size. Berry Decl., ¶ 33. This Court recently stated that "25% [is] considered the benchmark" in the Ninth Circuit. *Pauley v. CF Entm't*, No. 2:13-CV-08011-RGK-CW, 2020 WL 5809953, at *3 (C.D. Cal. July 23, 2020), *citing Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). In fact, the Ninth Circuit has found attorneys' fees awards of 1/3 of the fund to be reasonable. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of total recovery).

To date, Class Counsel have accrued a lodestar of roughly $85,000, which includes the time spent investigating the Data Incident pre-suit, post-suit informal discovery and investigation, extensive settlement negotiations, communicating with Plaintiffs, finalizing the terms of the Settlement Agreement, and drafting and filing these preliminary approval filings. Berry Decl., at ¶¶ 35-39 (including detailed lodestar charts for each firm from Class Counsel).

---

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No.:  3:22-cv-00749-EMC

-10-

Class Counsel anticipate accruing similar lodestar totals to get this case through confirmatory discovery, settlement administration, and final approval. *Id.*

Plaintiffs in this case have been vital in litigating this matter, including providing their personal information to proposed Settlement Class Counsel. Plaintiffs have been personally involved in the case and support the Settlement. Berry Decl., ¶¶ 40, 59. Plaintiffs will separately petition the Court for awards of $2,000 each in recognition of the time, effort, and expense they incurred pursuing claims that benefited the Settlement Class. *See* S.A., § 7.3.

The amount requested here is presumptively reasonable and commonly awarded in settled class action cases. *See, e.g.*, *In re Pauley*, 2020 WL 5809953, at *4 (This Court granted "class representative enhancement fees in the amount of $5,000 each to Plaintiffs," finding that amount to be "presumptively reasonable"); *In re Yahoo Mail Litig.*, No. 13-CV-4980, 2016 WL 4474612, at *11 (N.D. Cal. Aug. 25, 2016) ("The Ninth Circuit has established $5,000.00 as a reasonable benchmark [for service awards].").

## G.    Comparison of Settlement Benefits Against Full Recovery

The Settlement provides broad settlement benefits to all 11,570 Class Members in the form of cash payments (for lost time up to three hours at $20 per hour; up to $500 for out-of-pocket expenses; up to $2,500 for any extraordinary expenses) **and** 18-months of automatic and additional Identity Protection. In addition to these Settlement benefits, California Subclass Members will receive a $50 cash payment for their CCPA claim (subject to the $500 out-of-pocket cap).

Generally, the benefits made available under this Settlement give Plaintiffs and Class Members cash and credit protection, which is what Class Members would be seeking on their best day in Court. Plaintiffs and Class Members are able to receive a variety of Settlement benefits including cash, credit protection, and LendUS's commitment to enhanced cybersecurity policies and procedures which are a form of injunctive relief. Plaintiffs and Class Members are able to fill up their personal buckets with the variety of real and tangible Settlement benefits made available through this Settlement. Class Members ran the risk of recovering only some or

none of these Settlement benefits at trial. California Subclass Members will also receive an additional $50 payment in recognition of the potential to recover statutory damages under the CCPA. This amount is discounted for settlement purposes in recognition of the time-value of money, along with the risks inherent in litigating a complex action through trial and appeals.

### H.     Release

Upon entry of the Final Approval Order, Plaintiffs and the Settlement Class will be deemed to have "fully, finally, and forever released, relinquished, and discharged all Released Claims." S.A., ¶ 1.25. Released Claims extends to those claims that have "been asserted, was asserted, or could have been asserted, by any member of the Settlement Class against any of the Released persons based on, relating to, concerning or arising out of the Data Incident and alleged theft of payment card data or other personal information or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Litigation." *Id*. Released Claims shall include Unknown Claims as defined in ¶ 1.34 of the Settlement Agreement. *Id*., ¶ 1.25 – 1.35. Released Claims shall not include the right of any Settlement Class Member or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement, and shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class. *Id*., ¶ 1.25. The release extends to the claims in the Complaint and any related claims Plaintiffs and Class Members may have asserted based on the same or similar factual allegations relating to the Data Incident that is the subject of this Litigation. *Id*.

## V.     ARGUMENT

Courts within the Ninth Circuit strongly favor class action settlements where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned").

The MANUAL FOR COMPLEX LITIGATION (Fourth) advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No.:  3:22-cv-00749-EMC

-12-

1   that the proposed class satisfies the criteria." § 21.632. Because a court evaluating certification

2   of a class action that settled is considering certification only in the context of settlement, the

3   court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods.,*

4   *Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

5       Plaintiffs seek certification of a Settlement Class consisting of approximately 11,570

6   individuals and the California Subclass consisting of 5,387 of the 11,570 Class Members. S.A. ¶

7   1.2; S.A. ¶ 1.3.

8       For the reasons set forth below, the Court should certify the Settlement Class and

9   California Subclass for settlement purposes and preliminarily approve the Settlement.

10      **A.      The Settlement Satisfies Rule 23(a).**

11      Before assessing the parties' settlement, the Court should first confirm the underlying

12  settlement class meets the requirements of Rule 23(a). *See Amchem*, 521 U.S. at 620; Manual for

13  Complex Litigation (Fourth), § 21.632. The requirements are well known: numerosity,

14  commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis*

15  *v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).

16          1.      The proposed Class is sufficiently numerous.

17      Generally, courts will find numerosity is satisfied where a class includes at least 40

18  members. *See, e.g. Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal. 2007)

19  (numerosity is generally satisfied when a class has at least 40 members). Numbering

20  approximately 11,500 individuals, the proposed Settlement Class easily satisfies Rule 23's

21  numerosity requirement. Furthermore, the California Subclass, consisting of more than 5,000

22  individuals, also satisfies the numerosity requirement.

23          2.      The Settlement Class and California Subclass Satisfy the Commonality
                    Requirement.

24      The Settlement Class and California Subclass satisfy the commonality requirement,

25  which requires that class members' claims "depend upon a common contention," of such a nature

26  that "determination of its truth or falsity will resolve an issue that is central to the validity of each

27  [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in

28  most data breach cases, "[t]hese common issues all center on [Defendant's] conduct, satisfying

---

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No.:  3:22-cv-00749-EMC

-13-

the commonality requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016). Thus, common questions include, *inter alia*, whether LendUS engaged in the wrongful conduct alleged; whether Class Members' PII was compromised in the Data Incident; whether LendUS owed a duty to Plaintiffs and Class Members; whether LendUS breached its duties; whether LendUS unreasonably delayed in notifying Plaintiffs and Class Members of the material facts of the Data Incident; and whether LendUS engaged in the common law violations alleged in the Complaint.

Accordingly, Plaintiffs have met the commonality requirement of Rule 23(a).

3.    <u>Plaintiffs' claims and defenses are typical to those of the Settlement Class.</u>

Plaintiffs satisfy the typicality requirement of Rule 23 because Plaintiffs' claims, which are based on Defendant's alleged failure to protect Plaintiffs' and Class Members' PII, are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Meyer v Portfolio Recovery Assocs.*, 707 F.3d 943, 1041-42 (9th Cir. 2012) (upholding typicality finding). Plaintiffs allege their PII was compromised, and that they were therefore impacted by the same allegedly inadequate data security that they allege harmed the rest of the Settlement Class.

4.    <u>Plaintiffs will adequately protect the interests of the Class.</u>

The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiffs and their counsel and the absent class members; and (2) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis*, 657 F.3d at 985, citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, Plaintiffs have no conflicts of interest with other class members, are subject to no unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the class. Plaintiffs are members of the Class who received data breach notifications from LendUS and experienced the same injuries and seek, like other Class Members, compensation for LendUS's alleged data security shortcomings. As such, their interests and the interests of their counsel are consistent with those of other Class Members.

Further, proposed Class Counsel have decades of combined experience handling complex class action cases including over 100 data breach class actions in state and federal courts around the United States. Berry Decl. ¶¶ 13, 61. Thus, Plaintiffs satisfy the requirement of adequacy.

**B.    The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement.**

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, Plaintiffs allege that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Id.*

1.    Common Questions Predominate.

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623, citing Wright, et al., Fed. Prac. and Proc. § 1777, p. 518-19 (2d ed. 1986). "If common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then 'there is clear justification for handling the dispute on a representative rather than on an individual basis,' and the predominance test is satisfied." *See Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 526 (C.D. Cal. 2012), quoting *Hanlon*, 150 F.3d at 1022.

Consistent with the position on commonality, Plaintiffs allege that predominance is readily met here "where the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] conduct.'" *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184-CRB, 2020 WL 1288377, at *5 (N.D. Cal. Mar. 18, 2020) (alterations in original), quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 559 (9th Cir. 2019). Plaintiffs' claims depend on whether LendUS used reasonable data security measures to protect consumers' PII. That question can be resolved using the same evidence for all Class Members, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said

1    to predominate, the action may be considered proper under Rule 23(b)(3) … .'") (citation
2    omitted).

3                        2.    <u>Class Action is Superior to Other Methods of Adjudication.</u>

4           Rule 23(b)(3) also requires that a district court determine that "a class action is superior
5    to other available methods for the fair and efficient adjudication of the controversy." In
6    determining whether the "superiority" requirement is satisfied, a court may consider: (1) the
7    interest of members of the class in individually controlling the prosecution or defense of separate
8    actions; (2) the extent and nature of any litigation concerning the controversy already commenced
9    by or against members of the class; (3) the desirability or undesirability of concentrating the
10   litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in
11   the management of a class action. Fed. R. Civ. P. 23(b)(3).

12          First, adjudicating individual actions here is impracticable: the amount in dispute for
13   individual class members is too small, the technical issues involved are too complex, and the
14   required expert testimony and document review too costly. *See Just Film, Inc. v. Buono*, 847 F.3d
15   1108, 1123 (9th Cir. 2017). There are thousands of class members with modest individual claims,
16   most of whom likely lack the resources necessary to seek individual legal redress. *See Local Joint*
17   *Exec. Bd. of Culinary/ Bartender Tr. Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1163 (9th
18   Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly
19   well suited to class treatment); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168,
20   1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of
21   litigating on an individual basis, this factor weighs in favor of class certification."). *See* Fed. R.
22   Civ. P. 23(b)(3);  Second, there are no other individual actions currently pending arising from
23   this Data Incident. *See Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290 BEN NLS,
24   2013 WL 444619, at *3 (S.D. Cal. Feb. 5, 2013) (superiority met where "considerations of
25   judicial economy favor litigating a predominant common issue once in a class action instead of
26   many times in separate lawsuits" and the "small individual claims of class members" made it
27   "unlikely that individual actions will be filed"). And third, this forum is home to the Defendant,
28   and the majority of the Class Members.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No.:  3:22-cv-00749-EMC

-16-

1    Finally, because the claims are being certified for purposes of settlement, there are no

2 issues with manageability. Resolution of thousands of claims in one action is far superior to

3 individual lawsuits and promotes consistency and efficiency of adjudication. *See also, Amchem*,

4 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court

5 need not inquire whether the case, if tried, would present intractable management problems, see

6 Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

7    For these reasons, certification of the Settlement Class for purposes of settlement is

8 appropriate.

9    **C.    The Settlement Should Be Preliminarily Approved Pursuant to Rule 23(e).**

10    "[U]nder Rule 23(e)(1), the issue at preliminary approval turns on whether the Court 'will

11 likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for

12 purposes of judgment on the proposal.'" *Reyes v. Experian Info. Sols., Inc.*, No.

13 SACV1600563AGAFMX, 2020 WL 466638, at *1 (C.D. Cal. Jan. 27, 2020). Rule 23(e)

14 provides that a proposed class action may be "settled, voluntarily dismissed, or compromised

15 only with the court's approval." Moreover, "[t]he parties must provide the court with information

16 sufficient to enable it to determine whether to give notice of the proposal to the class." If the

17 parties make a sufficient showing that the Court will likely be able to "approve the proposal" and

18 "certify the class for purposes of judgment on the proposal," "[t]he court must direct notice in a

19 reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P.

20 23(e). Thus, notice should be given to the class, and hence preliminary approval should be

21 granted, where the Court "will likely be able to" finally approve the settlement under Rule

22 23(e)(2) and certify the class for settlement purposes. *Id.*

23    "In evaluating a proposed settlement at the preliminary approval stage, some district

24 courts . . . have stated that the relevant inquiry is whether the settlement 'falls within the range

25 of possible approval' or 'within the range of reasonableness.'" *Bykov v. DC Trans. Servs., Inc.*,

26 No. 2:18-cv-1692 DB, 2019 WL 1430984, at *2 (E.D. Cal. Mar. 29, 2019). That is, "preliminary

27 approval of a settlement has both a procedural and a substantive component." *In re Tableware*

28 *Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No.:  3:22-cv-00749-EMC

-17-

As to the procedural component, "a presumption of fairness applies when settlements are negotiated at arm's length, because of the decreased chance of collusion between the negotiating parties." *Gribble v. Cool Transps. Inc*., No. CV 06-4863 GAF (SHx), 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008).

With respect to the substantive component, "[a]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *Murillo v. Pac. Gas & Elec. Co*., 266 F.R.D. 468, 479 (E.D. Cal. 2010), quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).

The Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement; and, (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon*, 150 F.3d at 1026. Rule 23(e) requires a court to consider several additional factors, including whether the class representative and class counsel have adequately represented the class, and whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by federal courts. *See Franklin v. Kaypro Corp*., 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits"). Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

### 1.    The Strength of Plaintiffs' Case.

This case involves a proposed class of approximately 11,500 individuals (each of whom, LendUS has argued, would need to establish cognizable harm and causation); a complicated and

technical factual background; and a motivated Defendant that already has provided some relief to Class Members through a year of complimentary credit monitoring. Notwithstanding, Plaintiffs believe they have and would continue to build a strong case for liability if this matter were to continue.

2.     <u>The Risk, Expense, Complexity, and Likely Duration of Further Litigation.</u>

While Plaintiffs believe they have strong claims, their success is not guaranteed. It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co*., No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos*., *Inc.*, No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). Given the inherent risks Plaintiffs face with respect to the novel claims in data breach class actions, including class certification, summary judgment, and trial, the substantial benefits the Settlement provides favors preliminary approval of the Settlement. Berry Decl., ¶ 66.

Although nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is a particularly complex class due the constant challenges plaintiffs face in data breach class actions. Plaintiffs face risk relating to the seemingly inevitable challenges defendants raise in motions to dismiss class action complaints, including the failure to allege "cognizable injury" as an element of Plaintiffs' causes of action. Additionally, to the extent Plaintiffs were to survive a motion to dismiss in whole or in part, they also would face substantial risk in certifying some or all of their causes of action. These risks could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in zero recovery to the class. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc*., No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016). Thus, this factor favors approval.

3.    <u>The Risk of Maintaining Class Action Status Through Trial.</u>

While Plaintiffs' case is still in the pleadings stage, the parties have not briefed, and the Court has not yet certified, any class treatment of this case. If they were to proceed to litigate their claims through trial, Plaintiffs would encounter risks in obtaining and maintaining certification of the class. The class has not yet been certified, and Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. Am. Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). Class certification in contested consumer data breach cases is not common—first occurring in *Smith v. Triad of Ala.*, *LLC*, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017), and more recently in *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021), where a class was certified over objection to plaintiffs' damage calculation. Most recently, class certification was granted in part and denied in part in *In Re Marriott Int. Inc. Customer Data Security Breach Litig.*, No. 19-md-2879, 2022 WL 1396522 (D. Md. May 3, 2022) (certifying several classes in a data breach class action). While certification of additional consumer data breach classes may well follow, it still remains a substantial risk for Plaintiffs in this case.

4.    <u>The Amount Offered in Settlement.</u>

In light of the risks and uncertainties presented by data breach litigation, the value of the Settlement favors approval. The Settlement makes significant relief available to Settlement Class Members. Each Class Member is eligible to make a claim for up to $500 in reimbursements for expenses and lost time, up to $2,500 in reimbursements for extraordinary expenses related to the Data Incident, and an additional $50 statutory damages award to California Subclass Members. Moreover, all Settlement Class Members automatically receive access to Aura's Financial Shield Services for a period of eighteen months without the need to submit a claim (a value of approximately $202.50 per claimant). Berry Decl., ¶¶ 20-30. This settlement is a strong result for the Class, and as discussed below is in line with other settlements in cases involving data breaches of similar scope. Because the settlement amount here is similar to other settlements reached and

approved in similar cases, this factor reflects that the Settlement is fair. *See Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases).

Following the Northern District's Procedural Guidance for Class Action Settlements, Class Counsel compare this settlement to a recent similar settlement where they each (in addition to other attorneys) participated as counsel for plaintiffs. In *Schellhorn v Timios, Inc.*, No. 2:21-cv-08661 (C.D. Cal.), over roughly 75,000 individuals had their PII compromised in a 2021 data breach. Like this case, *Timios* was resolved before a motion to dismiss on a claims-made basis. The settlement benefits made available to class members in *Timios* are substantially similar to those afforded here. The following charts compares the result of Timios to the proposed settlement here,

| Settlement Terms | *Timios* | *LendUS* |
|---|---|---|
| Class Size | 74,755 | 11,570 |
| Out-of-pocket Reimbursement | $500.00 | $500.00 |
| Cash Payment for Lost Time | Up to 3 hours at $20/hour | Up to 3 hours at $20/hour |
| Cash Payment for CCPA Claim | $50.00 | $50.00 |
| Extraordinary Expenses | $3,000.00 | $2,500.00 |
| Representative Plaintiff Service Award | $2,500.00 | $2,000.00 |
| Future Identity Protection | 18 months | 18 months |
| Attorneys' Fees & Expenses | $215,000.00 | $195,000.00 |
| Cybersecurity Enhancements | X | X |

United States District Judge Virginia A. Phillips granted preliminary approval of the class action settlement in *Timios* on May 10, 2022 and notice has been issued to class members. Because the Settlement forged for Plaintiffs and Class Members here provides Settlement benefits consistent with those that were preliminarily approved in *Timios*, Plaintiffs and the Class respectfully request that the Court grant preliminary approval of class action settlement in this case.

1        5.      The Extent of Discovery Completed and the Stage of Proceedings.

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Here, the parties engaged in a slew of informal discovery. Plaintiffs' counsel has gathered sufficient and reliable information that was available regarding LendUS and the Data Incident—including collecting from LendUS notifications it sent to certain state attorneys general offices relating to the Data Incident, reviewing publicly-available documents concerning announcements of the Data Incident, learning the cybersecurity enhancements LendUS has implemented in response to the Data Incident, confirming the cybersecurity enhancements LendUS was willing to commit to in the future as part of this Settlement, and understanding the types of PII at issue in the Data Incident. Berry Decl., ¶ 17. The parties also informally exchanged non-public information concerning the Data Incident and the size of the Class in preparation for a successful mediation. *Id.*, ¶ 65.

Class Counsel's collective experience in similar types of privacy and data protection practices provided substantive knowledge on the subject to enable Class Counsel to evaluate the risks and value of the litigation and adequately represent Plaintiffs' and Class Members' interests without expending hundreds of hours and substantial financial resources to come up to speed on the subject area. *Id.*, ¶ 61. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017). Accordingly, Plaintiffs are well informed about the strengths and weaknesses of this case.

6.      Class Counsel's Experience and Views.

Class Counsel assisted Plaintiff in initiating this lawsuit when LendUS announced the Data Incident, which, based upon publicly-available information, impacted approximately 11,500 LendUS customers. Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one. *Id.*, ¶ 13. Having worked on behalf of the putative class since the Data Incident was first announced, evaluated the legal and

factual disputes, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel fully support the Settlement. *Id*., ¶ 64. A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g., Norton v. Maximus, Inc.*, No. 1:14-cv-0030, 2017 WL 1424636, at *6 (D. Idaho Apr. 17, 2017); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Thus, this factor supports approval.

### 7.     Governmental Participants.

There is no governmental participant in this matter. This factor is neutral.

### 8.     The Reaction of the Class Members to the Proposed Settlement

Because notice has not yet been given, this factor is not yet implicated; however, Representative Plaintiffs support the Settlement. Decl., ¶ 40.

### 9.     Lack of Collusion Among the Parties.

The parties' arms'-length negotiations resulted in a settlement that provides broad and substantial value to the Class with monetary compensation, future identify theft protection, and injunctive relief (*i.e.*, enhanced security). The parties did not negotiate attorneys' fees until agreement on all substantive portions of the class resolution had been reached, and both the class portion of the resolution and the attorneys' fees were negotiated during a series of arms'-length negotiations. Furthermore, Class Counsel and LendUS's counsel are well-versed in handling data breach class actions such as this one and fully understand the values recovered in similar cases. Therefore, the Court can be assured that the negotiations were not collusive.

### D.     The Court Should Approve the Proposed Notice Program

Rule 23 requires that before final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice may be by one or more of the following:  United States mail, electronic means, or other appropriate means." *Id*.

Such notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No.:  3:22-cv-00749-EMC

-23-

means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To satisfy due process, notice to class members must again be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. CR 23(c)(2); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Class settlement notices must present information about a proposed settlement simply, neutrally, and understandably. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019). Notice is adequate if it generally describes the terms of the class action settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *Id.*

Here, and after a competitive bid process, the parties have agreed to a robust notice program to be administered by a well-respected third-party class administrator—Kroll—which will use all reasonable efforts to provide direct and individual notice to each potential Settlement Class Member via email or mail. Berry Decl., ¶ 19. The costs of administering the Settlement will be paid by LendUS and will not negatively impact the amount available to Settlement Class Members who make valid claims. *Id.* ¶ 44. The Notice and Claim Forms negotiated by the Parties are clear and concise and inform Settlement Class Members of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt-out of the Settlement. *Id.* ¶ 47; *see also* Exhibits 4, 5, 6, & 7.

In addition to the direct notice, the Administrator will also establish a dedicated Settlement Website and will maintain and update the website throughout the Claims Period, with the forms of Short Notice, Postcard, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement. *Id.* ¶ 46. The Claims Administrator will also make a toll-free help line staffed with a reasonable number of live operators available to provide Settlement Class Members with additional information about the settlement. *Id.* ¶ 48. The Claims Administrator is also authorized and required to provide copies of the forms of Short Notice, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement, upon request. *Id.*

Plaintiffs have negotiated a notice program that is reasonably calculated under all the

circumstances to apprise Class Members of the pendency of the action and afford them an opportunity to present their objections. Notice programs providing notice by email and mail have been approved by the Ninth Circuit. *See e.g. In re Online DVD-Rental Antitrust Litig.*, 779 F. 3d 934, 946 (9th Cir. 2015) (finding notice provided initially by email, and then by mail to individuals whose emails bounced back was sufficient under both the U.S. Constitution and Rule 23). Because the notice plan ensures that Settlement Class Members' due process rights are amply protected, this Court should approve it. *See Hartranft v. TVI, Inc*., No. 15-01081-CJC-DFM, 2019 WL 1746137, at \*3 (C.D. Cal. Apr. 18, 2019).

### E.    Appointment of the Claims Administrator

In connection with implementation of the Notice Program and administration of the settlement benefits, the Parties request the Court appoint Kroll Settlement Administration to serve as the Claims Administrator. Kroll is qualified to handle such duties and has a proven track record of supporting thousands of class action administrations. Berry Decl., ¶¶ 19, 42. Notice and administration is expected to cost approximately $67,000 and will be paid by Defendant separate and apart from the relief to the Class. Berry Decl., ¶¶ 44, 55.

### F.    Appointment of Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Here, proposed Class Counsel has extensive experience prosecuting class actions and other complex cases, and specifically data breach cases. *See* Berry Decl. ¶ 13, Exs. A, B, and C (firm resumes), ¶ 61. Accordingly, Plaintiffs respectfully request that the Court appoint M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corporation, Terence R. Coates of Markovits, Stock & DeMarco, LLC, and Joseph M. Lyon of The Lyon Firm as Class Counsel.

## VI.    CONCLUSION

Plaintiffs have negotiated a fair, reasonable, and adequate Settlement providing Class Members with significant monetary benefits, identity protection, and equitable relief. For all the above reasons, Plaintiffs respectfully request this Court to grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

Date: June 21, 2022                          Respectfully Submitted,

                                             */s/ M. Anderson Berry*
                                             M. ANDERSON BERRY (SBN 262879)
                                             **CLAYEO C. ARNOLD,**
                                             **A PROFESSIONAL LAW CORP.**
                                             865 Howe Avenue
                                             Sacramento, CA 95825
                                             Tel: (916) 239-4778
                                             aberry@justice4you.com

                                             Terence R. Coates (admitted *Pro Hac Vice*)
                                             **MARKOVITS, STOCK & DEMARCO, LLC**
                                             119 E Court St., Suite 530
                                             Cincinnati, OH 45202
                                             Telephone: (513) 651-3700
                                             Fax: (513) 665-0219
                                             tcoates@msdlegal.com

                                             Joseph M. Lyon (admitted *Pro Hac Vice*)
                                             **THE LYON FIRM, LLC**
                                             2754 Erie Avenue
                                             Cincinnati, OH 45208
                                             Phone: (513) 381-2333
                                             Fax: (513) 766-9011
                                             jlyon@thelyonfirm.com

                                             *Attorneys for Plaintiffs and the Proposed Classes*