M. Anderson Berry (SBN 262879)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916)239-4778
Facsimile: (916) 924-1829
Email: aberry@justice4you.com

*Attorney for Plaintiffs and the Proposed Class*

*[Additional counsel listed on signature page.]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELIA REMOUNDOS, et al., | Case No. 3:22-cv-00749-EMC |
| Plaintiffs, | [*The Honorable Edward M. Chen*] |
| v. | **PLAINTIFFS' UNOPPOSED RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT** |
| LEND US, LLC, | |
| Defendant. | Complaint Filed:    February 4, 2022 |

# <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

PLAINTIFFS' MEMORANDUM IN SUPPORT……………………………………........  2

I.    PRELIMINARY STATEMENT…………………………………………………  2

II.    STATEMENT OF FACTS…………………………………………………….  3

III.    PROCEDURAL HISTORY……………………………………………........  4

IV.    THE SETTLEMENT TERMS…………………………………………  4

  A.    Proposed Settlement Class Definition…………………………………  4

  **B.**    Settlement Benefits – Monetary Relief…………………………  5

      1.    Lost-Time Claims, California Cash Payment Claims, and
           Ordinary Expense Reimbursement Claims……………………………  6

      2.    Other Extraordinary Expense Reimbursement………………………...  7

  **C.**    Non-Monetary Settlement Benefits – Aura Financial Shield & Cybersecurity
         Enhancements………………………………………………………..  7

  **D.**    Class Notice and Settlement Administration…………………………........  8

  **E.**    Attorneys' Fees and Representative Plaintiffs' Service Awards……………………  10

  **F.**    Comparison of Settlement Benefits Against Full Recovery…………………………  11

  **G.**    Release………………………………………………………  11

V.    ARGUMENT………………………………………………………  11

  A.    The Settlement Satisfies Rule 23(a)………………………………………  12

      1.    The proposed Class is sufficiently numerous………………………………..  12

      2.    The Settlement Class and California Subclass Satisfy the Commonality
           Requirement……………………………………………………  12

      3.    Plaintiffs' claims and defenses are typical to those of the Settlement Class..  13

      4.    Plaintiffs will adequately protect the interests of the Class…………………  13

  **B.**  The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement……………  14

      1.    Common Questions Predominate………………………………………  14

      2.    Class Action is Superior to Other Methods of Adjudication………………  15

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No.  3:22-cv-00749-EMC

-ii-

# TABLE OF CONTENTS

**Page**

**C.**   The Settlement Should Be Preliminarily Approved Pursuant to Rule 23(e)………   16

    1.   The Strength of Plaintiffs' Case…………………………………………..   17

    2.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation..   17

    3.   The Risk of Maintaining Class Action Status Through Trial………………..   18

    4.   The Amount Offered in Settlement…………………………………………   18

    5.   The Extent of Discovery Completed and the Stage of Proceedings…………   20

    6.   Class Counsel's Experience and Views…………………………………...   20

    7.   Governmental Participants………………………………………………...   21

    8.   The Reaction of the Class Members to the Proposed Settlement……………   21

    9.   Lack of Collusion Among the Parties……………………………………..   21

**D.**   The Court Should Approve the Proposed Notice Program………………………..   21

**E.**   Appointment of the Settlement Administrator……………………………………   22

**F.**   Appointment of Settlement Class Counsel…………………………………………   23

VI.   CONCLUSION………………………………………………………………..   23

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No.  3:22-cv-00749-EMC

-iii-

**TABLE OF AUTHORITIES**

**Cases**                                                                                              **Page**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)…………………………………………  12, 14

*Bykov v. DC Trans. Servs., Inc.*
    No. 2:18-cv-1692 DB, 2019 WL 1430984, at *2 (E.D. Cal. Mar. 29, 2019)…………………..      16

*Calderon v. Wolf Firm*,
    No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018)……..      19

*Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal. 2007)…………………………..      12

*Chester v. TJX Cos., Inc.*,
    No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017)…………      17

*Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)…………………………..      11

*Dennis v. Kellogg Co.*,
    No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013)………………..      17

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Fed. R. Civ. P. 23 23(c)(2)……………..      21

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011)…………………………… 12, 13

*Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989)……………………………………      17

*Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)………………………………………..      16

*Gribble v. Cool Transps. Inc.*,
    No. CV 06-4863 GAF (SHx), 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008)…………….      16

*Grimm v. Am. Eagle Airlines, Inc.*,
    No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014…….      18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)……………………………… 13, 14, 17

*Hartranft v. TVI, Inc.*,
    No. 15-01081-CJC-DFM, 2019 WL 1746137, at *3 (C.D. Cal. Apr. 18, 2019)…………………      22

*Hillman v. Lexicon Consulting, Inc.*,
    No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017)………      20

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)…………………….      17

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No.  3:22-cv-00749-EMC

-iv-

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page**

*In re Brinker Data Incident Litig.*,
    No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021)…………..     18

*In re Facebook Biometric Info. Priv. Litig.*,
    No. 15-CV-03747-JD, 2021 WL 757025, at *2 (N.D. Cal. Feb. 26, 2021)…………………….     10

*In re Google LLC St. View Elec. Commc'ns Litig.*,
    No. 10-MD-02184-CRB, 2020 WL 1288377, at *5 (N.D. Cal. Mar. 18, 2020)………………     14

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 559 (9th Cir. 2019)……………………….     14

*In Re Marriott Int. Inc. Customer Data Security Breach Litig.*,
    No. 19-md-2879, 2022 WL 1396522 (D. Md. May 3, 2022)…………………………………..     18

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)……………………………..     10

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)…………………..     16

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
    No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016)……………….     13

*Just Film*, 847 F.3d at 1123……………………………………………………………………     15

*Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 526 (C.D. Cal. 2012)………………………….     14

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998)……………….…………….     20

*Local Joint Exec. Bd. of Culinary/ Bartender Tr. Fund v. Las Vegas Sands, Inc.*
    244 F.3d 1152, 1163 (9th Cir. 2001)………………………………………………………..     15

*Malta v. Fed. Home Loan Mortg. Corp.*,
    No. 10-CV-1290 BEN NLS, 2013 WL 444619, at *3 (S.D. Cal. Feb. 5, 2013)…………………     15

*Meyer v Portfolio Recovery Assocs.*, 707 F.3d 943, 1041-42 (9th Cir. 2012)………………………     13

*Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal. 2010)……………………………     16

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)……………     21

*Norton v. Maximus, Inc.*,
    No. 1:14-cv-0030 WBS, 2017 WL 1424636, at *6 (D. Idaho Apr. 17, 2017)……………………     21

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No.  3:22-cv-00749-EMC

-v-

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                              **Page**

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)…………………………………….    21

*Reyes v. Experian Info. Sols., Inc.*,
    No. SACV1600563AGAFMX, 2020 WL 466638, at *1 (C.D. Cal. Jan. 27, 2020)………….    16

*Schellhorn v Timios, Inc.*, No. 2:21-cv-08661 (C.D. Cal.)…………………………………….   19, 20

*Smith v. Triad of Ala.*, LLC,
    No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017)..    18

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)…………………………………    14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)
    No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016)……………….    12

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)………………...    15

**Other**                                                                                                                                             **Page**

Fed. R. Civ. P. 23(a)……………………………………………………………………………    12

Fed. R. Civ. P. 23(a)(3)……………………………………………………………………………    13

Fed. R. Civ. P. 23(a)(4)……………………………………………………………………………    13

Fed. R. Civ. P. 23(b)(3)…………………………………………………………………… 14, 15, 21

Fed. R. Civ. P. 23(c)(2)(B)………………………………………………………………………...  9, 21

Fed. R. Civ. P. 23(e)…………………………………………………………………………… 1, 2, 16

Fed. R. Civ. P. 23(e)(1)(B)………………………………………………………………………...    21

Fed. R. Civ. P. 23(e)(2)…………………………………………………………………………  2, 16

Fed. R. Civ. P. 23(g)(1)(B)………………………………………………………………………..    23

Fed. R. Civ. P. 23(g)(1)(A)(i–iv)…………………………………………………………………    23

The MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.632……………………………………    12

Wright, et al., Fed. Prac. and Proc. § 1777, p. 518-19 (2d ed. 1986)……………………………...  6, 14

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No.  3:22-cv-00749-EMC

-vi-

On August 25, 2022, the Court held a hearing on Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, [Dkt. Nos. 25-26]. At that hearing, the Court ordered that Plaintiffs Evangelia Remoundos, John Biegger, and Anne Biegger (collectively, "Plaintiffs") and Defendant LendUS, LLC ("LendUS" and together with Plaintiffs, the "Parties") further meet and confer on the terms of the Settlement to address various concerns raised by the Court. At the Court's direction, the Parties have negotiated modifications to the Settlement to specifically address the Court's concerns, and have documented the same both in the Amended Settlement Agreement, attached hereto as **Exhibit 1** ("A.S.A.") and in this Renewed Motion for Preliminary Approval of Class Action Settlement. Specifically, the Parties have agreed to (1) increase the payment to California Class Members from $50 to $100 and require LendUS to pay a minimum amount for such claims equal to a 2% claims rate; (2) require LendUS to pay a minimum amount for lost-time claims equal to a 2% claims rate assuming all lost-time claims are for the maximum amount (i.e., $60); (3) increase the Pango Financial Shield duration from 18 months to 36 months; (4) lower the attorneys' fees cap from $195,000 to $175,000 with any reduction to the $175,000 in attorneys' fees not being returned to LendUS but, instead, being distributed *pro rata* to Class Members submitting valid claims; (5) edits certain of the Settlement notices to increase the potential for Class Members to receive cash payments; and (6) permit a reminder email notice to Class Members who have not yet submitted a claim 14 days before the Claim Deadline. Second Declaration of M. Anderson Berry in Support of Preliminary Approval of Class Action Settlement, ¶ 7 ("Berry Second Decl.") (attached as **Exhibit 2**). Class Members retain the right to submit claims for ordinary expenses capped at $500[1] (inclusive of any lost time or California Subclass Member payments) and extraordinary expenses capped at $2,000. Because of these meaningful enhancements to the Settlement and the Parties' productive effort to address the concerns raised by the Court during the August 25, 2022 preliminary approval hearing, Plaintiffs hereby submit, pursuant to Fed. R. Civ. P. 23(e), the following unopposed Renewed Motion for Preliminary Approval of Class Action Settlement. and respectfully request that the Court to enter the proposed Order Granting Preliminary Approval of Class Action Settlement (attached as **Exhibit 3**).

---

[1] The $500 ordinary expense cap shall not apply to any *pro rata* increase of valid claims.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-00749-EMC

-1-

1    Before filing this Renewed Motion, Plaintiffs conferred with LendUS and determined that the

2    Motion is unopposed. The grounds for the Court's potential granting of this unopposed Motion are

3    included in the accompanying Memorandum in Support, and the reasons set forth in Plaintiffs' original

4    and supplemental preliminary approval filings, [Dkt. Nos. 26, 32].

**PLAINTIFFS' MEMORANDUM IN SUPPORT**

**I.    PRELIMINARY STATEMENT**

7    Plaintiffs have reached a modified agreement with LendUS to enhance the class actions settlement

8    benefits made available to Plaintiffs and Class Members. *See* Settlement Agreement. The modified

9    Settlement, as noted above, will provide substantial settlement benefits to the Settlement Class in the face

10   of LendUS's contention that it has no legal exposure to Plaintiffs' claims.[2]

11   The Settlement was the product of a series of arms'-length negotiations over the course of several

12   months and was memorialized only after LendUS shared with Plaintiffs' counsel critical informal

13   discovery, that included: (1) examples of the various notifications LendUS sent to certain state Attorney

14   Generals; (2) the improved data business practices that LendUS has implemented and will implement in

15   the future (3) information evaluating and qualifying Kroll Settlement Administration as settlement

16   administrator for this Settlement; (4) the additional cybersecurity enhancements that LendUS is willing

17   to commit to as part of this Settlement; (5) detailed information about how the Data Incident occurred;

18   and (5) confirmation of the types of PII compromised; and (6) documentation sufficient to confirm the

19   class size. The Amended Settlement Agreement is the result of further negotiations and provides

20   enhanced settlement benefits in order to assuage the Court's concerns expressed at the August 25, 2022

21   preliminary approval hearing. Berry Second Decl., ¶ 5.

22   Before the Final Fairness Hearing, Plaintiffs will submit detailed papers supporting the proposed

23   Settlement and will ask the Court to determine whether the proposed Settlement is fair, reasonable, and

24   adequate. At this time, however, Plaintiffs request only that the Court grant preliminary approval of the

25   proposed Settlement so that notice under Fed. R. Civ. P. 23(e)(2) may be provided to Class Members.

26   Specifically, Plaintiffs request that the Court enter the proposed Order Granting Preliminary Approval of

27   Class Action Settlement, submitted herewith, which among other things, will:

[2] Capitalized terms not defined herein are stated in Amended S.A.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-00749-EMC

-2-

1. Preliminarily approve the Settlement and Settlement Agreement as fair, reasonable, and adequate for the Settlement Class and California Subclass;

2. Conditionally certify the Settlement Class and California Subclass;

3. Designate Plaintiffs as representatives for the Class;

4. Designate M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corporation, Terence R. Coates of Markovits, Stock & DeMarco, LLC, and Joseph M. Lyon of The Lyon Firm, LLC as Class Counsel;

5. Designate Kroll Settlement Administration as the Claims Administrator;

6. Approve the form, content, and methods of the Long and Short Notice;

7. Establish procedures and schedule deadlines for notice to Class Members, and for Class Members to object and or opt out of the Settlement, and to submit a Claim Form;

8. Schedule deadlines for the filing of papers in support of final approval, and in support of attorneys' fees and Representative Plaintiffs' Service Awards;

9. Schedule a date for the Final Fairness Hearing; and,

10. Establish other requirements and procedures to effectuate the Settlement.

## II. STATEMENT OF FACTS

In January 2022, LendUS notified approximately 11,500 individuals of the Data Incident. Complaint [Dkt. No. 1, ¶¶ 10, 12, 14, 38]. LendUS offered these individuals only one year of complimentary credit and identity monitoring services as a result of the Data Incident. *Id.*, ¶ 74. Plaintiffs brought this action on behalf of all persons whose PII Plaintiffs allege was compromised by LendUS's failure to: (i) adequately protect PII; (ii) warn of its inadequate information security practices; and (iii) effectively monitor its network for security vulnerabilities and incidents. Plaintiffs allege that LendUS's conduct amounts to negligence and violates federal and state statutes. *Id.*, ¶ 7. Plaintiffs, through this class action lawsuit, allege that they and Class Members have suffered injury as a result of LendUS's conduct, including: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Incident, including but not limited to lost time, and (iv) the continued and certainly increased risk to their

PII, which remains in LendUS's possession and is subject to further unauthorized disclosures so long as LendUS fails to undertake appropriate and adequate measures to protect the PII. *Id*., ¶ 8.

On May 21, 2021, LendUS's forensic investigator identified 53 LendUS email accounts with unauthorized connections between February 3 – March 13, 2021. [Dkt. No. 32, at 4]. LendUS's review of the information potentially impacted in the Data Incident identified 11,750 individuals that required notification because one or more of the following categories of their PII may have been accessed: name, Social Security number; driver's license number or ID card number information; passport number; financial information (i.e., account number, tax payer ID number, or credit or debit card numbers); health insurance information; medical information; and/or account credentials (i.e., username or email with password or security questions). [*Id*. at 4-5.]

## III.  PROCEDURAL HISTORY

On February 4, 2024, Plaintiffs filed this lawsuit asserting claims against LendUS relating to the Data Incident (the "Litigation"). Over the course of several months, Plaintiffs' counsel continued to investigate the facts of the Data Incident, and the Parties engaged in informal discovery, leading to informed settlement negotiations Dkt. No. 28-8, ¶ 11. The Parties then agreed to participate in early mediation. *Id*. With a mediation on the horizon, the Parties continued to rigorously pursue arm's length settlement negotiations and were able to reach a settlement in principle on almost all essential terms of relief to the putative Class. *Id*. The Parties executed the Settlement Agreement on June 20, 2022. *Id*., ¶ 12. After moving for Preliminary Approval of Class Action Settlement on June 21, 2022, [Dkt. No. 21], and the Preliminary Approval Hearing on August 25, 2022, the Parties negotiated modifications to the Settlement Agreement thereby increasing the Settlement benefits made available to Class Members. Berry Second Decl., ¶ 5.

## IV.  THE SETTLEMENT TERMS

### A.  Proposed Settlement Class Definition

The Settlement will provide relief for the following Settlement Class (A.S.A. 1.27):

All persons to whom LendUS mailed notice that between February 2, 2021 and March 22, 2021, LendUS was the target of a criminal cyberattack in which third-party criminals gained 'unauthorized access to some LendUS employee email accounts' and may have gained unauthorized access to the notified individual's PII.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-00749-EMC

-4-

In comparison, the Nationwide Class as alleged in the Complaint [Dkt. No. 1, ¶ 112] was defined as:

> All individuals whose PII was compromised in the data breach announced by Defendant on or about January 19, 2022 (the "Nationwide Class").

While the Settlement Class definition is more detailed than the definition within the Complaint, both definitions include the same impacted group of approximately 11,500 individuals who had their PII compromised in LendUS's Data Incident.

The Settlement also provides for a California subclass to address California Class Members' California Consumer Privacy Act ("CCPA") claim. The California Subclass is defined as:

> All persons residing in California between February 2, 2021 and March 22, 2021 to whom LendUS mailed notice that between February 2, 2021 and March 22, 2021, LendUS was the target of a criminal cyberattack in which third-party criminals gained "unauthorized access to some LendUS employee email accounts" and may have gained unauthorized access to the notified individual's PII.

A.S.A. 1.2. Again, the California Subclass definition is more detailed than described in the Complaint, where it was defined as:

> All individuals residing in California whose PII was compromised in the data breach announced by Defendant on or about January 19, 2022 (the "California Subclass").

[Dkt. No. 1, ¶ 113].

### B. Settlement Benefits – Monetary Relief

The Settlement provides for four separate forms of monetary relief: (1) reimbursement for lost time capped at 3 hours at $20 per hour; (2) $100 per California Subclass member in recognition of the enhanced statutory rights afforded under California law; (3) reimbursement of ordinary expenses and lost time up to $500 per Class Member (inclusive of any lost time or California Subclass cash payments); and, (4) reimbursement of extraordinary expenses up to $2,500 per Class Member. S.A. ¶¶ 2.1-2.3.[3]

Additionally, LendUS has now agreed to pay a minimum amount certain for both lost-time claims and California cash payment claims equal to a 2% claims rate for both types of claims. Should the actual claims rate be less than 2% for either lost-time claims or California cash payment claims, the valid claims in each respective category will be increased, on a *pro rata* basis, until the amount of money paid by

---

[3] This is a claims-made settlement. It does not create a common fund. Accordingly, the issue of reversion does not apply here because all settlement funds will be exhausted through the claims process.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-00749-EMC

-5-

LendUS for each type of claim is equal to a 2% claims rate. If the actual claims rate exceeds 2%, LendUS will pay the full value of valid claims received. Additionally, the $500 cap on ordinary expenses, which include lost-time claims and California cash payment claims, will not apply to any claims increased on a *pro rata* basis.

        1.     **Lost-Time Claims, California Cash Payment Claims, and Ordinary Expense Reimbursement Claims.**

All Settlement Class Members will be eligible to receive a cash payment for either or both (1) valid lost-time claims (up to $60 regardless of any *pro rata* increase) and/or (2) valid ordinary expense reimbursement claims. California Subclass Members will be eligible to receive an additional cash payment for valid California cash payment claims (up to $100 regardless of any *pro rata* increase). Each of these three claims may be combined and may result in a payment of up to $500 per Settlement Class Member. Additionally, to the extent that less than 2% of the Settlement Class Members or fewer than 2% of the California Subclass Members make a valid claim for lost time or California cash payments, respectively, such claims shall be increased on a *pro rata* basis (up to an amount equal to a 2% claims rate) regardless of the $500 per Settlement Class Member cap.

Reimbursable ordinary expenses also include:

(i) unreimbursed bank fees; (ii) unreimbursed card reissuance fees; (iii) unreimbursed overdraft fees; (iv) unreimbursed charges related to unavailability of funds; (v) unreimbursed late fees; (vi) unreimbursed over-limit fees; (vii) long distance telephone charges; (viii) cell minutes (if charged by minute), Internet usage charges (if charged by the minute or by the amount of data usage and incurred solely as a result of the Data Incident), and text messages (if charged by the message and incurred solely as a result of the Data Incident); (ix) unreimbursed charges from banks or credit card companies; (x) interest on payday loans due to card cancellation or due to over-limit situation incurred solely as a result of the Data Incident; (xi) costs of credit report(s), credit monitoring, and/or other identity theft insurance products purchased by members of the Settlement Class between October 11, 2021 and the date of the Claims Deadline; and (xii) other losses incurred by Settlement Class Members determined by the Settlement Administrator to be fairly traceable to the Data Incident, including, but not limited to, the cost of postage and gas for local travel.

*Id.*

The overall value of the lost time payment, assuming all 11,570 class members claim this benefit is $694,200 (11,570 Class Members x $60.00). Berry Second Decl., ¶ 9. The minimum value of the lost-time settlement benefit (i.e., the minimum amount LendUS has agreed to pay) is $13,884,

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-00749-EMC

-6-

calculated as a 2% lost-time claims rate assuming every claim is for the maximum $60. *Id.* The overall value of the California Subclass payment assuming each of the 5,387 California Subclass Members submits a claim for $100 is $538,700 and the minimum value (i.e., the minimum amount LendUS has agreed to pay) is $10,774, calculated as a 2% claims rate at $100 per claim. *Id.* at ¶ 8.

### 2.    Other Extraordinary Expense Reimbursement.

All Settlement Class Members will also be eligible to make a claim for reimbursement of extraordinary expenses, up to $2,500 per Settlement Class Member, incurred from February 2, 2021 through and including the end of the Claims Deadline for documented, unreimbursed out-of-pocket expenses incurred due to the Data Incident. A.S.A. ¶ 2.2. Claims under this category would include losses due to actual identity theft that resulted in unreimbursed financial charges that were not covered in A.S.A. ¶ 2.1. While counsel does not expect many claims under this category, this extraordinary expense component allows for compensation for the most severely impacted, adding substantial value to the Settlement.[4]

### C.    Non-Monetary Settlement Benefits – Aura Financial Shield & Cybersecurity Enhancements

In addition to the potential cash benefits outlined above, all Settlement Class members will receive a unique identification number and password through the notice program so that they receive access to Aura's Financial Shield Services ("Financial Shield") for a period of thirty-six (36) months. S.A. 2.4. This settlement benefit is automatic for all class members and only requires the class members to sign up for Financial Shield without having to submit a claim under the Settlement for such relief. The credentials for signing up for Financial Shield will be included on Postcard or Email Notice that will be mailed or emailed to all class members.

Financial Shield Services from Aura, like those provided for by the Settlement Agreement, retail for $135 per year per person, for a total of $405 for 36 months. Berry Second Decl., ¶ 11. Because all 11,570 Settlement Class Members will receive this benefit in addition to any monetary recovery they claim, the value of this benefit obtained for the Class over $4,685,850 ($405 x 11,570 class members)

---

[4] To the extent there are any disputes about the validity of any claims, Mr. Bennett Picker, an experienced mediator, will act as the Claims Referee under the Settlement. [Dkt. No. 32, at 5].

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-00749-EMC

-7-

given that is approximately what it would cost for each class member to individually purchase this product on the open market and given that they will receive their claim identification number and password for participating in this settlement benefit without submitting a claim. *Id.* If only 2% of Class Members seek this Settlement benefit, the value to the Class would be $93,717. *Id.* At the Court noted at the August 25, 2022 preliminary approval hearing, the amount paid by LendUS for this benefit is not the retail value of the benefit. Respectfully, for purposes of the Settlement Class, that is a distinction without a difference. Absent this settlement agreement, if a settlement class member wanted to purchase 36 months of Financial Shield, he or she would be forced to pay approximately $405.

In addition to Financial Shield, Plaintiffs were able negotiate the implementation and maintenance by LendUS of certain cybersecurity enhancements, including the enhancements listed in **Exhibit 4**. A.S.A. ¶ 2.6. These enhancements will benefit those members of the Settlement Class whose information remains in LendUS's possession, and also other customers who utilize LendUS's services in the future. The settlement reached here played an integral role in ensuring that these enhancements were made by LendUS. These enhancements are estimated by LendUS to cost LendUS approximately $228,800 through 2022. Berry Second Decl., ¶ 13.

Plaintiffs' pursuit of this case made broad settlement benefits available to the Class, including, but not limited to, $4,685,850 for 36 months of Financial Shield, $694,200 for lost time ($60 x 11,570 Class Members), and $538,700 for California Class Members, for a total value of $5,918,750. *Id.*, ¶ 12. Even assuming only a 2% claim rate for lost time, for California cash payment, and for redemption of Financial Shield, the Settlement benefits would total $118,375 and, when combined with the $228,800 value of the cybersecurity enhancements, totals is $347,175, without even taking into account any valid claims for reimbursement of other ordinary or extraordinary expense reimbursement. *Id.*, ¶¶ 12-13. At a 5% claims rate, the value become $295,937.50, which, when combined with the $228,800 value of security enhancements, amounts to $524,737.50, again not accounting for any valid claims for reimbursement of other ordinary or extraordinary expense reimbursement. *Id.*

### D.   Class Notice and Settlement Administration

Defendant will pay for notice, separate and apart from any funds available to Settlement Class Members. Notice will be given to the Settlement Class via individual notice, which will be given

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-00749-EMC

-8-

primarily by emailing the Short-Form notice (attached at **Exhibit 5**) or mailing the Postcard Notice (attached as **Exhibit 6**) to the email and postal addresses associated with the accounts of Class Members.

A Long Notice (attached as **Exhibit 7**), will also be posted on the settlement website, www.LendUSsettlement.com, along with other important documents such as the Settlement Agreement, a copy of these preliminary approval filings, and the motions for final approval and for attorneys' fees and expenses. S.A. § 3.2(b), (d). The notice documents are clear and concise and directly apprise Class Members of all the information they need to know to make a claim or to opt-out or object to the Settlement. Fed. R. Civ. P. 23(c)(2)(B).

Furthermore, a toll-free number with interactive voice response, FAQs, and an option to speak to a live operator will be made available to address Class Members' inquiries. S.A, § 3.2(e).

As part of their Amended Settlement Agreement, the Parties have agreed to send reminder emails, fourteen days before the Claims Deadline, to all class members (1) who have not yet made a claim for settlement benefits and (2) for whom the Parties possess a valid email address.

Kroll Settlement Administration, a nationally recognized and well-regarded class action settlement administrator, has been retained to serve as Claims Administrator, subject to the Court's approval. Dkt. No. 28-8, ¶ 19. The Claims Administrator has estimated that notice and administration costs will total approximately $67,000. *Id.*, ¶ 55.

Class Counsel, based on their experience with data breach cases and in consultation with Kroll about the claims process in this case, anticipate that there will be a claims rate in this case of between 1-9% of the Class (in other words, roughly 116 to 1,050 claims). Berry Second Decl., ¶ 14. In an attempt to obtain a higher claims rate, the Parties renegotiated the notice provisions of the settlement. *Id.* Specifically, the claims forms have been extensively rewritten for clarity and simplicity. Additionally, the Parties have agreed to have Kroll send an additional notice to Settlement Class Members who have not yet submitted claims as of fourteen days before the claims period ends to remind them to submit a claim. *Id.* at ¶ 7. The Claim Form (attached as **Exhibit 8**) implemented in this case is very similar to that which Class Counsel have used in similar class action settlements involving data breach incidents with relatively similar Settlement benefits under a claims-made settlement. Dkt. No. 28-8, ¶ 51. Class Counsel are recommending the content of the Claim Form in this case because of Class Counsel's experience in

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-00749-EMC

successfully soliciting claims and allocating settlement benefits in similar class action cases. *Id*. Class Counsel's projections also comport with previous statements by the Northern District of California in similar matters. *See In re Facebook Biometric Info. Priv. Litig.*, No. 15-CV-03747-JD, 2021 WL 757025, at *2 (N.D. Cal. Feb. 26, 2021) (noting that consumer class actions typically have a claims rate between 4% and 9%).

### E.    Attorneys' Fees and Representative Plaintiffs' Service Awards

The Settlement also provides that Class Counsel will be paid a cap of $175,000.00 in attorneys' fees, inclusive of any costs and case expenses, and Representative Plaintiffs will be paid Service Awards in the amount of $2,000.00 each. A.S.A. ¶¶ 1.27, 7.1, 7.2, 7.3, 7.5. These amounts will be paid separate from the Class relief and will not in any way reduce the Class's settlement benefits. *Id*., ¶¶ 7.1, 7.2. Class Counsel's projected attorneys' fees and cost reimbursement award of $175,000.00, with any unawarded amount being distributed *pro rata* to Class Members submitting valid claims, projects to be approximately 33% of a 5% claims rate and 46% of a 2% claims rate which are percentages of the settlement benefits redeemed without factoring in any valid claims for reimbursement of ordinary expenses. Berry Second Decl., ¶ 18¶ 31. The actual value of the settlement and Class Counsel's potentially fee award crosschecked against the value of settlement benefits redeemed will not be precise until all claims are submitted, which will not occur until a grant of preliminary approval.

Class Counsel's fee request of approximately 33% (assuming a 5% claims rate) of the value projected to be redeemed by Class Members (and much more favorable when compared against the value of benefits made available to the Class) is well within the range of reasonableness for Settlements of this nature and size. The Ninth Circuit has found attorneys' fees awards of 1/3 of the fund to be reasonable. *See In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of total recovery).

To date, Class Counsel have accrued a lodestar of roughly $134,229.10, which includes the time spent investigating the Data Incident pre-suit, post-suit informal discovery and investigation, extensive settlement negotiations, communicating with Plaintiffs, finalizing the terms of the Settlement Agreement, drafting and filing preliminary approval filings, supplemental filing, this renewed motion for preliminary

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-00749-EMC

-10-

approval, negotiating enhancements to the settlement, and continuing to communicate with Plaintiffs. Berry Second Decl., at ¶¶ 16-17. Class Counsel anticipate accruing additional lodestar totals to get this case through confirmatory discovery, settlement administration, final approval, and any other hearings the Court may request. *Id.*

### F.      Comparison of Settlement Benefits Against Full Recovery

The Settlement provides broad settlement benefits to all 11,570 Class Members in the form of cash payments (for lost time up to three hours at $20 per hour; up to $500 for out-of-pocket expenses; up to $2,500 for any extraordinary expenses) **and** 36-months of automatic and additional Identity Protection. In addition to these Settlement benefits, California Subclass Members will receive a $100 cash payment for their CCPA claim (subject to the $500 out-of-pocket cap).

Generally, the benefits made available under this Settlement give Plaintiffs and Class Members cash, credit protection, and cybersecurity enhancements, which is beyond what Class Members would be seeking on their best day in Court. Plaintiffs and Class Members are able to receive a variety of Settlement benefits including cash, credit protection, and LendUS's commitment to enhanced cybersecurity policies and procedures which are a form of injunctive relief.

### G.      Release

Upon entry of the Final Approval Order, Plaintiffs and the Settlement Class will be deemed to have "fully, finally, and forever released, relinquished, and discharged all Released Claims." A.S.A., ¶ 1.25. Released Claims extends to those claims that have "been asserted, was asserted, or could have been asserted, by any member of the Settlement Class against any of the Released persons based on, relating to, concerning or arising out of the Data Incident and alleged theft of payment card data or other personal information or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Litigation." *Id*. Released Claims shall include Unknown Claims as defined in ¶ 1.34 of the Settlement Agreement. *Id*., ¶ 1.24.

## VII.      ARGUMENT

Courts within the Ninth Circuit strongly favor class action settlements where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-00749-EMC

-11-

hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned").

The MANUAL FOR COMPLEX LITIGATION (Fourth) advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria." § 21.632. Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Plaintiffs seek certification of a Settlement Class consisting of approximately 11,570 individuals and the California Subclass consisting of 5,387 of the 11,570 Class Members. A.S.A. ¶ 1.2; S.A. ¶ 1.3. For the reasons set forth below, the Court should certify the Settlement Class and California Subclass for settlement purposes and preliminarily approve the Settlement.

### A. The Settlement Satisfies Rule 23(a)

Before assessing the Parties' settlement, the Court should first confirm the underlying settlement class meets the requirements of Rule 23(a). *See Amchem*, 521 U.S. at 620; Manual for Complex Litigation (Fourth), § 21.632. The requirements are well known: numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 979–80 (9th Cir. 2011).

### 1.    The proposed Class is sufficiently numerous.

Generally, courts will find numerosity is satisfied where a class includes at least 40 members. *See, e.g. Celano v. Marriott Int'l Inc*., 242 F.R.D. 544, 548-49 (N.D. Cal. 2007) (numerosity is generally satisfied when a class has at least 40 members). Numbering approximately 11,500 individuals, the proposed Settlement Class easily satisfies Rule 23's numerosity requirement. Furthermore, the California Subclass, consisting of more than 5,000 individuals, also satisfies the numerosity requirement.

### 2.    The Settlement Class and California Subclass Satisfy the Commonality Requirement.

The Settlement Class and California Subclass satisfy the commonality requirement, which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-00749-EMC

-12-

cases, "[t]hese common issues all center on [Defendant's] conduct, satisfying the commonality requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig*., No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016). Thus, common questions include, *inter alia*, whether LendUS engaged in the wrongful conduct alleged; whether Class Members' PII was compromised in the Data Incident; whether LendUS owed a duty to Plaintiffs and Class Members; whether LendUS breached its duties. Accordingly, Plaintiffs have met the commonality requirement of Rule 23(a).

### 3.     Plaintiffs' claims and defenses are typical to those of the Settlement Class.

Plaintiffs satisfy the typicality requirement of Rule 23 because Plaintiffs' claims, which are based on Defendant's alleged failure to protect Plaintiffs' and Class Members' PII, are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Meyer v Portfolio Recovery Assocs.*, 707 F.3d 943, 1041-42 (9th Cir. 2012) (upholding typicality finding). Plaintiffs allege their PII was compromised, and that they were therefore impacted by the same allegedly inadequate data security that they allege harmed the rest of the Settlement Class.

### 4.     Plaintiffs will adequately protect the interests of the Class.

The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiffs and their counsel and the absent class members; and (2) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis*, 657 F.3d at 985, citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

 Here, Plaintiffs have no conflicts of interest with other class members, are subject to no unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the class. Plaintiffs are members of the Class who received data breach notifications from LendUS and experienced the same injuries and seek, like other Class Members, compensation for LendUS's alleged data security shortcomings. As such, their interests and the interests of their counsel are consistent with those of other Class Members. Further, proposed Class Counsel have decades of combined experience handling complex class action cases including over 100 data breach class actions in state and federal courts around the United States. Dkt. No. 626-8, ¶ 49. Thus, Plaintiffs satisfy the requirement of adequacy.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-00749-EMC

-13-

**B.    The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement**

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, Plaintiffs allege that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Id.*

**1.    Common Questions Predominate.**

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623, citing Wright, et al., Fed. Prac. and Proc. § 1777, p. 518-19 (2d ed. 1986). "If common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then 'there is clear justification for handling the dispute on a representative rather than on an individual basis,' and the predominance test is satisfied." *See Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 526 (C.D. Cal. 2012), quoting *Hanlon*, 150 F.3d at 1022.

Consistent with the position on commonality, Plaintiffs allege that predominance is readily met here "where the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] conduct.'" *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184-CRB, 2020 WL 1288377, at *5 (N.D. Cal. Mar. 18, 2020) (alterations in original), quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 559 (9th Cir. 2019). Plaintiffs' claims depend on whether LendUS used reasonable data security measures to protect consumers' PII. That question can be resolved using the same evidence for all Class Members, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) … .'") (citation omitted).

///

///

1

2. **Class Action is Superior to Other Methods of Adjudication.**

2        Rule 23(b)(3) also requires that a district court determine that "a class action is superior to other

3   available methods for the fair and efficient adjudication of the controversy." In determining whether the

4   "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in

5   individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any

6   litigation concerning the controversy already commenced by or against members of the class; (3) the

7   desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4)

8   the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

9        First, adjudicating individual actions here is impracticable: the amount in dispute for individual

10  class members is too small, the technical issues involved are too complex, and the required expert

11  testimony and document review too costly. *See Just Film*, 847 F.3d at 1123. There are thousands of class

12  members with modest individual claims, most of whom likely lack the resources necessary to seek

13  individual legal redress. *See Local Joint Exec. Bd. of Culinary/ Bartender Tr. Fund v. Las Vegas Sands,

14  Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual

15  sums" are particularly well suited to class treatment); *see also Wolin v. Jaguar Land Rover N. Am., LLC*,

16  617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the

17  cost of litigating on an individual basis, this factor weighs in favor of class certification."). *See* Fed. R.

18  Civ. P. 23(b)(3); Second, there are no other individual actions currently pending arising from this Data

19  Incident. *See Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290 BEN NLS, 2013 WL 444619, at

20  *3 (S.D. Cal. Feb. 5, 2013) (superiority met where "considerations of judicial economy favor litigating a

21  predominant common issue once in a class action instead of many times in separate lawsuits" and the

22  "small individual claims of class members" made it "unlikely that individual actions will be filed"). And

23  third, this forum is home to the Defendant, and the majority of the class members.

24        Finally, because the claims are being certified for purposes of settlement, there are no issues with

25  manageability. Resolution of thousands of claims in one action is far superior to individual lawsuits and

26  promotes consistency and efficiency of adjudication. For these reasons, certification of the Settlement

27  Class for purposes of settlement is appropriate.

28

---

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-00749-EMC

-15-

1

### C.     The Settlement Should Be Preliminarily Approved Pursuant to Rule 23(e)

2

"[U]nder Rule 23(e)(1), the issue at preliminary approval turns on whether the Court 'will likely

3

be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment

4

on the proposal.'" *Reyes v. Experian Info. Sols., Inc.*, No. SACV1600563AGAFMX, 2020 WL 466638,

5

at *1 (C.D. Cal. Jan. 27, 2020). Rule 23(e) provides that a proposed class action may be "settled,

6

voluntarily dismissed, or compromised only with the court's approval." Moreover, "[t]he parties must

7

provide the court with information sufficient to enable it to determine whether to give notice of the

8

proposal to the class." If the parties make a sufficient showing that the Court will likely be able to

9

"approve the proposal" and "certify the class for purposes of judgment on the proposal," "[t]he court

10

must direct notice in a reasonable manner to all class members who would be bound by the proposal."

11

Fed. R. Civ. P. 23(e). Thus, notice should be given to the class, and hence preliminary approval should

12

be granted, where the Court "will likely be able to" finally approve the settlement under Rule 23(e)(2)

13

and certify the class for settlement purposes. *Id*. "In evaluating a proposed settlement at the preliminary

14

approval stage, some district courts . . . have stated that the relevant inquiry is whether the settlement

15

'falls within the range of possible approval' or 'within the range of reasonableness.'" *Bykov v. DC Trans.*

16

*Servs., Inc.*, No. 2:18-cv-1692 DB, 2019 WL 1430984, at *2 (E.D. Cal. Mar. 29, 2019). That is,

17

"preliminary approval of a settlement has both a procedural and a substantive component." *In re*

18

*Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). As to the procedural component,

19

"a presumption of fairness applies when settlements are negotiated at arm's length, because of the

20

decreased chance of collusion between the negotiating parties." *Gribble v. Cool Transps. Inc*., No. CV

21

06-4863 GAF (SHx), 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008). With respect to the substantive

22

component, "[a]t this preliminary approval stage, the court need only 'determine whether the proposed

23

settlement is within the range of possible approval.'" *Murillo v. Pac. Gas & Elec. Co*., 266 F.R.D. 468,

24

479 (E.D. Cal. 2010), quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).

The Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness,

25

and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense,

26

complexity, and likely duration of further litigation; (3) the risk of maintaining class action status

27

throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the

28

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-00749-EMC

-16-

stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon*, 150 F.3d at 1026. Rule 23(e) requires a court to consider several additional factors, including whether the class representative and class counsel have adequately represented the class, and whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by federal courts. *See Franklin v. Kaypro Corp*., 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits"). Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

### 1. The Strength of Plaintiffs' Case.

This case involves a proposed class of approximately 11,500 individuals (each of whom, LendUS has argued, would need to establish cognizable harm and causation); a complicated and technical factual background; and a motivated Defendant that already has provided some relief to Class Members through a year of complimentary credit monitoring. Notwithstanding, Plaintiffs believe they have and would continue to build a strong case for liability if this matter were to continue.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation.

While Plaintiffs believe they have strong claims, their success is not guaranteed. It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co*., No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos*., *Inc.*, No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). Given the inherent risks Plaintiffs face with respect to the novel claims in data breach class actions, including class certification, summary judgment, and trial, the

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-00749-EMC

-17-

substantial benefits the Settlement provides favors preliminary approval of the Settlement. Dkt. No., ¶ 66. Furthermore, as indicated by LendUS's arguments at the August 25, 2022 hearing and in the August 15, 2022 Joint Supplemental Memorandum in Further Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement [Dkt. No. 32, at 11-15], LendUS fully opposes Plaintiffs' claims. Thus, this factor favors approval.

### 3. The Risk of Maintaining Class Action Status Through Trial.

While Plaintiffs' case is still in the pleadings stage, the Parties have not briefed, and the Court has not yet certified, any class treatment of this case. If they were to proceed to litigate their claims through trial, Plaintiffs would encounter risks in obtaining and maintaining certification of the class. The class has not yet been certified, and Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. Am. Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). Class certification in contested consumer data breach cases is not common—first occurring in *Smith v. Triad of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017), and more recently in *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021), where a class was certified over objection to plaintiffs' damage calculation. Most recently, class certification was granted in part and denied in part in *In Re Marriott Int. Inc. Customer Data Security Breach Litig.*, No. 19-md-2879, 2022 WL 1396522 (D. Md. May 3, 2022) (certifying several classes in a data breach class action). While certification of additional consumer data breach classes may well follow, it still remains a substantial risk for Plaintiffs in this case.

### 4. The Amount Offered in Settlement.

As noted in Section IV.B-C above, each Class Member is eligible to make a claim for up to 3 hours of lost time at a rate of $20 per hour ($60), up to $500 in reimbursements for expenses (inclusive of the lost time and California Subclass cash payments unless those settlement benefits receive a pro rata increase to reach the 2% floor for those claims), and up to $2,500 in reimbursements for extraordinary expenses related to the Data Incident. Furthermore, every California Subclass member is eligible to make a claim for up to $100 for a California cash payment. Moreover, all Settlement Class Members automatically receive access to Aura's Financial Shield Services for a period of 36 months without the

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-00749-EMC

-18-

need to submit a claim (a value of at approximately $405 per claimant). Finally, Plaintiffs have negotiated certain cybersecurity enhancements that LendUS has implemented as a result of this lawsuit and will maintain that are estimated to value approximately 228,800 through the end of 2022. This settlement is a strong result for the Class, and as discussed below is in line with other settlements in cases involving data breaches of similar scope. Because the settlement amount here is similar to other settlements reached and approved in similar cases, this factor reflects that the Settlement is fair. *See Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases).

Following the Northern District's Procedural Guidance for Class Action Settlements, Class Counsel compare this settlement to a recent similar settlement where they each (in addition to other attorneys) participated as counsel for plaintiffs. In *Schellhorn v Timios, Inc.*, No. 2:21-cv-08661 (C.D. Cal.), over roughly 75,000 individuals had their PII compromised in a 2021 data breach. Like this case, *Timios* was resolved before a motion to dismiss on a claims-made basis. The settlement benefits made available to class members in *Timios* are lesser than those made available here, where California subclass members will get a payment double that in *Timios* and all class members will be offered identity theft protection for twice as long as is being offered in *Timios*. The following charts compares the result of Timios to the proposed settlement here,

| Settlement Terms | *Timios* | *LendUS* |
|---|---|---|
| Class Size | 74,755 | 11,570 |
| Out-of-pocket reimbursement | $500.00 | $500.00 |
| Cash Payment for Lost Time | Up to 3 hours at $20/hour | Up to 3 hours at $20/hour |
| Cash Payment for CCPA Claim | $50.00 | $100.00 |
| Extraordinary Expenses | $3,000.00 | $2,500.00 |
| Class Representative Service Award | $2,500.00 | $2,000.00 |
| Future Identity Protection | 18 months | 36 months |
| Attorneys' Fees & Expense Request | $215,000.00 | $175,000.00 |
| Cybersecurity Enhancements | X | X |

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-00749-EMC

United States District Judge Virginia A. Phillips granted preliminary approval of the class action settlement in *Timios* on May 10, 2022 and notice has been issued to class members. Because the Settlement forged for Plaintiffs and Class Members here provides Settlement benefits consistent with those that were preliminarily approved in *Timios*, Plaintiffs and the Class respectfully request that the Court grant preliminary approval of class action settlement in this case.

### 5.    The Extent of Discovery Completed and the Stage of Proceedings.

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1239 (9th Cir. 1998) . Here, the Parties engaged in a slew of informal discovery. Plaintiffs' counsel has gathered sufficient and reliable information that was available regarding LendUS and the Data Incident. Dkt. No. 26-8, ¶ 17. The Parties also informally exchanged non-public information concerning the Security Incident and the size of the Class in preparation for a successful mediation. *Id.*

Class Counsel's collective experience in similar types of privacy and data protection practices provided substantive knowledge on the subject to enable Class Counsel to evaluate the risks and value of the litigation and adequately represent Plaintiffs' and Class Members' interests without expending hundreds of hours and substantial financial resources to come up to speed on the subject area. *Id.*, ¶ 61. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017). Accordingly, Plaintiffs are well informed about the strengths and weaknesses of this case.

### 6.    Class Counsel's Experience and Views.

Class Counsel assisted Plaintiff in initiating this lawsuit when LendUS announced the Data Incident, which, based upon publicly-available information, impacted approximately 11,500 LendUS customers. Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one. *Id.*, ¶ 13. Having worked on behalf of the putative class since the Data Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel fully support the Settlement. *Id.*, ¶ 64. A great deal of weight is accorded to the recommendation of counsel, who are most

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-00749-EMC

closely acquainted with the facts of the underlying litigation. *See, e.g., Norton v. Maximus, Inc.*, No. 1:14-cv-0030 WBS, 2017 WL 1424636, at \*6 (D. Idaho Apr. 17, 2017); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Thus, this factor supports approval.

### 7.     Governmental Participants.

There is no governmental participant in this matter. This factor is neutral.

### 8.     The Reaction of the Class Members to the Proposed Settlement.

Because notice has not yet been given, this factor is not yet implicated; however, Representative Plaintiffs support the Settlement. Decl., ¶ 40; *see also* Berry Second Decl., ¶ 20.

### 9.     Lack of Collusion Among the Parties.

The parties' arms'-length negotiations resulted in a settlement that provides broad and substantial value to the Class with monetary compensation, future identify theft protection, and injunctive relief (*i.e.*, enhanced security). Furthermore, Class Counsel and LendUS's counsel are well-versed in handling data breach class actions such as this one and fully understand the values recovered in similar cases. Therefore, the Court can be assured that the negotiations were not collusive.

### D.     The Court Should Approve the Proposed Notice Program

Rule 23 requires that before final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id*.

Such notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To satisfy due process, notice to class members must again be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23 23(c)(2); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-00749-EMC

-21-

Here, and after a competitive bid process, the parties have agreed to a robust notice program to be administered by a well-respected third-party class administrator—Kroll—which will use all reasonable efforts to provide direct and individual notice to each potential Settlement Class Member via email or mail. Dkt. 26-8, *¶* 19. The costs of administering the Settlement will be paid by LendUS and will not negatively impact the amount available to Settlement Class Members who make valid claims. *Id.* ¶ 44. The Notice and Claim Forms negotiated by the Parties are clear and concise and inform Settlement Class Members of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt-out of the Settlement. *Id.* ¶ 47.

In addition to the direct notice, the Administrator will also establish a dedicated Settlement Website and will maintain and update the website throughout the Claims Period, with the forms of Short Notice, Postcard, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement. *Id.* ¶ 46. The Claims Administrator will also make a toll-free help line staffed with a reasonable number of live operators available to provide Settlement Class Members with additional information about the settlement. *Id.* ¶ 48. Finally, the Claims Administrator will send an additional reminder notice to those Settlement Class Members who have not submitted claims by fourteen (14) days prior to the expiration of the claims period. Berry Second Decl., ¶ 7.

Because the notice plan ensures that Settlement Class Members' due process rights are amply protected, this Court should approve it. *See Hartranft v. TVI, Inc*., No. 15-01081-CJC-DFM, 2019 WL 1746137, at *3 (C.D. Cal. Apr. 18, 2019).

**E.    Appointment of the Settlement Administrator**

In connection with implementation of the Notice Program and administration of the settlement benefits, the Parties request the Court appoint Kroll Settlement Administration to serve as the Claims Administrator. Kroll has a trusted and proven track record of supporting thousands of class action administrations, with over 50 years of legal administration experience. Dkt. No. 26-8, ¶¶ 19, 42. Notice and administration is expected to cost approximately $67,000 and will be paid by Defendant separate and apart from the relief to the Class. *Id.*, ¶ 55.

///

///

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-00749-EMC

-22-

1

### F. Appointment of Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv). Here, proposed Class Counsel has extensive experience prosecuting class actions and other complex cases, and specifically data breach cases. *See Id.*, ¶ 13, Exs. A, B, and C (firm resumes), ¶ 61. Accordingly, Plaintiffs respectfully request that the Court appoint M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corporation, Terence R. Coates of Markovits, Stock & DeMarco, LLC, and Joseph M. Lyon of The Lyon Firm as Class Counsel.

## VIII. <u>CONCLUSION</u>

For all the above reasons, Plaintiffs respectfully request this Court grant Plaintiffs' Unopposed Renewed Motion for Preliminary Approval of Class Action Settlement.

Date: October 20, 2022

Respectfully Submitted,

 */s/M. Anderson Berry*
M. ANDERSON BERRY (SBN 262879)
**CLAYEO C. ARNOLD, APLC**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
aberry@justice4you.com

Terence R. Coates (admitted *Pro Hac Vice*)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E Court St., Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
tcoates@msdlegal.com

Joseph M. Lyon (admitted *Pro Hac Vice*)
**THE LYON FIRM, LLC**
2754 Erie Avenue
Cincinnati, OH 45208
Telephone: (513) 381-2333
jlyon@thelyonfirm.com

*Attorneys for Plaintiffs and the Proposed Classes*

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED RENEWED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-00749-EMC

-23-