M. Anderson Berry (SBN 262879)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916)239-4778
Facsimile: (916) 924-1829
Email: aberry@justice4you.com

*Attorney for Plaintiffs and the Proposed Class*
*[Additional counsel listed on signature page.]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELIA REMOUNDOS, et al., | Case No.  3:22-cv-00749-EMC |
| Plaintiffs, | [*The Honorable Edward M. Chen*] |
| v. | **PLAINTIFFS' NOTICE OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT** |
| LEND US, LLC, | |
| Defendant. | Complaint Filed:     February 4, 2022 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

    **PLEASE TAKE NOTICE** that on June \_\_\_, 2022, at 1:30 p.m., in Courtroom 5 of the United States District Court for the Northern District of California, Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable Edward M. Chen, presiding, Plaintiffs will and hereby move for an Order for final approval of the Settlement and certification of the Settlement Class pursuant to Rules 23(e) and 23(b)(3) of the Federal Rules of Civil Procedure ("Rule(s)").[1]

    In so moving, Plaintiffs respectfully request the Court: (1) approve the Settlement Agreement as fair, reasonable, and adequate under Rule 23(e); (2) finally certify the Settlement Class under Rule 23(b)(3); (3) finally appoint Plaintiffs as Class Representatives for the Settlement Class; (4) finally appoint as Settlement Class Counsel M. Anderson Berry, Terence R. Coates, and Joseph M. Lyon; and (5) find the Notice Program as implemented satisfies Rule 23 and due process.

    This motion is based upon this Motion, the Memorandum of Points and Authorities, the accompanying Joint Declaration of M. Anderson Berry, Terence R. Coates, and Joseph M. Lyon ("Final App. Joint Decl."), the Declaration of Gerald Thompson, the Declaration of Scott M. Fenwick and all exhibits attached thereto, pleadings on file in this Action, and other such matters and argument as the Court may consider at the hearing on this motion.

---

[1] Unless otherwise indicated, the defined terms herein shall have the same definition as set forth in the Amended Settlement Agreement, ECF No. 40-1.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-00749-EMC

-2-

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION……………………………………………………    1

II.   STATEMENT OF FACTS……………………………………………...    2

III.  PROCEDURAL HISTORY…………………………………………….    3

IV.   THE SETTLEMENT TERMS…………………………………………    4

      A.   The Settlement Class…………………………………………    4

      B.   Settlement Benefits – Monetary Relief…………………………    5

           1.    Expense Reimbursement………………………………...    5

           2.    Extraordinary Expense Reimbursement………………………...    6

           3.    California Cash Payment……………………………………..    7

      C.   Other Settlement Benefits – Identity Protection and Credit Monitoring
           Services………………………………………………………    7

      D.   Business Practices Enhancements, Monetary Investment and Data
           Security………………………………………………………    9

      E.   Class Notice and Settlement Administration…………………………....    10

      F.   Attorneys' Fees and Expenses and Service Award to Plaintiff…………    11

      G.   Release………………………………………………………    11

V.    CLAIMS, REQUESTS FOR EXCLUSION AND OBJECTIONS……………    12

VI.   LEGAL ARGUMENT………………………………………………    13

      A.   The Court Should Certify the Class for Settlement Purposes…………..    13

           1.    The Rule 23(a) Requirements Are Met For Purposes of
                 Settlement…............................................................................    14

           2.    The Requirements of Rule 23(b)(3) Are Met For Purposes of
                 Settlement………………………………………………    15

      B.   The Court Should Finally Approve the Settlement……………………..    17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| | 1. | The Strength of Plaintiffs' Case………………………………… | 18 |
| | 2. | The Risk, Expense, Complexity, and Likely Duration of Further Litigation………………………………………………………… | 19 |
| | 3. | The Risk of Maintaining Class Action Status Through Trial…… | 20 |
| | 4. | Amount Offered in Settlement……………………………….. | 20 |
| | 5. | The Extent of Discovery Completed and the Stage of Proceedings………………………………………………… | 22 |
| | 6. | The Experience and Views of Counsel………………………….. | 23 |
| | 7. | The Reaction of the Class Members to the Proposed Settlement.. | 24 |
| | 8. | Lack of Collusion Among the Parties…………………………… | 24 |
| | 9. | The Settlement Treats Settlement Class Members Equitably…… | 25 |
| VIII. | CONCLUSION…………………………………………………….. | | 25 |

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-00749-EMC

-ii-

1

**<u>TABLE OF AUTHORITIES</u>**

2

**<u>Page</u>**

3

*Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997)……………………………..13, 16, 17

4

*Bowdle v. King's Seafood Company, LLC*, SACV 21-01784-CJC (C.D. Cal.)

5
 (Feb. 13, 2023)………………………………………………………………… 22, 24

6

*Calderon v. Wolf Firm*, 2018 WL 6843723, at *8

7
 (C.D. Cal. Mar. 13, 2018)……………………………………………………… 22

8

*Capaci v. Sports Rsch. Corp.*, 2022 WL 1133818, at *9

9
 (C.D. Cal. Apr. 14, 2022)……………………………………………………… 16

10

*Chua v. City of L.A.*, 2017 WL 10776036, at *9
 (C.D. Cal. May 25, 2017)……………………………………………………… 16

11

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011)………………… 13, 15

12

*Forcellati v. Hyland's, Inc*., 2014 U.S. Dist. LEXIS 50600, at *31

13
 (C.D. Cal. Apr. 9, 2014)……………………………………………………... 15

14

*Ford v. [24]7.AI, Inc.*, No. 5:18-cv-02770-BLF, 2022 U.S. Dist.

15
 LEXIS 16072 at *3-*5 (N.D. Cal. Jan. 28, 2022)……………………………… 21, 24

16

*Franklin v. Kaypro Corp*., 884 F.2d 1222, 1229 (9th Cir. 1989)……………………….... 18

17

*Grimm v. Am. Eagle Airlines, Inc.*, 2014 WL 12746376, at *10

18
 (C.D. Cal. Sep. 24, 2014)………………………………………………………... 20

19

*Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOx), 2022 U.S. Dist. LEXIS 210946

20
 (C.D. Cal. Nov. 21, 2022)……………………………………………………3, 13,21,24

21

*Hillman v. Lexicon Consulting, Inc.*, 2017 WL 10434013, at *4
 (C.D. Cal. Oct. 12, 2017)……………………………………………………... 2, 23

22

*Hudson v. Libre Tech. Inc.*, WL 2467060, at *9

23
 (S.D. Cal. May 12, 2020)…………………………………………….............. 25

24

*In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299, 316-17

25
 (N.D. Cal. 2018)……………………………………………………………….. 13, 17

26

*In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946

27
 (9th Cir. 2011)………………………………………………………………… 18

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-00749-EMC

-iii-

1

**TABLE OF AUTHORITIES**

2

**Page**

3  *In re Brinker Data Incident Litig.*, 2021 WL 1405508
   (M.D. Fla., Apr. 14, 2021)………………………………………………………    20

4

5  *In re: California Pizza Kitchen Data Breach Litigation*, No. 8:21-cv-01928-DOC-KES
   (C.D. Cal.), ECF No. 87 (Feb. 23, 2023)…………………………………………..    22, 24

6

7  *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211
   (5th Cir. 1981)……………………………………………………………………    20

8  *In re Google LLC St. View Elec. Communs. Litig.*, 2020 WL 1288377, at *5
   (N.D. Cal. Mar. 18, 2020)………………………………………………………    14

9

10  *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 559
    (9th Cir. 2019)…………………………………………………………………..    14

11

12  *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128
    (D. Md. May 3, 2022)……………………………………………….…………    20

13  *In re MRV Communs., Inc. Derivative Litig.*, 2013 WL 2897874, at *4
    (C.D. Cal. June 6, 2013)…………………………………………………..……………    20

14

15  *In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
    2019 WL 3410382, at *10 (D. Or. July 29, 2019)…………………………………    14

16

17  *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017)…………………………..    15

18  *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 51 (2000)…………………………    21

19  *Linney v. Cellular  Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)……..................    19, 22

20  *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 325 (C.D. Cal. 2015)…………...    15

21  *Reynoso v. All Power Mfg. Co.*, 2018 WL 5906645, at *3
    (C.D. Cal. Apr. 30, 2018)………………………………………………………    16

22

23  *Schellhorn et al. v. Timios, Inc.*, No. 2:21-cv-08661-VAP-JCx (C.D. Cal.)……………...13, 22, 24

24  *Smith v. Triad of Ala.*, LLC, 2017 WL 1044692, at *16
    (M.D. Ala. Mar. 17, 2017)………………………………………………………    20

25

26  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)…………………………    16

27  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)………………………………    14

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-00749-EMC

1

## TABLE OF AUTHORITIES

2
**Page**

3
*Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997)……………….....    21

4
*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001)……………...    15

5
**Statutes**                                                                                     **Page**

6

7
Fed. R. Civ. P. Rule 23(a), et seq……………………………………………………....    passim
Fed. R. Civ. P. Rule 23(e)…………………………………………………………………    passim

8
Fed. R. Civ. P. Rule 23(e)(2)(D)…………………………………………………………    25

9
**Other**                                                                                        **Page**

10
4 NEWBERG ON CLASS ACTIONS, § 11:48 (4th ed. 2002)………………………………    24
MANUAL FOR COMPLEX LITIG. § 21.632 (4th ed. 2004)………………………………..    13

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    **INTRODUCTION**

Plaintiffs Evangelia Remoundos, John Biegger, and Anne Biegger (collectively "Plaintiffs"), through their undersigned counsel, respectfully move this Court for entry of an order granting final approval to the settlement memorialized in the Amended Settlement Agreement (ECF No. 40-1), that, subject to the Court's approval, will resolve this class action lawsuit. The Court preliminarily approved the settlement on December 20, 2022 (ECF No. 44) (the "Order"). The parties filed the initial Settlement Agreement (ECF No. 26-2) together with Plaintiffs' Unopposed Motion for Preliminary Approval (ECF No. 26) on June 20, 2022, with the Court raising concerns as to certain parts of the Settlement Agreement in its Order Re: Supplemental Briefing (ECF No. 31). The Parties then filed the Joint Supplemental Memorandum in Further Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 32). At the August 25, 2022, hearing on Plaintiffs' Motion for Preliminary Approval of Class Action Settlement the Court requested the parties revisit the Settlement Agreement to address certain comments the Court had.

Following a lengthy meet-and-confer process regarding amending the Settlement Agreement, the Parties agreed to the modifications memorialized in the Amended Settlement Agreement ("ASA") (ECF No. 40-1) and described in detail in Plaintiffs' Unopposed Renewed Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support (ECF No. 40). After reviewing the ASA and Plaintiffs' Unopposed Renewed Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support, and hearing oral arguments, the Court preliminarily approved the settlement, concluding in its Order that "the proposed Settlement set forth in the Settlement Agreement is sufficiently fair, reasonable and adequate." ECF No. 44 at 3. Notice was issued to the preliminarily certified Settlement Class as directed by the

Court in the Order. *Id*. at 14, ASA at § IV.[2]

This settlement—which makes available to every Settlement Class Member considerable monetary relief, three-years of robust identity theft and credit monitoring services, and programmatic relief—represents an excellent resolution of this high-risk, complex litigation. The parties also worked diligently and cooperatively to deliver the best Notice practicable to the Settlement Class. Indeed, the Amended Settlement Agreement provides for a reminder notice to be sent to all Settlement Class Members who have not filed a claim as of fourteen (14) days prior to the Claims Deadline and for whom the Claims Administrator has a valid email address. ASA, ¶ 3.2.

The Claims Deadline is April 19, 2023, and the Objection and Opt-Out Deadline is March 20, 2023. ECF No. 44, ¶ 20. Therefore, the true reaction of the Settlement Class cannot yet be known. However, thus far, the reaction of the Settlement Class has been positive. As of the filing of this motion, in response to 11,952 notices, *no* objections have been filed and the Claims Administrator has received only one (1) request for exclusion.[3]

The settlement undoubtedly is fair, reasonable, and adequate, as the Court preliminarily found in its Order. This Court should now finally certify the Settlement Class for settlement purposes only, and finally approve the settlement as fair, reasonable, and adequate.

## II.    **STATEMENT OF FACTS**

In January 2022, LendUS notified approximately 11,570 individuals of the Data Incident. Complaint (ECF No. 1), ¶¶ 10, 12, 14, 38. LendUS offered these individuals only one year of complimentary credit and identity monitoring services as a result of the Data Incident. *Id*., ¶ 74.

---

[2] Capitalized terms have the same definitions as in the Amended Settlement Agreement.

[3] Per the Court's Order (ECF No. 44) Plaintiffs shall file responses to any Objections or a Supplement to this Motion within 14 days of the Final Approval Hearing and the Parties shall file a Supplemental Declaration from the Claims Administrator detailing the final response of the Class. ECF No. 44, ¶ 20.

Plaintiffs brought this action on behalf of all persons whose PII Plaintiffs allege was compromised by LendUS's failure to: (i) adequately protect PII; (ii) warn of its inadequate information security practices; and (iii) effectively monitor its network for security vulnerabilities and incidents. Plaintiffs allege that LendUS's conduct amounts to negligence and violates federal and state statutes. *Id*., ¶ 7. Plaintiffs, through this class action lawsuit, allege that they and Class Members have suffered injury as a result of LendUS's conduct, including: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Incident, including but not limited to lost time, and (iv) the continued and certainly increased risk to their PII, which remains in LendUS's possession and is subject to further unauthorized disclosures so long as LendUS fails to undertake appropriate and adequate measures to protect the PII. *Id*., ¶ 8.

## III.    PROCEDURAL HISTORY

On February 4, 2022, Plaintiffs filed this lawsuit asserting claims against LendUS relating to the Data Incident (the "Litigation"). Over the course of several months, Plaintiffs' counsel continued to investigate the facts of the Data Incident, and the Parties engaged in informal discovery, leading to informed settlement negotiations. Joint Declaration of M. Anderson Berry, Terence R. Coates, and Joseph M. Lyon in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement ("Joint Decl."), ¶ 5. The parties then agreed to participate in early mediation. *Id*. With a mediation on the horizon, the parties continued to rigorously pursue arm's length settlement negotiations and were able to reach a settlement in principle on almost all essential terms of relief to the putative Class. *Id.* The parties executed the Settlement Agreement on June 20, 2022. *Id*., ¶ 7. After moving for Preliminary Approval of Class Action Settlement on June 21, 2022, (ECF No. 21), and the Preliminary Approval Hearing on August 25, 2022, the Parties

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-00749-EMC

-3-

negotiated modifications to the Settlement Agreement thereby increasing the Settlement benefits made available to Class Members. *Id.*, ¶ 8.

## IV.    THE SETTLEMENT TERMS

### A.    The Settlement Class

The settlement will provide relief for the following Settlement Class: "all persons to whom LendUS mailed notice that between February 2, 2021, and March 22, 2021, LendUS was the target of a criminal cyberattack in which third-party criminals gained 'unauthorized access to some LendUS employee email accounts' and may have gained unauthorized access the notified individual's PII." ASA, ¶ 1.29. The Settlement Class specifically excludes: (i) LendUS and LendUS's parents, subsidiaries, affiliates, officers, and directors, and any entity in which LendUS has a controlling interest; (ii) all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and (iii) all judges assigned to hear any aspect of this Litigation as well as their immediate family members. *Id.* The Court granted provisional certification of the Settlement Class for settlement purposes only in its Order.  ECF No. 44 at 5.

The settlement also provides additional relief for the following California Subclass: "all persons residing in California between February 2, 2021, and March 22, 2021, to whom LendUS mailed notice that between February 2, 2021, and March 22, 2021, LendUS was the target of a criminal cyberattack in which third-party criminals gained "unauthorized access to some LendUS employee email accounts" and may have gained unauthorized access to the notified individual's PII." ASA, ¶ 1.2. The California Subclass specifically excludes: (i) LendUS and LendUS's parents, subsidiaries, affiliates, officers, and directors, and any entity in which LendUS has a controlling interest; (ii) all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and (iii) all judges assigned to hear any aspect of this Litigation as well as their immediate family members. *Id.* The Court granted provisional certification of the

California Subclass for settlement purposes only in its Order. ECF No. 44 at 5.

### B.    Settlement Benefits – Monetary Relief

The Settlement provides for two forms of monetary relief to Settlement Class Members who submit a valid and timely Claim Form: (1) reimbursement of ordinary expenses and lost time up to $500 per Settlement Class Member including lost time reimbursement at $20 per hour for up to 3 hours of lost time; and (2) reimbursement of extraordinary expenses up to $2,500 per Class Member. ASA, ¶¶ 2.1-2.2. The Settlement also provides an additional form of monetary relief to California Subclass Members who submit a valid and timely Claim Form: (3) a cash payment of $100. *Id.*, ¶ 2.3. Additionally, LendUS has agreed to pay, at minimum, $13,884 for the lost time reimbursement benefit, and $10,774 to the California Subclass for valid and timely California Cash Payment Claims. If the value of all valid and timely lost time reimbursement or California Cash Payment Claims are less than these amounts, respectively, then each such claim will be increased, *pro rata*, until the total amount paid for each benefit equals these minimums. *Id*., ¶ 2.3.

### 1.    Expense Reimbursement

The first category of payments reimburses Settlement Class Members up to $500 upon submission of a valid and timely Claim Form and supporting documentation for ordinary out-of-pocket losses incurred as a direct result of the Data Security Incident. *Id.*, ¶ 2.1. Ordinary losses can arise from several categories of expenses, fees and lost time including unreimbursed bank fees, telephone charges, and the costs of credit monitoring, among other categories so long as the charges are determined by the Settlement Administrator to be fairly traceable to the Data Incident, including, but not limited to, the cost of postage and gas for local travel. *Id.* Settlement Class Members may claim up to three (3) hours of time compensated at the rate of $20 per hour so long as the lost time is fairly traceable to the Data Security Incident, reasonably described by type of lost

time incurred, and supported by an attestation under penalty of perjury that the time spent was reasonably incurred dealing with the Data Security Incident. *Id.*

Additionally, LendUS has agreed to pay a minimum of $13,884 in Lost-Time reimbursement claims, which represents the amount that would be owed by LendUS in Lost-Time reimbursement claims if two percent (2%) of the Settlement Class submitted valid and timely Lost-Time Claims for the full three (3) hours available. Joint Decl., ¶ 9. If less than this amount is claimed by the Settlement Class in valid and timely Lost-Time Claims, then each valid and timely Lost-Time Claim will be increased on a *pro rata* basis until the total amount paid for Lost-Time Claims equals $13,884. *Id.* If more than $13,884 is claimed by the Settlement Class in valid and timely Lost-Time Claims, LendUS will pay the total amount of valid and timely Lost-Time Claims. *Id.* The $500 cap on Lost-Time and Expense Reimbursement does not apply to any *pro rata* increase to a valid and timely Lost-Time Claim. *Id.*

### 2.    Extraordinary Expense Reimbursement

The second category provides for reimbursement of extraordinary expenses, up to $2,500 per Settlement Class Member who submits a valid and timely claim form. *Id.*, ¶ 2.2. A class member may make a claim for Extraordinary Expense Reimbursement if: (1) the loss is an actual, documented and unreimbursed monetary loss; (2) the loss was more likely than not caused by the Data Incident; (3) the loss occurred between February 2, 2021, and the Claims Deadline; (4) the loss is not already covered by one or more of the reimbursement categories listed in ¶ 2.1 of the ASA; and (5) the member of the Settlement Class made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance. *Id.*

### 3.    California Cash Payment

The third category of monetary payment to the Class is available to all California Subclass Members. All California Subclass Members who submit a valid Claim are eligible to receive a payment of $100 provided that they attest, under oath, that they were a resident of the State of California at any point between February 2, 2021, and March 22, 2021. *Id.*, ¶ 2.3. The California Cash Payment is subject to the $500 cap for ordinary loss and lost time. *Id.*

LendUS has also agreed to pay a minimum of $10,774 for California Cash Payment Claims which represents the amount that would be owed by LendUS if two percent (2%) of the California Subclass submitted valid and timely California Cash Payment Claims. *Id.* If less than two percent (2%) of the California Subclass makes such claims, each valid and timely California Cash Payment Claim will be increased, *pro rata*, until the total paid for California Cash Payments equals $10,774. *Id.* If more than two percent (2%) of the California Subclass submits valid and timely California Cash Payment Claims, LendUS will pay the total amount of valid and timely California Cash Payment Claims. *Id.* The $500 cap on Lost-Time and Expense Reimbursement does not apply to any *pro rata* increase to a valid and timely California Cash Payment Claim. *Id.*

**C.    Other Settlement Benefits – Identity Protection and Credit Monitoring Services**

In addition to the cash benefits outlined above, LendUS has agreed to provide Settlement Class Members credit monitoring and identity-theft protection, called "Financial Shield" by Pango, for three (3) years, with the credentials for this benefit provided in the Short Notice. *Id.*, ¶ 2.4. This service will include: (i) Up to $1 Million Dollars reimbursement insurance through AIG covering losses due to identity theft and stolen funds; (ii) Financial transaction monitoring, including monitoring of all financial accounts registered by the Settlement Class Member, for transactions over selected thresholds; (iii) Continuous monitoring for high-risk transactions, including payday loans, wire transfers, and account openings, involving the Settlement Class Member's PII; (iv) Notification of attempts to use the Settlement Class Member's Social Security Number as part of

an identity verification event, such as requesting a replacement credit or debit card; filing an insurance claim; updating an existing account; and/or opening a new account; (v) Fictitious identity monitoring, which notifies the Settlement Class Member when their Social Security Number is used in association with someone else's name and/or address; (vi) Online tax fraud monitoring and alerts, which monitors online income tax filings and alerts the Settlement Class Member if a tax return is filed using their Social Security Number; (vii) Home title monitoring, including monitoring properties identified by a Settlement Class Member and notifications when an existing property title is changed, removed, or new titles are added to their name; (viii) Dark web monitoring, which continuously monitors the dark web for the Settlement Class Member's personal information; (ix) Public record monitoring, which monitors public records for address changes, automotive tickets, and arrests associated with the Settlement Class Member's name and Social Security number; (x) Credit security freeze assistance, which provides the Settlement Class Member a central location to link to one of ten different consumer reporting agencies to freeze and unfreeze his or her credit files; and (xi) Lost wallet protection, which provides a customer support line where the Settlement Class Member can receive help in canceling and replacing lost credit cards. *Id.*

Settlement Class Members will receive unique credentials in their Short Notice to redeem this identity protection and credit monitoring service whether or not they are eligible for monetary recovery. *Id.* Those Settlement Class Members who already have obtained monitoring and protection services offered through Defendant as a result of the Data Security Incident will receive this benefit in addition to the monitoring and protection services they received from Defendant. *Id.*

Filed concurrently herewith is the Declaration of Gerald Thompson ("Thompson Declaration"). Mr. Thompson is the Executive Vice President at Pango Group and details in his declaration the monitoring and protection services included in Financial Shield that will be provided to participating Settlement Class Members. Thompson Decl. at ¶¶ 5, 6. Mr. Thompson declares that

these services are sold to consumers for a range of $8 to $10 per month per subscriber and that, using the lower amount, the value of providing Financial Shield to the approximately 11,570 Settlement Class Members is **$3,332,160.00,** or **$288** per class member. *Id.* at ¶ 9.

### D.    Business Practices Enhancements, Monetary Investment and Data Security

Defendant has taken and has agreed to continue to undertake certain reasonable steps to enhance the security deployed for its data network, including: (i) Employing multi-factor authentication for all users of its email systems; (ii) Fully disabling all access to its legacy email protocols; (iii) Implementing universal password reset protocols for all users of its email systems; (iv) Engaging in weekly reviews of all access logs to allow Defendant to identify and investigate any irregular log-in patterns; (v) Deploying enhanced security awareness training for its employees, which will include awareness training specifically regarding phishing attacks and which will allow Defendant to individually track the progress of that training; (vi) Conducting semi-annual reviews of its retention policies to ensure compliance with its contractual and regulatory obligations; and (vii) Deleting, consistent with its existing contractual and regulatory obligations, all information relating to Plaintiffs that is within Defendant's possession. ECF No. 40-4.

Plaintiffs and Class Members have and will continue to receive a benefit from business practice changes made in response to this case that are aimed at preventing further unauthorized access to their sensitive PII entrusted to Defendant. LendUS has engaged in substantial and significant business practice changes in response to this case that have resulted in substantial and significant expenses to LendUS, expenses that will continue for years to come. Defendant has estimated that such security enhancements are valued at $228,800 through the end of 2022. *See* Second Declaration of M. Anderson Berry In Support of Plaintiffs' Unopposed Renewed Motion for Preliminary Approval of Class Action Settlement, ECF No. 40-2, at ¶ 13. Prior to the hearing of this Motion and the concurrently filed Motion for Attorneys' Fees, Expenses, and Service

Awards, Defendant will file, under seal, a declaration providing an updated valuation of its security enhancements including, but not limited to, an estimate of the future value of those enhancements.

### E.     Class Notice and Settlement Administration

As part of the Settlement, LendUS shall pay for providing Notice to the Settlement Class in accordance with the Preliminary Approval Order, and the costs of Claims Administration. ASA, ¶ 3.2. The Claims Administrator, Kroll Settlement Administration LLC ("Kroll"), estimates that the costs of notice and administration will be approximately $76,262.40. Declaration of Scott M. Fenwick of Kroll Settlement Administration LLC in Connection with Final Approval of Class Action Settlement ("Fenwick Decl."), ¶ 15.

Kroll sent the Short Notice by email to 3,022 Settlement Class Members and sent postcard notice via US mail to 8,427 Settlement Class Members, for whom email addresses were not available. *Id.*, ¶¶ 9, 10. Of 726 Short Notices that were not deliverable as sent, Kroll has been able to resend 559. *Id.*, ¶¶ 9-12. The Short Notice directed Settlement Class Members to the Settlement Website and informed them of, among other things, the Claims Deadline, the Opt-Out and Objection deadlines, and the approximate date of the Final Fairness Hearing. *Id.*, Ex D. Of the 8,427 Short Notices sent by mail, 8,260 of them, or 98%, have so far ultimately been successfully sent. *Id.*, ¶¶ 9, 12. A Long Notice, was also posted on the Settlement Website, along with the Claim Form and other important documents. *Id.*, ¶ 6 & Exs. E and F. Furthermore, a toll-free help line was activated on December 29, 2023, and has remained operational since that time. *Id.*, ¶ 7.

By April 5 Kroll will send a reminder of the settlement and the Claims Deadline by email to any Class Members who have not yet submitted Claim Forms and for whom email addresses were included in the class list. S.A., ¶ 3.2. The email will provide recipients with information about the settlement, access to the Settlement Website, and their settlement claim ID, required for filing an online claim. *Id*. The reminder was not required by the original Notice Plan but implemented to

1    further supplement Class Member participation in and access to the settlement benefits.

2         **F.     Attorneys' Fees and Expenses and Service Award to Plaintiff**

3         After an agreement was reached on the essential terms of the settlement (*i.e.*, Settlement

4    Class benefits), Defendant agreed to pay Settlement Class Counsel attorneys' fees and litigation

5    costs up to $195,000, separate and apart from any other sums under the settlement and subject to

6    Court approval. Joint Decl., ¶ 6. In response to the Court's concerns at the Preliminary Approval

7    Hearing, Settlement Class Counsel proposed, and Defendant agreed, to reduce the maximum

8    amount of attorneys' fees Settlement Class Counsel will seek to $175,000. Joint Decl., ¶ 9. If the

9    Court reduces the attorneys' fees awarded to Settlement Class Counsel, the parties agreed that any

10   reduction below $175,000 will be distributed *pro rata* to Settlement Class Members who submit

11   valid claims. ASA, ¶ 7.6.[4] Also after an agreement had been reached as to the Settlement Class

12   benefits, Defendant agreed to pay a service award of $2,000 to each Settlement Class

13   Representative, separate and apart from any other sums agreed to under the settlement. *Id.*, ¶ 7.3.

14        **G.     Release**

15        Upon entry of the Final Approval Order, Plaintiff and the Settlement Class will be deemed

16   to "have, fully, finally, and forever released, relinquished, and discharged all Released Claims."

17   ASA, ¶ 6.1. "Released Claims" are defined, *inter alia*, as:

18
        any and all past, present, and future claims and causes of action including, but not limited
        to, any causes of action arising under or premised upon any statute, constitution, law,
        ordinance, treaty, regulation, or common law of any country, state, province, county, city,
        or municipality, including 15 U.S.C. §§ 45 *et seq.*, and all similar statutes in effect in any
        states in the United States; violations of the California Unfair Competition Law, Cal. Bus.
        & Prof. Code § 17200, *et seq.* and all similar state consumer-protection statutes; violations
        of the California Consumer Protection Act of 2018, Cal. Civ. Code § 1798, *et seq.* and all
        similar state privacy-protection statutes; violations of the California Consumer Records Act,
        Cal. Civ. Code § 1798.80, *et seq.* and all similar statutes in effect in any states in the United
        States; negligence; negligence *per se*; breach of contract; breach of implied contract; breach

---

[4] Plaintiffs are filing concurrently herewith a motion for an award by the Court of attorneys' fees and costs and the service award to Plaintiffs.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-00749-EMC

-11-

of fiduciary duty; breach of confidence; invasion of privacy; fraud; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, and/or the appointment of a receiver, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, direct or derivative, and any other form of legal or equitable relief that either has been asserted, was asserted, or could have been asserted, by any member of the Settlement Class against any of the Released Persons based on, relating to, concerning or arising out of the Data Incident and alleged theft of payment card data or other personal information or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Litigation. Released Claims shall not include the right of any Settlement Class Member or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement and shall not include the claims of members of the Settlement Class Members who have timely excluded themselves from the Settlement Class.

*Id.*, ¶ 1.25. Released Claims include Unknown Claims (*see id.*, ¶ 1.34), but do not include the claims of individuals who have timely excluded themselves from the Settlement Class. *Id.*, ¶ 1.25.

## V.    CLAIMS, REQUESTS FOR EXCLUSION AND OBJECTIONS

The deadline to object or opt-out will be March 20, 2022. ECF No. 44, ¶ 20. As of the filing of this motion, in response to 11,449 direct postcard and email notices, no objections have been filed and one (1) person has requested exclusion. Fenwick Decl., ¶¶ 9, 10, 14. The Claims Deadline does not expire until April 19, 2023. Nevertheless, as of March 2, 2023, the Claims Administrator has received 360 claims. *Id.*, ¶ 13. The Claims Administrator is still in the process of reviewing and validating Claim Forms. *Id.* The 360 claims received so far results in a claims rate of 3.1%, which is already at the high end of the range of claims rates in other data breach class action settlements within this Circuit, with well over a month remaining in the Claims period. *See*, for example:

| Case Title | Approx. Class Size | No. of Claims | Claims Rate |
|---|---|---|---|
| *Corona v. Sony Pictures Entertainment, Inc.*, No. 2:14-cv-9600 (C.D. Cal.), ECF Nos. 145-1 at 11 n.8 & 164 at 2 | 435,000 | 3,127 | 0.7% |

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-00749-EMC

-12-

| | | | |
|---|---|---|---|
| *In re LinkedIn User Privacy Litig.*, No. 12-cv-03088-EJD (N.D. Cal.), ECF Nos. 122 at 2 & 145-2 at ¶ 12 | 6,400,000 | 47,336 | 0.7% |
| *Hashemi, et al. v. Bosley, Inc.*, No. 2:21-cv-00946-PSG (C.D. Cal.), ECF Nos. 170 at 1 & 59 at 8 | 86,927 | 893 | 0.9% |
| *Schellhorn et al. v. Timios, Inc.*, No. 2:21-cv-08661-VAP-JC, ECF No. 47-1 at 1-2 | 74,755 | 785 | 1.05% |
| *In re Banner Health Data Breach Litigation*, No. 2:16-cv-2696 (D. Ariz.), ECF Nos. 170 at 1 and 195-3 at ¶ 12 | 2,900,000 | 39,091 | 1.3% |
| *In re Anthem, Inc. Data Breach Litig.*, No. 5:15-md-02617-LHK (N.D. Cal.), ECF Nos. 1007 at 4 & 1007-6 at ¶ 2 | 79,200,000 | 1,380,000 | 1.7% |
| *Cochran, et al. v. Kroger Co.* 5:21-cv-01887 (N.D. Cal.), ECF Nos. 108 at 4-6 & 108-1, ¶ 4 | 3,825,200 | 80,630 | 2.1% |
| *Koenig, et al. v. Lime Crime, Inc.*, No. CV 16-503-PSG (JEMx) (C.D. Cal.), ECF Nos. 55 at 1 n.16 & 8 n.1 | 107,726 | 3,094 | 2.87% |
| *In re Experian Data Breach Litigation*, No. 8:15-cv-01592-JLS-DFM (C.D. Cal.), ECF Nos. 286-1 at 20 & 309-3, ¶ 8 | 14,931,074 | 436,006 | 2.9% |
| *Atkinson et al. v. Minted, Inc.* No. 3:20-cv-03869-VC (N.D. Cal.), ECF No. 71 at 4 | 4,198,490 | 147,268 | 3.5% |

Kroll will continue to receive, review, cure, and validate claims that are timely received through the April 19, 2023, postmark deadline.

## VI.    LEGAL ARGUMENT

### A.    The Court Should Certify the Class for Settlement Purposes

Before assessing the parties' settlement, the Court should first confirm the underlying Settlement Class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); MANUAL FOR COMPLEX LITIG. § 21.632 (4th ed. 2004). The requirements are well known: numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). The Court found the Settlement Class met these requirements in its Order and provisionally certified the

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-00749-EMC

-13-

Settlement Class for settlement purposes. ECF No. 35 at 6-11. Plaintiffs respectfully submit the Court's original assessment was correct and it should now certify the Settlement Class for settlement purposes.

### 1.    The Rule 23(a) Requirements Are Met for Purposes of Settlement

The Settlement Class includes approximately 11,570 individuals (ASA, p. 2); therefore, it readily satisfies the numerosity requirement. *See* Fed. R. Civ. P. 23(a)(1). The Class also satisfies the commonality requirement, which requires class members' claims "depend upon a common contention" of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, courts in the Ninth Circuit have found that these common issues all center around Defendant's alleged misconduct, and in particular, satisfying the commonality requirement. *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 2019 WL 3410382, at *10 (D. Or. July 29, 2019). For the same reason, predominance is readily met "where the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] conduct.'" *In re Google LLC St. View Elec. Communs. Litig.*, 2020 WL 1288377, at *5 (N.D. Cal. Mar. 18, 2020) (quoting *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 559 (9th Cir. 2019)). Thus, common questions include, among many, whether Defendant engaged in the wrongful conduct alleged; whether Class Members' PII was compromised during the Data Security Incident; whether Defendant owed a duty to Plaintiffs and Class Members and breached its duty; and whether Defendant unreasonably delayed notifying Plaintiffs and Class Members of the material facts of the Data Security Incident.

Typicality and adequacy are also easily met for purposes of settlement. Plaintiffs' claims are typical of the proposed Class because they are based on Defendant's alleged failure to protect

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-00749-EMC

-14-

Plaintiffs' and Class Members' PII and are therefore "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Forcellati v. Hyland's, Inc*., 2014 U.S. Dist. LEXIS 50600, at *31 (C.D. Cal. Apr. 9, 2014) (finding plaintiffs' claims were reasonably co-extensive with those of absent class members). Plaintiffs allege that their PII was compromised, and that Defendant's same alleged poor data security practices caused them the same injury that the Class suffered. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

Plaintiffs are also adequate class representatives because (1) there are no antagonistic or conflicting interests between Plaintiffs and their counsel and the absent Class Members; and (2) Plaintiffs and their counsel will vigorously prosecute the action on behalf of the Class. Fed. R. Civ. P. 23(a)(4); *see also Ellis,* 657 F.3d at 985 (*citing Hanlon v. Chrysler Corp*, 150 F.3d, 1011, 1020 (9th Cir. 1998); *Longest v. Green Tree Servicing LLC,* 308 F.R.D. 310, 325 (C.D. Cal. 2015). Plaintiffs have no conflicts of interest with other class members, are not subject to unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the Class. Plaintiffs are members of the Class who have experienced the same injuries and seek, like other Class Members, compensation. As such, Plaintiffs' and the Proposed Class Counsel's interests align with those of the Class. Further, Class Counsel have decades of combined experience as class action advocates and are well suited to litigate on behalf of the Class. *See* Joint Decl., ¶ 13. Thus, Plaintiffs will adequately protect the interests of the Class.

### 2.     The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement

In addition to meeting the conditions imposed by Rule 23(a), parties seeking class certification must also show that the action is maintainable under FRCP 23(b)(1), (2) or (3). *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Here, Plaintiffs allege

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-00749-EMC

-15-

that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any individual questions and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Hanlon,* 150 F.3d at 1022.

Common questions of law and fact predominate over individualized questions. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Capaci v. Sports Rsch. Corp.*, 2022 WL 1133818, at *9 (C.D. Cal. Apr. 14, 2022) (citing *Amchem Prods.*, 521 U.S. at 623). Courts analyze whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member. *Reynoso v. All Power Mfg. Co.*, 2018 WL 5906645, at *3 (C.D. Cal. Apr. 30, 2018) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). If, to make a prima facie showing on an issue, plaintiffs will need to present evidence that varies from one class member to the next, then the issue raises an individual question. *Chua v. City of L.A.*, 2017 WL 10776036, at *9 (C.D. Cal. May 25, 2017). If the same evidence can suffice for each member of the class on an issue, then it becomes a common question. *Id.* (citing *Tyson Foods, Inc.*, 136 S. Ct. at 1045) (internal quotations and citation omitted). Courts in the Ninth Circuit find predominance where there is a sufficient constellation of common issues that binds class members together. *Keegan v. Am. Honda Motor Co*, 284 F.R.D. 504, 545 (C.D. Cal. 2012).

Plaintiffs' claims depend, first and foremost, on whether Defendant used reasonable data security measures to protect PII. That question can be resolved using the same evidence for all Class Members, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See, e.g., Tyson Foods, Inc.* 136 S. Ct. at 1045 ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) …'") (citation omitted).

Rule 23(b)(3) requires that a "class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy" and is intended to cover cases "in which a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. Four factors are pertinent to this inquiry: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3). Here, class treatment of Plaintiffs' and the Class's claims is superior to individual actions because a class action will be more efficient and conserve costs, time, and effort. The relatively minor amount of damages traceable to each Class member on an individual basis would not justify the pursuit of separate lawsuits across the country. Additionally, a class action is the superior method of adjudicating consumer claims arising from the Data Security Incident—just as in other data breach cases where class-wide settlements have been approved. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316-17 (N.D. Cal. 2018); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015). Further, the Class consists of thousands of individuals who, should they be required to bring individual cases, would submit identical factual evidence regarding Defendant's liability and seek redress for the same types of injuries, yet risk having different outcomes, even though their claims arise out of the same conduct and the same Data Security Incident. All these considerations demonstrate the superiority of a class action here.

## B.      The Court Should Finally Approve the Settlement

Rule 23(e) provides that a proposed class action may be "settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). For a proposed class action to

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-00749-EMC

-17-

be approved, the Court must determine, after a hearing, that it is fair, adequate, and reasonable. The Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant (not applicable here); (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Each of these factors weighs in favor of approval here.

In applying these factors, the guiding principle for courts remains that settlements of class actions are preferable. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits"). Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be finally approved.

### 1.    The Strength of Plaintiffs' Case

Plaintiffs believe they have a strong case for liability. In particular, all Plaintiffs believe ample evidence will establish that Defendant failed to maintain reasonable data security practices, which led directly to the loss of Plaintiffs' and the Class's PII. Joint Decl., ¶ 16. Moreover, Plaintiffs believe that once they establish that Defendant's data security measures were inadequate, Defendant is likely to be found liable under at least some of the theories of liability pled in the Complaint. *Id.*, ¶ 17. However, Plaintiffs' success is not guaranteed. The actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication. *Id.*, ¶ 18; *see also Dennis v. Kellogg Co.*, 2013 WL 6055326, at *3 (S.D. Cal. Nov.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 3:22-cv-00749-EMC

-18-

14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). Given the challenges and inherent risks Plaintiffs face with respect to the novel claims characteristic of data breach actions, including class certification, summary judgment, and trial, the substantial benefits of the settlement favor final approval of the Settlement. Joint Decl., ¶¶ 17, 18.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

While Plaintiffs believe their case is strong, substantial risk is inherent in all cases. This case involves a proposed class of approximately 11,570 individuals (ASA, p. 2) and a complicated and technical factual background in a relatively novel area: data breach litigation. Although nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular  Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is a particularly complex class action due to the standing challenges plaintiffs face in data breach class actions. *See, e.g., In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit).

Moreover, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, data breach cases are among the riskiest and most uncertain of all class action litigation, making accepting a favorable settlement the more prudent course. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. As in any data breach case, establishing causation on a class-wide basis also remains uncertain.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-00749-EMC

-19-

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in zero recovery to the Class. Therefore, this factor favors approval. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc*., 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016).

### 3.    The Risk of Maintaining Class Action Status Through Trial

If the Parties were to proceed to litigate their claims through trial, Plaintiffs would encounter risks in obtaining and maintaining certification of the Class. The Class has not yet been certified, and Defendant will certainly oppose certification. Thus, Plaintiffs "necessarily risk[s] losing class action status." *Grimm v. Am. Eagle Airlines, Inc.*, 2014 WL 12746376, at *10 (C.D. Cal. Sep. 24, 2014). Class certification in contested consumer data breach cases is not common—first occurring in *Smith v. Triad of Ala.*, LLC, 2017 WL 1044692, at *16 (M.D. Ala. Mar. 17, 2017), and most recently in *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig*., 341 F.R.D. 128 (D. Md. May 3, 2022) and *In re Brinker Data Incident Litig.*, 2021 WL 1405508 (M.D. Fla., Apr. 14, 2021). Thus, the scarcity of direct precedent amplifies the risks of continuing the Litigation.

### 4.    Amount Offered in Settlement

A settlement should stand or fall on the adequacy of its terms. *In re MRV Communs., Inc. Derivative Litig.*, 2013 WL 2897874, at *4 (C.D. Cal. June 6, 2013) (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)). The settlement here reflects an excellent result in light of the challenges that come with data breach litigation. Specifically, the settlement provides monetary relief to Class Members who submit valid Claim Forms. *See* ASA, ¶¶ 2.1-2.3. Further, Plaintiffs and Class Members will receive, among other non-monetary relief, credit monitoring and identity theft protection for three additional years. *Id.*, ¶ 2.4. Finally, the settlement also involves significant business practice enhancements for Defendant's data security

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-00749-EMC

-20-

system, which will help to protect the Settlement Class's PII going forward. Considering that this is an unsettled area of law fraught with the risk that the Class would not be certified and that Plaintiffs would not succeed at trial, the present settlement represents an excellent compromise of Plaintiffs' and the Settlement Class Members' claims. Joint Decl., ¶ 18.

As discussed in detail in Plaintiffs' concurrently-filed Motion for Attorneys' Fees, Expenses, and Service Award to Plaintiff (*see* § III.D.6), taken together, the value of the settlement is substantial. The value of the settlement is, at a minimum, $3,836,880.40, which includes: (1) $13,884 for lost time (based on the 2% minimum for this Settlement benefit); (2) $10,774 for the CCPA payments to California Class Members (based on the 2% minimum for this Settlement benefit); (3) $3,332,160 for the value of Financial Shield; (4) $228,800, the value of the remedial measures agreed to by Defendant as part of the settlement; (5) $175,000 in requested attorneys' fees and costs; and (6) $76,262.40 in notice and administration expenses. *See Lealao v. Beneficial Cal., Inc*., 82 Cal. App. 4th 19, 51 (2000) (The value of a settlement is "calculated on the basis of the total fund made available rather than the actual payments made to the class.") (citing *Williams v. MGM-Pathe Commc'ns Co*., 129 F.3d 1026 (9th Cir. 1997)).

Additionally, the clear trend in this circuit is for similar claims made settlements in cases involving data breaches of similar scope to be approved. For example, in *Ford v. [24]7.AI, Inc*. the class received up to $2,000 per class member for out-of-pocket expenses, including lost time reimbursement. *See Ford v. [24]7.AI, Inc.*, 2022 U.S. Dist. LEXIS 16072 at *3-*5 (N.D. Cal. Jan. 28, 2022). There was no provision for credit monitoring, identity theft insurance, or any cash payment for California   class members. *Id.* Similarly, the *Bosley* settlement offered up to $300 in ordinary expense and lost time reimbursement, up to $5,000 in extraordinary expense reimbursement, a $50 California cash payment, and two years of identity and fraud protection services, with an aggregate cap of $500,000 for the monetary relief. *Hashemi v. Bosley, Inc.*, 2022

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-00749-EMC

-21-

WL 18278431, at *2 (C.D. Cal. Nov. 21, 2022). Likewise, in *Schellhorn et al. v. Timios, Inc.,* No. 2:21-cv-08661-VAP-JCx (C.D. Cal.), the court approved a settlement of $300 per class member in ordinary expense and lost time compensation, up to $5,000 per class member in extraordinary expense reimbursement, a $50 California cash payment, and two years of identity and fraud protection services *See Id.*, ECF No. 52 (Nov. 9, 2022). *See also Bowdle v. King's Seafood Company, LLC*, SACV 21-01784-CJC (C.D. Cal.), ECF No. 49 (Feb. 13, 2023) (order finally approving claims-made data breach class action settlement with broadly similar benefits as found here, with less than 3,000 in the class); *In re: California Pizza Kitchen Data Breach Litigation*, No. 8:21-cv-01928-DOC-KES (C.D. Cal.), ECF No. 87 (Feb. 23, 2023) (order finally approving claims-made data breach class action settlement with broadly similar benefits as found here).

 In the instant matter, the benefits to the class are equal to or superior to those offered in the above cases, as California Class members are receiving $100 in payment for their statutory claims, class members are receiving three years of identity and fraud protection services, and Defendant has agreed to a "floor" in its payments on lost-time and California Cash Payment claims such that if fewer than two percent (2%) of Class Members claim these benefits, the payments to those who do make such claims will be increased *pro rata* until they equal the equivalent amount had two percent (2%) of Class Members made such claims.

Because the settlement here is similar to other settlements that courts, including those in this district, have approved, this factor reflects that the settlement is fair. *See Calderon v. Wolf Firm*, 2018 WL 6843723, at *8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases).

### 5.    The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Here, Plaintiffs

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-00749-EMC

-22-

gathered all of the information that was available regarding LendUS and the Data Security Incident—including publicly-available documents concerning announcements of the Security Incident and notice of the Security Incident to its customers and various states' Attorneys General. Joint Decl., ¶ 5. The parties also informally exchanged non-public information concerning the Security Incident and the size of the Class in preparation for settlement negotiations. *Id*. Although the parties have not engaged in formal discovery, Settlement Class Counsel's experience in similar types of privacy and data protection practices provided substantive knowledge on the subject to enable Class Counsel to represent Plaintiffs' and Class Members' interests without expending hundreds of hours and substantial financial resources to come up to speed on the subject area. *Id.*, ¶ 14. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, 2017 WL 10434013, at *4 (C.D. Cal. Oct. 12, 2017). Accordingly, Plaintiff made a decision fully informed about the strengths and weaknesses of this case.

### 6. The Experience and Views of Counsel

Settlement Class Counsel initiated this lawsuit after Defendant announced the Data Security Incident, which impacted over 11,570 individuals. ASA, p. 2. Settlement Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one. *See* Joint Decl., ¶ 13. Having worked on behalf of the Class since the Data Security Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and resources to this litigation, Settlement Class Counsel fully endorse the settlement. Joint Decl., ¶ 15. A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g., Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Therefore, this factor supports approval.

### 7. The Reaction of the Class Members to the Proposed Settlement

The deadline to object or opt-out is March 20, 2022. As of the filing of this motion, in response to 11,449 direct postcard and email notices, no objections have been filed and only one person has requested exclusion. Fenwick Decl., ¶ 14. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529; 4 NEWBERG ON CLASS ACTIONS, § 11:48 (4th ed. 2002) ("Courts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections [citations omitted]").

### 8.    Lack of Collusion among the Parties

The Parties negotiated a substantial, multifaceted settlement, as described above. The Parties did not negotiate attorneys' fees and the service award until after agreement on all substantive portions of the class resolution had been reached, and both the class portion of the resolution and the attorneys' fees and the service award were negotiated during numerous and periodic arm's-length negotiations. ASA, ¶¶ 7.1; Joint Decl., ¶ 5. Furthermore, Settlement Class Counsel are well versed in handling data breach class actions such as this one and fully understand the values recovered in similar cases. Joint Decl., ¶ 13. Thus, the Court can be assured that the negotiations were not collusive.

Courts, including ones in this district, regularly approve settlements of similar claims with nearly identical settlement structures and benefits for the classes. *See*, *e.g.*, *Hashemi*, ., 2022 WL 18278431, at *2; *Ford*, 2022 U.S. Dist. LEXIS 16072 at *3–*5; *Schellhorn*, No. 2:21-cv-08661-VAP-JCx at ECF No. 52; *In re California Pizza Kitchen Data Breach Litigation,* No. 8:21-cv-01928-DOC-KES at ECF No. 87; *Bowdle*, No. SACV 21-01784-CJC, ECF No. 49; *Aguallo v. Kemper Corporation*, No. 1:21-cv-01883 (N.D. Ill. Oct. 14, 2021), ECF No. 53 (order approving settlement); *Warshawsky v. CBDMD, Inc.*, No. 20-cv-00562 (W.D. N. C. Aug. 9, 2022), ECF No.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-00749-EMC

-24-

21 (order approving settlement).

### 9.    The Settlement Treats Settlement Class Members Equitably

Finally, under Rule 23(e)(2)(D), the court must confirm that the settlement treats all class members equitably. Courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018). In deciding whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hudson v. Libre Tech. Inc.*, WL 2467060, at *9 (S.D. Cal. May 12, 2020) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

Here, all Settlement Class Members benefit from the same relief, without preferential treatment. All Settlement Class Members can claim up to $500 for ordinary expenses and lost time and up to $2,500 for extraordinary expenses, are offered identity theft protection, and all California Subclass Members are eligible for the California Cash Payment. While Plaintiffs seek Court approval of a service award, as explained in detail in Plaintiffs' motion for attorneys' fees*,* the award of $2,000 aligns with awards granted in similar cases, is presumptively reasonable, and does not call into question Plaintiffs' adequacy or the validity of the Settlement. Therefore, this factor also weighs in favor of approval.

## VIII.    CONCLUSION

For these reasons, Plaintiffs respectfully request this Court finally approve the settlement.

Date: March 3, 2022

Respectfully Submitted,

 */s/ M. Anderson Berry*
M. Anderson Berry (SBN 262879)
**CLAYEO C. ARNOLD, APC**

865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Email: aberry@justice4you.com

Terence R. Coates (admitted *Pro Hac Vice*)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
Email: tcoates@msdlegal.com

Joseph M. Lyon (admitted *Pro Hac Vice*)
**THE LYON FIRM, LLC**
2754 Erie Avenue
Cincinnati, OH 45208
Phone: (513) 381-2333
Email: jlyon@thelyonfirm.com

*Attorneys for Plaintiffs and the Proposed Classes*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  3:22-cv-00749-EMC

-26-