M. Anderson Berry (262879)
Gregory Haroutunian (330263)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Fax: (916) 924-1829
Email: aberry@justice4you.com
gharoutunian@justice4you.com

Terence R. Coates (*Pro Hac Vice*)
**MARKOVITS STOCK & DEMARCO, LLC**
119 E. Court Street, Ste 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
Fax: (513) 665-0219
Email: tcoates@msdlegal.com

Joseph M. Lyon (*Pro Hac Vice*)
**THE LYON FIRM, LLC**
2754 Erie Avenue
Cincinnati, OH 45208
Telephone: (513) 381-2333
Fax: (513) 766-9011
Email: jlyon@thelyonfirm.com

*Attorneys for Plaintiffs and Settlement Class Counsel*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANGELIA REMOUNDOS, et al.<br><br>Plaintiffs,<br><br>v.<br><br>LEND US, LLC,<br><br>Defendant. | Case No. 3:22-cv-00749-EMC<br><br>*The Honorable Edward M. Chen*<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT**<br><br>Complaint Filed: February 4, 2022 |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June ___, 2022, at 1:30 p.m., in Courtroom 5 of the United States District Court for the Northern District of California, Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable Edward M. Chen, presiding, Plaintiffs will and hereby move for an Order approving Plaintiffs' request for Attorneys' Fees, Expenses, and Service Awards.[1]

In so moving, Plaintiffs respectfully request the Court: approve Class Counsel's Requested Attorneys' Fees and reimbursement of Expenses of $175,000, and Service Awards for $2,000 to each of representative Plaintiffs.

This motion is based upon this Motion, the Memorandum of Points and Authorities, the accompanying Joint Declaration of M. Anderson Berry, Terence R. Coates, and Joseph M. Lyon ("Joint Decl."), the accompanying Declarations of Gerald Thompson, Scott M. Fenwick, Evangelia Remoundos, John Biegger, and Anne Biegger and all exhibits attached thereto, pleadings on file in this Action, and other such matters and argument as the Court may consider at the hearing on this motion.

---

[1] Unless otherwise indicated, the defined terms herein shall have the same definition as set forth in the Amended Settlement Agreement, ECF No. 40-1.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION……………………………………………………    1

II.   FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION………..    3

III.  ARGUMENT……………………………………………………    4

    A.    Legal Standard…………………………………………………...    4

    B.    Claims-Made Settlements and Attorneys' Fees are Regularly
        Approved in Data Breach Class Action Litigation………………………    6

    C.    Class Counsel's Lodestar is Reasonable…………………………………    8

        1.    The Number of Hours Class Counsel Billed are Reasonable……    8

        2.    Class Counsel's Hourly Rates are Reasonable…………………..    10

    D.    Class Counsel's Resulting Lodestar is Reasonable and Does Not
        Require Adjustment……………………………………………………    12

        1.    Class Counsel Achieved a Favorable Result for the Class……….    13

        2.    Class Counsel Performed Superior Quality Work to
            Achieve the Settlement…………………………………………    14

        3.    The Litigation was Risky, Complex, and Expensive……………..    16

        4.    Class Counsel Worked on a Contingent Basis……………………    18

        5.    The Reaction of the Class Supports the Fee Request……………..    19

        6.    Although Unnecessary, a Percentage Crosscheck Confirms
            the Reasonableness of the Fee Request……………………………    19

    E.    The Court Should Grant a Service Award to the Class Representatives….    22

IV.   CONCLUSION……………………………………………………    23

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-i-

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

*Adkins v. Facebook, Inc.*, No. C 18-05982 WHA, 2019 U.S. Dist. LEXIS 206271,

4
    (N.D. Cal. Nov. 26, 2019)……………………………………………………..    17

5

*Alikhan v. Goodrich Corp.*, 2020 WL 4919382, (C.D. Cal. June 25, 2020)……………    11

6

*Allagas v. BP Solar Int'l, Inc.*, 2016 U.S. Dis. LEXIS 187785

7
    (N.D. Cal. Dec. 22, 2016)…………………………………………………………...    15

8

*Antman v. Uber Techs., Inc.*, No. 3:15-cv-01175, 2015 U.S. Dist. LEXIS 141945,

9
    (N.D. Cal. Oct. 19, 2015)…………………………………………………………    16

10

*Arnold v. DMG Mori USA, Inc.*, No. 18-cv-02373, 2022 WL 18027883

11
    (N.D. Cal. Dec. 20, 2022)………………………………………………………..    11

12

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015)………….    18

13

*Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)………………………………………..    10

14

*Bosley, Inc.*, 2022 U.S. Dist. LEXIS 210946 at *25……………………………………  passim

15

*Bowdle v. King's Seafood Company, LLC,* No. SACV 21-01784-CJC (JDEx)

16
    (C.D. Cal. Feb. 13, 2023)……………………………………………………………    8

17

*Carlotti v. ASUS Computer Int'l*, No. 18-cv-03369-DMR, 2020 WL 3414653,

18
    (N.D. Cal. 2020)………………………………………………………………..    11

19

*Ching v. Siemens Indus.*, 2014 U.S. Dist. LEXIS 89002

20
    (N.D. Cal. Jun. 27, 2014)…………………………………………………………    18

21

*Edwards v. First Am. Corp.*, 2016 WL 8999934 (C.D. Cal. Oct. 4, 2016)………………    11

22

*Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 n.4 (9th Cir. 2000)………………………    13

23

*Ford v. [24]7.AI, Inc.*, No. 5:18-cv-02770-BLF, 2022 U.S. Dist. LEXIS 16072

24
    (N.D. Cal. Jan. 28, 2022)…………………………………………………………..    7

25

*Gaston v. Fabfitfun, Inc.*, No. 2:20-cv-09534-RGK-E, 2021 U.S. Dist. LEXIS 250695

26
    (C.D. Cal. Dec. 9, 2021)……………………………………………………………    17

27

*G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 433

28
    (S.D.N.Y. 2012)………………………………………………………………    1

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

1
2

## TABLE OF AUTHORITIES

**Page**

3
4

*Gonzales v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013)……………….…...  10

5

*Gutierrez v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 67298
   (N.D. Cal. May 21, 2015)……………………………………………………………  11

6
7

*Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE),
   2010 U.S. Dist. LEXIS 71996, at *2-4 (S.D.N.Y. June 25, 2010)……………………  17

8

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)…………………….. 5, 8, 18

9
10

*Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994)………………………………….  13

11

*Hicks v. Toys 'R' Us-Del., Inc.*, No. CV13-1302 DSF (JCGx), 2014 WL 4670896
   (C.D. Cal. Sept. 2, 2014)………………………………………………………….  12

12
13

*Horsford v. Board of Trustees*, 132 Cal. App. 4th 359, 397 (2005)………………….  9

14

*In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM (JCGx)
   2014 U.S. Dist. LEXIS 184548, at *72 (C.D. Cal. July 28, 2014)…………………...  15

15
16

*In re Anthem*, 2018 U.S. Dist. LEXIS 140137, at *107……………………………….  17

17

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)………….. 7

18
19

*In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR 2021
   U.S. Dist. LEXIS 71965, at *40 (M.D. Fla. Apr. 14, 2021)……………………………  17

20

*In re: California Pizza Kitchen Data Breach Litigation*,
   Master File No. 8:21-cv-01923-DOC-KES (C.D. Cal. February 22, 2023)……………  8

21
22

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998,
   2010 U.S. Dist. LEXIS 87409, at *25-26 (W.D. Ky. Aug. 23, 2010)…………………..  17

23

*In re Equifax*, 2020 U.S. Dist. LEXIS 118209, at *191…………………………………  17

24
25

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21
   (D. Me. 2013)…………………………………………………………………  17

26

*In re Heritage*, 2005 WL 1594389, at *12……………………………………………15, 16, 19

27

*In re Hyundai*, 926 F.3d at 570………………………………………………………. 5, 8, 20

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-iii-

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

*In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD,
4
    2015 WK 428105, at *12 (N.D. Cal. Jan 30, 2015)……………………………… 11

5
*In re Omnivision Tech*s., 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008)……………… 18

6
*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
7
    903 F. Supp. 2d 942, 966 (S.D. Cal. 2012)…………………………………….. 16

8
*In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007)…………… 17

9
*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices,*
10
  *& Prods. Liab. Litig.*, 2013 WL 12327929, at *31 (C.D. Cal. July 24, 2013)………14, 16, 18

11
*In re Washington*, 19 F.3d 1291, 1299……………………………………………… 18

12
*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
13
    2017 WL 1352859, at *6 (N.D. Cal. Apr. 12, 2017)……………………………… 9

14
*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994)……. 10

15
*Johnson v. Powers*, 2019 U.S. Dist. LEXIS 79596, at *7-8 (E.D. Cal. May 10, 2019)…... 13

16
*Kissel v. Code 42 Software Inc.*, 2018 WL 6113078, at *4 (C.D. Cal. Feb. 20, 2018)…… 13, 18

17
*Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009)……... 14

18
*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)………………… 16

19
*Lymburner v. U.S. Fin. Funding, Inc.*, No. C-08-00325 EDL, 2012 WL 398816,
20
    (N.D. Cal. Feb. 7, 2012)…………………………………………………… 13

21
*Marshall v. Northrup Grumman Corp.*, No. 16-cv-6794, 2020 WL 5668935,
22
    (C.D. Cal. Sept. 18, 2020)………………………………………………… 11

23
*Pfeiffer v. Radnet, Inc.*, No. 2:20-cv-09553-RGK-SK, 2022 U.S. Dist. LEXIS 125933
24
    (C.D. Cal. Feb. 15, 2022)………………………………………………….. 16

25
*Pitarro v. DSV Air & Sea, Inc.*, No. 19-cv-00849-SK, 2021 WL 649973,
26
    (N.D. Cal. Jan. 28, 2021)…………………………………………………... 14

27
*Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010)……………… 11

28

---

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-iv-

1

**TABLE OF AUTHORITIES**

2
                                                                    **Page**

3
*Tallman v. CPS Sec. (USA), Inc.*, 23 F. Supp. 3d 1249, 1258 (D. Nev. 2014)…………… 12

4

5
*Velez v. Wynne*, 220 F. App'x 512 (9th Cir. 2007)………………………………………….. 13

6
*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-52 (9th Cir. 2002)…………………… 13

7
*Warshawsky v. CBDMD, Inc.*, No. 20-cv-00562 (W.D. N. C. Aug. 9, 2022)…………… 8

8
*Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997)………………………………… 16

9
*Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *20 (N.D. Cal. Mar. 24, 2017)………….. 15

10

11
**Other**                                                            **Page**

12
*2021 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates,*

13
    *Trends, and Practices*………………………………………………………………… 12

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-v-

## MEMORANDUM IN SUPPORT OF MOTION

Plaintiffs Evangelia Remoundos, John Biegger, and Anne Biegger ("Plaintiffs"), through their undersigned counsel and on behalf of themselves and the Settlement Class, respectfully move this Court for entry of an Order granting; (1) Class Counsel's requested attorneys' fees award of 175,000.00 inclusive of expenses; and (2) a payment of $2,000.00 each to Representative Plaintiffs Evangelia Remoundos, John Biegger, and Anne Beigger.

## I.    INTRODUCTION

This action arises out of a cyberattack ("Data Breach") on LendUS, LLC (hereafter "LendUS" or "Defendant") in which the personal information ("PII") of Plaintiffs and Class Members was compromised. Defendant notified the approximately 11,500 individuals impacted by the Data Breach of its occurrence in January 2022.

After the initial Complaint was filed, Class Counsel filed an Amended Class Action Complaint (the "Complaint"); exchanged informal discovery; agreed to engage in early mediation; and began engaging in arms-length settlement talks. In anticipation of mediation, the parties negotiated the terms of a Settlement Agreement over the course of several months and thereby reached a resolution. Subsequently, the Court held a hearing to adjudicate Preliminary Approval of that Settlement Agreement on August 25, 2022, prompting the parties to confer as to modifications of the agreement.[2] Plaintiffs then filed an Unopposed Renewed Motion for Preliminary Approval of Class Action Settlement on October 20, 2022, which the Court granted on December 20, 2022. Order Granting Preliminary Approval, ECF No. 44, Dec. 20, 2022.

---

[2] From this point, "Settlement Agreement" will refer to the modified version of the Settlement Agreement over which the Court granted Preliminary Approval on December 20, 2022.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-1-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The settlement is a resolution of this high-risk complex litigation and provides substantial monetary benefit to Settlement Class Members.  Through Class Counsel's efforts, the Amended Settlement Agreement provides that all class members may submit claims and receive: (1) reimbursement up to $500 for out-of-pocket expenses incurred as a result of the Data Breach, including expenses related to bank charges and fees, telephone related expenses, and lost time, with Defendant agreeing to pay a minimum of $13,884.00 to reimburse Settlement Class Members for lost time at a *pro rata* basis if fewer than 2% of Settlement Class Members claim lost time; (2) reimbursement of up to $2,500 for extraordinary expenses resulting from the Data Breach; and (3) cash payments of $100 to all members of the California Subclass who submit a valid claim with a minimum payment of $10,774 (2% minimum of the $538,700 made available to the California Subclass if all 5,387 Californians submit a claim for $100). The Settlement also includes automatic enrollment in 36 months of free identity-theft protection provided by Pango through its "Financial Shield" service and cybersecurity enhancements by Defendant to protect against future incidents. Finally, the Amended Settlement Agreement includes the provision that Defendant will pay all reasonable attorneys' fees awarded along with litigation costs, not to exceed $175,000.00.

For their efforts in achieving these results and consistent with the Amended Settlement Agreement, Class Counsel seek an award of attorneys' fees of $175,000.00 inclusive of litigation expenses. Class Counsel also seek a service award of $2,000.00 each to Plaintiffs Evangelia Remoundos, John Biegger, and Anne Biegger in recognition of the time, effort, and expense they incurred pursuing claims that benefited the Settlement Class. See S.A., § 7.3. The requested service award of $2,000.00 for each Plaintiff is reasonable and should be approved.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-2-

As discussed below, the fee request is reasonable when considered under the applicable Ninth Circuit standards and is well within the normal range of awards made in contingent-fee class actions in this Circuit. Under a lodestar calculation, Class Counsel have expended 279.9 hours for a total lodestar of $174,945.20 and $1,168.80 in expenses for a total of $176,114.00. Joint Decl., ¶ 20.

## II.    FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

In January 2022, LendUS notified approximately 11,500 individuals of the Data Incident. Complaint (Doc. 1), ¶¶ 10, 12, 14, 38. LendUS offered these individuals only one year of complimentary credit and identity monitoring services as a result of the Data Incident. *Id.*, ¶ 74. Plaintiffs brought this action on behalf of all persons whose PII Plaintiffs allege was compromised by LendUS's failure to: (i) adequately protect PII; (ii) warn of its inadequate information security practices; and (iii) effectively monitor its network for security vulnerabilities and incidents. Plaintiffs allege that LendUS's conduct amounts to negligence and violates federal and state statutes. *Id.*, ¶ 7. Plaintiffs, through this class action lawsuit, allege that they and Class Members have suffered injury as a result of LendUS's conduct, including: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Incident, including but not limited to lost time, and (iv) the continued and certainly increased risk to their PII, which remains in LendUS's possession and is subject to further unauthorized disclosures so long as LendUS fails to undertake appropriate and adequate measures to protect the PII. *Id.*, ¶ 8.

///

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-3-

On February 4, 2024, Plaintiffs filed this lawsuit asserting claims against LendUS relating to the Data Incident (the "Litigation"). Over the course of several months, Plaintiffs' counsel continued to investigate the facts of the Data Incident, and the Parties engaged in informal discovery, leading to informed settlement negotiations. ECF No. 40-2, ¶ 11. The parties then agreed to participate in early mediation. *Id*. With a mediation on the horizon, the parties continued to rigorously pursue arm's length settlement negotiations and were able to reach a settlement in principle on almost all essential terms of relief to the putative Class. *Id.* The parties executed the Settlement Agreement on June 20, 2022. *Id*., ¶ 2.

On August 25, 2022, the Court held a hearing on Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, (ECF Nos. 25-26). From that hearing, the Court ordered that Plaintiffs and Defendant (jointly the "Parties") further meet and confer on the terms of the proposed Settlement to address various concerns raised by the Court. After continuing the arms-length negotiations for several months, Plaintiffs filed an Unopposed Renewed Motion for Preliminary Approval of Class Action Settlement on October 20, 2022. (ECF No. 40). The Court granted Preliminary Approval on December 20, 2022. (ECF No. 44). Since preliminary approval was granted, Class Counsel has overseen the settlement administration process including the issuance of settlement notice to Class Members.

## III.    ARGUMENT

### A.    Legal Standard

Under Rule 23(h) of the Federal Rules of Civil Procedure the Court may award reasonable attorneys' fees and nontaxable costs in a certified class action based as permitted either by law or by the parties' agreement. Fed. R. Civ. P. 23(h). "Courts in this circuit determine attorney's fees in class actions using either the lodestar method or the percentage-of-recovery method." *In re*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-4-

*Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). The lodestar method "may prove more convenient" in a case where "valuing the settlement is difficult or impossible." *Id.* at 570 (citations omitted).

"Because this is not a common fund case and attorney's fees will be assessed against defendant without reducing the relief available to the class, it appears the lodestar method is the appropriate method for determining whether the attorney's fees provision at issue is reasonable at this stage." *Wilson v. Metals USA, Inc.*, 2019 U.S. Dist. LEXIS 39854, at *23 (E.D. Cal. Mar. 12, 2019)) (collecting cases); *see also*, *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016) (finding lodestar method appropriate "where the relief sought and obtained is not easily monetized, ensuring compensation for counsel who undertake socially beneficial litigation").

In data breach cases involving claims-made settlements like this one, courts usually award fees using the lodestar method and consider the value of the proposed settlement only for purposes of conducting a (optional) crosscheck. *See, e.g., Giroux v. Essex Prop. Tr., Inc.*, No. 16-CV-01722-HSG, 2019 WL 1207301, at *5 (N.D. Cal. May. 14, 2019) (awarding $140,000 in attorneys' fees using lodestar method (negative multiplier) because data breach settlement provided a "hybrid" of monetary and non-monetary relief (including credit monitoring) whose value was not "self-evident"); *Bahnmaier v. Wichita State Univ.*, No. 2:20-CV-02246-JAR-TJJ, 2021 WL 3662875, at *1 (D. Kan. Aug. 18, 2021) (similar); *Abubaker v. Dominion Dental USA, Inc.*, No. 119CV01050LMBMSN, 2021 WL 6750844, at *6 (E.D. Va. Nov. 19, 2021) (approving $1 million fee request using lodestar method (negative multiplier) with percentage crosscheck using the total settlement benefits (monetary and non-monetary)); *Fulton-Green v. Accolade, Inc.*, No. CV 18-274, 2019 WL 4677954, at *11 (E.D. Pa. Sept. 24, 2019) (approving $300,000.00

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-5-

in fees using lodestar method (negative multiplier) with percentage cross check (21%) using total value of monetary and non-monetary benefits (including credit monitoring)).

**B.      Claims-Made Settlements and Attorneys' Fees are Regularly Approved in Data Breach Class Action Litigation**

In *Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOx), 2022 U.S. Dist. LEXIS 210946 (C.D. Cal. Nov. 21, 2022), the court approved a claims made settlement with a very similar structure to the instant settlement, providing up to $300 per class member in ordinary expense reimbursement and lost time compensation, up to $5,000 per class member in extraordinary expense reimbursement, and two years of Pango's identity and fraud protection services, with an aggregate cap of $500,000 for the monetary relief. *Id.* at *4. In *Bosley* the Court approved not just the claims-made settlement but also the $262,505 attorneys' fees request. *Id.* at *38. Furthermore, the *Bosley* court addressed an issue which courts commonly raise with regard to similar such settlements: whether a claims-made settlement is a reverter clause in all but name. This Court raised a similar question in its Order re Supplemental Briefing. August 8, 2022, Order re Supplemental Breifing, (ECF. No. 31). The *Bosley* court's reasoning is instructive in this case and bears quotation in full:

> A reverter clause is one that "returns unawarded fees to the defendant, rather than the class." *Briseño v. Henderson*, 998 F.3d 1014 at 1023. Here, the parties are using a claims process—rather than creating a common fund—because the majority of the Class likely suffered no financial injury at all. As such, no money reverts back to Defendant but rather does not leave Defendant's pocket until a claim is made. Accordingly, this is not a true reverter clause. Moreover, the Court recognizes that distributing 'unclaimed' funds to the Class would result in many Class Members receiving a windfall for injuries they never suffered—and thus lack standing to prosecute. Awarding unclaimed reimbursements or deducted attorneys' fees to uninjured Class Members also contradicts clear Supreme Court authority. *See TransUnion v. Ramirez*, 141 S. Ct. 2190; *see also Shames v. Hertz Corp.*, No. 07-CV-2174-MMA (WMC), 2012 U.S. Dist. LEXIS 158577, 2012 WL 5392159, at *14 (S.D. Cal. Nov. 5, 2012) ("[B]ecause the attorneys' fees in this case are wholly separate from the class settlement—and will have no impact one way or the other on the amount the class recovers—a 'savings' for Defendants does not implicate

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-6-

the concerns the Ninth Circuit expressed about [a] 'kicker' provision."). Accordingly, there is no 'reverter' clause present in the Settlement, which tends to suggest the negotiations were free from collusion.

*Id.*, at *19-20.

Similarly, in *Schellhorn v. Timios, Inc.*, No. 2:21-cv-08661-VAP-(JCx), (C.D. Cal. Nov. 9, 2022), the court approved a claims-made settlement with very similar terms, but with less compensation to the Class, to the instant settlement, including reimbursements for lost time and out-of-pocket expenses, reimbursement for extraordinary expenses, identity theft protection, and a payment for statutory damages to a California subclass. *Id.*, ECF No. 52. In *Timios*, the court found the fact that attorneys' fees were not negotiated until after the substantive benefits to the class were agreed upon, which is also the case here, to be persuasive evidence that there was no collusion and therefore supported awarding reasonable attorneys' fees and approving the settlement. *See id.* at 7 ("Additionally, because the parties 'did not negotiate attorneys' fees until agreement on all substantive portions of the class resolution had been reached,' … there is little risk that Defendant agreed to 'excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class.'") (internal citations removed) (quoting *In re Bluetooth Headset Prod. Liab. Litig.,* 654 F.3d 935, 947 (9th Cir. 2011)).

In *Ford v. [24]7.AI, Inc.*, No. 5:18-cv-02770-BLF, 2022 U.S. Dist. LEXIS 16072 (N.D. Cal. Jan. 28, 2022), the consideration paid by [24]7.AI, Inc. to settle a data breach class action was up to $2,000 per class member in reimbursement for out-of-pocket expenses, including up to 5 hours at $20 per hour for lost time. *See id.* at *3-*5. There was no provision for any form of credit monitoring or identity theft insurance for the class members, or any payment for statutory claims to a California subclass. Despite providing fewer benefits for the class than the settlement in this case, the court in *[24]7.AI* approved that claims-made settlement and awarded the

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-7-

requested $450,000 in attorneys' fees without expressing any concern over the structure of the settlement. *Id.* at *20.

Other courts in California and across the country have approved similar claims-made settlements in data breach class actions and awarded reasonable attorneys' fees without finding any evidence of collusion between the parties. *See, e.g., Bowdle v. King's Seafood Company, LLC,* No. SACV 21-01784-CJC (JDEx) (C.D. Cal. Feb. 13, 2023); *In re: California Pizza Kitchen Data Breach Litigation,* Master File No. 8:21-cv-01923-DOC-KES (C.D. Cal. February 22, 2023); *Aguallo v. Kemper Corp.*, No. 1:21-cv-01883 (N.D. Ill. Oct. 14, 2021), ECF No. 53 (order approving settlement); *Warshawsky v. CBDMD, Inc.*, No. 20-cv-00562 (W.D. N. C. Aug. 9, 2022), ECF No. 21 (order approving settlement).

**C.    Class Counsel's Lodestar is Reasonable**

"The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate." *In re Hyundai*, 926 F.3d at 570 (quoting *Hanlon*, 150 F.3d at 1029).

**1.    The Number of Hours Class Counsel Billed are Reasonable**

The current billing rates for each attorney or staff who contributed to this case, along with the hours billed and resulting lodestar as of March 2, 2022, are set forth in the Joint Declaration at paragraph 20. Class Counsel maintained contemporaneous and detailed time records, which include a description of all work performed and expenses incurred. The time committed by each firm was necessary to the successful resolution of this litigation, and all attorneys made sure to efficiently allocate work, coordinate assignments, and prevent the unnecessary duplication of work. Joint Decl., ¶ 21, 23. The 279.9 hours billed by Class Counsel were reasonable, appropriate, and necessary for the effective prosecution of this case. Joint Decl., ¶ 21. This time included

investigating this case; drafting and finalizing the complaint; participating in settlement negotiations over the phone and via email; negotiating and drafting a complex Settlement Agreement and its several exhibits; discussing the notice and administration plans with the Settlement Administrator to ensure compliance with due process; moving for and successfully obtaining preliminary approval; monitoring the Notice Program and claims administration, including reviewing status reports and reviewing and editing notice documents; preparing for and attending the preliminary approval hearings; and preparing the instant Motion for Attorneys' Fees, and Service Awards to the Class Representatives. Joint Decl., ¶ 22.

Class Counsel's lodestar is not bloated by unnecessary duplication or inefficiencies. Joint Decl., ¶¶ 21-22. The number of attorneys and firms working on this case was limited to only three firms, and the team was a tight-knit group of lawyers who had experience working with each other in other data breach cases. *Id.* at ¶ 22. Class Counsel endeavored to prevent duplication of work and avoid inefficiencies that might otherwise have resulted from multiple firms working on this case. *Id.* Tasks were managed so as to promote efficiency and ensure continuity. *Id.* Because complex litigation often requires a team structure, courts have compensated time spent in collaborative efforts. *See Horsford v. Board of Trustees*, 132 Cal. App. 4th 359, 397 (2005) (finding time reasonable where multiple attorneys represented plaintiffs to prepare notes, attend conferences to discuss strategies, and assign tasks, as part of a "supervision structure within the plaintiffs' litigation team"). Although Plaintiffs were able to resolve the action before trial, courts recognize that Class Counsel "should not be 'punished' for efficiently litigating[.]" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 1352859, at *6 (N.D. Cal. Apr. 12, 2017).

Moreover, Class Counsel's responsibility for this case is far from over. Class Counsel

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-9-

must continue to work with the Claims Administrator, review and respond to questions from Settlement Class Members about the settlement and the claims adjudication process, and oversee the final administration of benefits to Settlement Class Members. Class Counsel will likely expend dozens of additional hours in this regard. Joint Decl., ¶ 20.

### 2. Class Counsel's Hourly Rates are Reasonable

"[P]revailing market rates in the relevant community set the reasonable hourly rate for purposes of computing the lodestar amount." *Gonzales v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). In general, "the relevant community is the forum in which the district court sits," *id.*, and because counsel should be compensated for the delay in payment, it is appropriate to apply each biller's current rates for all hours. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994). Counsel's rates are reasonable if they are within the range charged by and awarded to attorneys of comparable experience, reputation, and ability for similar work, *i.e.*, complex class action litigation. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

The hourly rates sought by Class Counsel range from $150 to $243 for paralegals, $275 to $625 for associates, and $675 to $950 for partners and senior attorneys. Joint Decl., ¶¶ 24-25. Only one partner, W.B. Markovits, from Markovits, Stock & DeMarco, LLC, who has more than forty years of class action litigation experience has an hourly rate among Class Counsel of $950 and was limited to just 7 hours of time spent on this case. *Id.* at ¶ 24. All other partners in Class Counsel have rates of $800 or below (Anderson Berry's highest hourly rate in this matter is $800, Mr. Coates's highest hourly rate if $730; and Mr. Lyons highest hourly rate is $695). *Id.* These rates are consistent with the prevailing market rates in this forum for attorneys of comparable experience, reputation, and ability and have been approved by the Ninth Circuit, this District, and judges in California federal courts. *See, e.g., Bosley, Inc.*, 2022 U.S. Dist. LEXIS 210946 at *25;

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-10-

*Arnold v. DMG Mori USA, Inc.*, No. 18-cv-02373, 2022 WL 18027883, at *4 (N.D. Cal. Dec. 20, 2022) ("The claimed 2021 billing rates of $950 and $550 are in line with prevailing market rates in this District, and so are reasonable."); *Carlotti v. ASUS Computer Int'l*, No. 18-cv-03369-DMR, 2020 WL 3414653, at *5 (N.D. Cal. 2020) (approving hourly rates from $950 to $1,025 for partners in a consumer class action settlement and listing cases approving similar rates); *Gutierrez v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 67298, at *14-15 (N.D. Cal. May 21, 2015) (rates ranging $475-$975 for partners, $300-$490 for associates, $150-$430 for paralegals and $250-$340 for litigation support staff); *In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, 2015 WK 428105, at *12 (N.D. Cal. Jan 30, 2015) (approving fees over eight years ago because "[i]n the Bay Area, reasonable hourly rates for partners ranged from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support from $150 to $240."); *Marshall v. Northrup Grumman Corp.*, No. 16-cv-6794, 2020 WL 5668935, at *7 (C.D. Cal. Sept. 18, 2020) (approving attorney rates between $490 and $1,060 per hour); *Alikhan v. Goodrich Corp.*, 2020 WL 4919382, at *8 (C.D. Cal. June 25, 2020) (approving rates of up to $950 per hour); *Edwards v. First Am. Corp.*, 2016 WL 8999934, at *5 (C.D. Cal. Oct. 4, 2016) (rates of up to $990 found reasonable); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (2008 hourly rates of up to $875 for a partner, and $700 for an attorney with 23 years of experience). Class Counsel's firm biographies, attached as Exhibits F, G and H to the Joint Declaration identify the vast experience Class Counsel have in data breach class actions such as this one thereby establishing the experience and subject matter knowledge supporting the customary hourly rates utilized in this data breach class action and in this forum. Joint Decl., at ¶ 24.

///

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-11-

Additionally, the *2021 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices* ("Real Rate Report") has often been consulted by courts as a useful guidepost to determine the reasonableness of hourly rates, including recently in the Central District of California in a very similar data breach case. *See, e.g., Bosley,* 2022 U.S. Dist. LEXIS 210946 *27. The Real Rate Report identifies attorney rates by location, experience, firm size, areas of expertise, and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices. *See Hicks v. Toys 'R' Us-Del., Inc.*, No. CV13-1302 DSF (JCGx), 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014). The Real Rate Report has been found to be "a much better reflection of true market rates than self-reported rates in all practice areas." *Id.*; *see also Tallman v. CPS Sec. (USA), Inc.*, 23 F. Supp. 3d 1249, 1258 (D. Nev. 2014) (considering the Real Rate Report); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 433 (S.D.N.Y. 2012) (same).

The Real Rate Report provides that, in Los Angeles in 2021, partners litigating consumer-related matters, such as data breach class actions, have hourly rates ranging from $304-$965 and associates have hourly rates ranging from $287-$719. *See* Real Rate Report at 138. Based on these numbers,[3] the range of $150 to $243 for paralegals, $275 to $625 for associates, and $675 to $950 for partners requested here is reasonable. Joint Decl., ¶¶ 24-25.

///

---

[3] In the 12 months between January 2021 and January 2022 the Consumer Price Index rose 7.5 percent.   https://www.bls.gov/opub/ed/2022/consumer-prices-up-7-5-percent-over-year-ended-january-2022.htm (last accessed Jan. 6, 2023). In the 12 months between November 2021 and November 2022, the latest data available, the Consumer Price Index rose 7.1 percent. https://www.bls.gov/cpi/ (last accessed Jan. 6, 2023). $719 in January 2021 has the same buying power as $818.31 in November 2022 (the most recent month available) and $965 in January 2021 has the same buying power as $1,098.23 in November 2022, putting the requested hourly rates squarely within the ranges provided in the Real Rate Report. *See* https://www.bls.gov/data/inflation_calculator.htm (last accessed Jan. 9, 2023).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-12-

### D.     Class Counsel's Resulting Lodestar is Reasonable and Does Not Require Adjustment

As the Ninth Circuit has held, the lodestar "presumptively provides an accurate measure of reasonable attorney's fees." *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994). Once calculated, the lodestar should be adjusted only in rare or exceptional cases. *See, e.g., Velez v. Wynne*, 220 F. App'x 512 (9th Cir. 2007) (district court abused its discretion by reducing the presumptively reasonable lodestar without an explanation of the exceptional circumstances supporting such reduction). There is a "strong presumption… that the lodestar figure represents a reasonable fee…" *Johnson v. Powers*, 2019 U.S. Dist. LEXIS 79596, at *7-8 (E.D. Cal. May 10, 2019) (quoting *Fischer v. SJB-P.D. Inc*., 214 F.3d 1115, 1119 n.4 (9th Cir. 2000)).

Here, the lodestar and expenses accrued by Plaintiffs thus far is slightly above the fee request meaning that Class Counsel's fee request will result in a *negative* multiplier on counsel's lodestar, not even considering the additional work that remains to be done. This strongly suggests that Class Counsel's requested fee is reasonable. *See, e.g., Lymburner v. U.S. Fin. Funding, Inc*., No. C-08-00325 EDL, 2012 WL 398816, at *6 (N.D. Cal. Feb. 7, 2012) (negative multiplier supports reasonableness of the fee request).

Courts in the Ninth Circuit consider a number of factors in setting an appropriate fee, including: (1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to the class beyond the immediate generation of a cash fund; (4) whether the percentage rate is above or below the market rate; (5) the contingent nature of the representation and the opportunity cost of bringing the suit; (6) reactions from the class; and (7) a lodestar cross-check. *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1048-52 (9th Cir. 2002); *see also Kissel v. Code 42 Software Inc*., 2018 WL 6113078, at *4 (C.D. Cal. Feb. 20, 2018). These factors support Class Counsel's fee request.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-13-

1

### 1.    Class Counsel Achieved a Favorable Result for the Class

2

"The overall result and benefit to the class from the litigation is the most critical factor in

3

granting a fee award." *Pitarro v. DSV Air & Sea, Inc.*, No. 19-cv-00849-SK, 2021 WL 649973,

4

at *2 (N.D. Cal. Jan. 28, 2021) ("The overall result and benefit to the class from the litigation is

5

the most critical factor in granting a fee award.").

6

7

Here, the settlement provides a range of recovery the Class Representatives and

8

Settlement Class Members likely would have recovered at trial: Settlement Class Members can

9

receive compensation for ordinary unreimbursed out-of-pocket losses of up to $500, including up

10

to three (3) hours at $20 per hour of lost time; up to $2,500 per claim for extraordinary out-of-

11

pocket expenses that occurred as a result of the Data Incident; a cash payment of $100 to each

12

member of the California Subclass; and three years of Pango's Financial Shield services providing

13

credit monitoring, fraud coverage, identity theft protection, and a $1,000,000 insurance policy

14

protecting each subscribing Settlement Class Member. ASA, ¶¶ 2.1-2.4. By settling and paying

15

Settlement Class Members now, practical remedies that have been absent become immediately

16

available. Even if Plaintiffs achieved a successful judgment, relief to Settlement Class Members

17

would likely be forestalled for years following the exhaustion of appeals.

18

19

The results achieved here are substantial and timely and support Class Counsel's fee

20

request.

21

22

### 2.    Class Counsel Performed Superior Quality Work to Achieve the Settlement

23

24

"Courts have recognized that the 'prosecution and management of a complex national

25

class action requires unique legal skills and abilities.'" *In re Toyota Motor Corp. Unintended*

26

*Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 2013 WL 12327929, at *31 (C.D. Cal.

27

July 24, 2013) (quoting *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *6 (N.D. Cal. Feb.

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-14-

2, 2009)). When evaluating this factor, the "single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *In re Heritage*, 2005 WL 1594389, at *12 (citations omitted). As set forth above, the results achieved are significant.

Moreover, in setting fee awards, courts also consider counsel's experience and skill. *Hanlon*, 150 F.3d at 1029; *Chambers*, 214 F. Supp. 3d at 902. Class Counsel's skill and experience in complex class action litigation also favor the requested fee award here. The descriptions of the backgrounds of Class Counsel demonstrate that Class Counsel are experienced in the highly specialized field of class action litigation, well credentialed, and equal to the difficult and novel tasks at hand. Joint Decl., ¶ 24. Class Counsel's fee request is commensurate with that experience, which they were able to leverage to procure the settlement. The skill demonstrated by Class Counsel in developing the Complaint, preparing opposition to Defendant's Motion to Dismiss, negotiating with defense counsel and settling the action early further supports the fees requested. *See Vizcaino*, 290 F.3d at 1050, n.5; *Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *20 (N.D. Cal. Mar. 24, 2017) (class counsel's consumer class action expertise allowed for a result that "would have been unlikely if entrusted to counsel of lesser experience or capability" given the "substantive and procedural complexities" and the "contentious nature" of the settlement); *Allagas v. BP Solar Int'l, Inc.*, 2016 U.S. Dis. LEXIS 187785, at *5 (N.D. Cal. Dec. 22, 2016) (class counsel that were "highly experienced in prosecuting and settling complex class actions" factors in favor of requested fee).

Class Counsel were also equal to the experience and skill of the lawyers employed by LendUS, a factor to be considered here. *See In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM (JCGx) 2014 U.S. Dist. LEXIS 184548, at *72 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-15-

quality of opposing counsel as a measure of the skill required to litigate the case successfully.")
(citing W*ing v. Asarco Inc*., 114 F.3d 986, 989 (9th Cir. 1997)). Defendant was represented in
this case by a national, highly respected law firm (BakerHostetler LLP) with significant resources
and substantial experience defending consumer and data breach class actions. This factor,
therefore, weighs in favor of the requested fee award.

### 3.    The Litigation was Risky, Complex, and Expensive

Another factor to consider in determining attorneys' fees is the risk counsel took of "not
recovering at all, particularly in a case involving complicated legal issues." *In re Toyota*, 2013
WL 12327929, at *31 (C.D. Cal. July 24, 2013) (internal alterations and citations omitted); *see
also In re Heritage*, 2005 WL 1594389, at *14 ("The risks assumed by Class Counsel, particularly
the risk of non-payment or reimbursement of costs, is a factor in determining counsel's proper
fee award.").

Although nearly all class actions involve a high level of risk, expense, and complexity—
undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska
P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is a complex class action in an especially risky
area. "Historically, data breach cases have had great difficulty in moving past the pleadings stage
and receiving class certification." *Pfeiffer v. Radnet, Inc.*, No. 2:20-cv-09553-RGK-SK, 2022
U.S. Dist. LEXIS 125933, at *6-7 (C.D. Cal. Feb. 15, 2022); *see also, e.g., Antman v. Uber Techs.,
Inc.*, No. 3:15-cv-01175, 2015 U.S. Dist. LEXIS 141945, at *29 (N.D. Cal. Oct. 19, 2015)
(holding that the risk that plaintiff's identity could be stolen was insufficient to confer standing
based on a data breach exposing plaintiff's name and driver's license number); *In re Sony Gaming
Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012) (loss
of personal information and allegations of a heightened risk of identity theft, without more, calls

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-16-

standing into question); *Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE), 2010 U.S. Dist. LEXIS 71996, at *2-4 (S.D.N.Y. June 25, 2010) (collecting cases and noting that "every court to [analyze data breach cases] has ultimately dismissed under Rule 12(b)(6) . . . or under Rule 56 following the submission of a motion for summary judgment"); *see also In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 U.S. Dist. LEXIS 87409, at *25-26 (W.D. Ky. Aug. 23, 2010) (approving a data breach settlement in part because "proceeding through the litigation process in this case is unlikely to produce the plaintiffs' desired results").

Moreover, "[h]istorically, data breach cases have experienced minimal success in moving for class certification." *Gaston v. Fabfitfun, Inc.*, No. 2:20-cv-09534-RGK-E, 2021 U.S. Dist. LEXIS 250695, at *6 (C.D. Cal. Dec. 9, 2021).[4]  Even if this Court had granted in full Plaintiffs' motion for class certification, the inherent risks attendant to trying a data breach class action would have only magnified the difficult legal questions at issue here. *See, e.g., In re Anthem*, 2018 U.S. Dist. LEXIS 140137, at *107 ("[C]lass certification was not guaranteed, in part because Plaintiffs had a scarcity of precedent to draw on."); *In re Equifax*, 2020 U.S. Dist. LEXIS 118209, at *191. Although Plaintiffs believe they would have prevailed in this action, a verdict for the defense was entirely possible.

///

---

[4] *See also, Adkins v. Facebook, Inc*., No. C 18-05982 WHA, 2019 U.S. Dist. LEXIS 206271, *691 (N.D. Cal. Nov. 26, 2019) (granting motion to certify injunctive-only class, but denying motion to certify damages and issues classes in data breach class action); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (denying class certification in data breach action); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007) (same). *Cf In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR 2021 U.S. Dist. LEXIS 71965, at *40 (M.D. Fla. Apr. 14, 2021) ("The Court acknowledges it may be the first to certify a Rule 23(b)(3) class involving individual consumers complaining of a data breach involving payment cards….").

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-17-

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. Data breach cases are among the riskiest and most uncertain of all class action litigation, making settlement the more prudent course when a reasonable deal is available.

Here, the litigation was fraught with numerous risks. While Class Counsel were confident in Plaintiffs' claims, there is a recognized element of risk in any litigation, particularly complex and expensive data breach class litigation. *See In re Omnivision Tech*s., 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) ("The risk that further litigation might result in plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees.").

### 4.    Class Counsel Worked on a Contingent Basis

"Attorneys are entitled to a larger fee award when their compensation is contingent in nature." *In re Toyota*, 2013 WL 12327929, at *32 (citing *Vizcaino*, 290 F.3d at 1048-50); *see also Kissel*, 2018 WL 6113078, at *5. "[W]hen counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 261 (N.D. Cal. 2015). The potential of receiving little or no recovery in the face of increasing risk weighs in favor of the requested fee. *See In re Washington*, 19 F.3d 1291, 1299; *Ching v. Siemens Indus*., 2014 U.S. Dist. LEXIS 89002, at *25 (N.D. Cal. Jun. 27, 2014) ("Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work.").

Here, Defendant adamantly denied (and continues to deny) any wrongdoing, much less a legal entitlement to class certification or any recovery. The path to establishing liability was

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-18-

particularly challenging given these risks. Class Counsel have already exceeded the $175,000.00 fee and expense request, having invested $174,945.20 in lodestar in a case that could have failed, and advanced over $1,168.86 in litigation expenses. Joint Decl., ¶ 20. In all, Class Counsel and their staff have spent approximately 280 hours investigating, analyzing, researching, litigating, and negotiating a favorable resolution of this case, as well as incurring $1,168.86 in necessary litigation expenses. *Id*. Class Counsel's overall lodestar in prosecuting this matter will greatly exceed the $175,000.00 fee request due to the fact that dozens of hours will continue to be expended seeing this case through final approval and overseeing settlement administration including the distribution of settlement befits. Class Counsel expended these resources despite the genuine risk that they would never be compensated at all—not only in this litigation. Moreover, Class Counsel faced a defendant with ample resources to vigorously fight the litigation, represented by experienced counsel. Forgoing other work, Class Counsel litigated this class action on a purely contingent basis. Joint Decl., ¶ 26. The risk of non-recovery is sufficiently substantial to justify the instant fee request.

### 5.    The Reaction of the Class Supports the Fee Request

The absence of objections or disapproval by class members to Class Counsel's fee request further supports finding the fee request reasonable. *See In re Heritage Bond Litig*., 2005 WL 1594389, *15-16. Settlement Class Members have until March 20, 2023 to file objections or request exclusion, and there are no objections and only one exclusion request to date. Declaration of Scott M. Fenwick of Kroll Settlement Administration LLC in Connection with Final Approval of Class Action Settlement ("Kroll Decl."), ¶ 14. The absence of objections and only 1 exclusion to date is further evidence that the amount of attorneys' fees is reasonable. *See, e.g., Jarrell v. Amerigas Propane, Inc*., 2018 U.S. Dist. LEXIS 58619, at *8-9 (N.D. Cal. Apr. 5, 2018).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-19-

6.    **Although Unnecessary, a Percentage Crosscheck Confirms the Reasonableness of the Fee Request**

The Ninth Circuit recently held that it does "not require courts employing the lodestar method to perform a 'crosscheck' using the percentage method." *In re Hyundai*, 926 F.3d at 571. This would make "little logical sense," it explained, because "the lodestar method yields a fee that is presumptively [reasonable]." *Id*. (internal citations omitted).

However, if the Court were inclined to conduct a percentage crosscheck, it would only confirm the reasonableness of Class Counsel's request. When doing a percentage crosscheck, attorneys' fees are "calculated on the basis of the ***total fund made available*** rather than the actual payments made to the class." *Lealao v. Beneficial Cal., Inc*., 82 Cal. App. 4th 19, 51 (2000) (emphasis added) (citing *Williams v. MGM-Pathe Commc'ns Co*., 129 F.3d 1026 (9th Cir. 1997). *See also Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990 ("attorneys' fees sought under a common fund theory should be assessed against every class members' share, not just the claiming members.") (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81 (1980)); *Estrada v. iYogi, Inc*., No. 2:13-cv-01989 WBS CKD, 2016 U.S. Dist. LEXIS 8947, at *18 (E.D. Cal. Jan. 26, 2016) ("Where there is a claims-made settlement . . . the percentage of the fund approach . . . is based on the total money available to class members, not just the money actually claimed."); *Glass v. UBS Fin. Servs., Inc*., No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *50 (N.D. Cal. Jan 26, 2007) (the court "must award fees as a percentage of the entire fund, or pursuant to the lodestar method, not on the basis of the amount of the fund actually claimed by the class").

Fundamentally, in addition to the potential cash benefits outlined above, Settlement Class Members will be provided with free access to Pango's Financial Shield for a period of three years from the Effective Date. ASA, ¶ 2.4. Financial Shield includes the following services: transaction

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-20-

monitoring, bank and financial account monitoring, home title and property title monitoring, security freeze capability, monthly spending graphs, dark web monitoring, authentication alerts, fictitious identity monitoring, high risk transaction monitoring, identity and financial fraud restoration services, and $1 million in insurance provided by AIG. ASA, ¶ 2.4; Decl. of Gerald W. Thompson, ¶ 6.

This service is sold to consumers for a range of $8-$10 per month ($96-$120 per year). *Id.*, ¶ 9. Even using the lower amount in that range, the value of providing Identity Defense to all 11,570 Settlement Class Members for 36 months is $3,332,160. *Id.* at ¶ 9.

In data breach class action cases where a component of the recovery is the provision of credit monitoring and identity protection services, the retail value per settlement class member of such a product has been included in determining the value of the settlement for purposes of assessing the reasonableness of class counsel's fee requests. For example, in *Aguallo v. Kemper Corp.,* No. 1:21-cv-01883 (N.D. Ill.), the Court granted final approval and approved plaintiffs' counsel's fees and expenses request of $2,500,000.00 based on a valuation of the settlement at $17.1 million, which included the value of Aura Financial Shield (a similar product offered by Pango), which was valued as being worth "conservatively" $12.1 million in that matter even if only 1 percent of the Class claimed those benefits. *See id.*, ECF Nos. 53, 46-1.

The remedial measures and commitments being made by Defendant in the Settlement Agreement over the next 36 months are also a tangible value to the Settlement Class. Defendant estimated at the time the Settlement Agreement was executed that these remedial measures would cost it approximately $228,800. Settlement Agreement, ¶ 2.3; Second Declaration of M. Anderson Berry In Support of Plaintiffs' Unopposed Renewed Motion for Preliminary Approval of Class Action Settlement, at ¶ 13.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-21-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Therefore, taken together, the value of the settlement is, at a minimum, $3,836,880.40, which includes: (1) $13,884 for lost time (based on the 2% minimum for this Settlement benefit); (2) $10,774 for the CCPA payments to California Class Members (based on the 2% minimum for this Settlement benefit); (3) $3,332,160 for the value of Financial Shield; (4) $228,800, the value of the remedial measures agreed to by Defendant as part of the settlement; (5) $175,000 in requested attorneys' fees and costs; and (6) $76,262.40 in notice and administration expenses. Joint Decl., ¶ 12. Class Counsel's fee request inclusive of expenses of $175,000.00 therefore equates to 4.6% of the value of the settlement.

Plaintiffs' attorneys' fees request is reasonable as a percentage of the recovery using either of these calculations and should be approved.

### E. The Court Should Grant a Service Award to the Class Representatives

Class Counsel also request that the Court approve a service award in the amount of $2,000.00 for each Class Representative. Service awards are typical in class actions, and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

Plaintiffs expended considerable effort on behalf of the Settlement Class by, among other things: (1) meeting with Class Counsel at the outset of the case; (2) assisting with investigation of the facts; (3) reviewing the complaint prior to filing; and (4) consulting with Class Counsel during the litigation and settlement negotiations. *See* Declaration of Declaration of Evangelia Remoundos attached Exhibit A to the Joint Declartion; Joint Declaration of John Biegger and Anne Biegger attached as Exhibit B to the Joint Declaration. filed herewith. Plaintiffs'

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-22-

commitment to the Class's interests and their desire to remedy the claims, not just for themselves, but also the entire class, was essential to the successful and timely prosecution of this class action and, in Class Counsel's view, warrants recognition in the form of the requested service award. The work that Plaintiffs performed, including their best estimates of the hours they spent in the prosecution of this case, are contained in their declarations. *Id.*

The $2,000 award sought will not affect the benefits provided to any of the Settlement Class Members and falls at the lower end of the spectrum of amounts awarded in comparable cases. *See, e.g., Pauley*, 2020 U.S. Dist. LEXIS 187614, at *9 ("$5,000 is a presumptively reasonable award"); *In re Mego Fin. Corp.*, 213 F.3d at 457, 463 (9th Cir. 2000) (service awards of $5,000); *Resnick v. Frank*, 779 F.3d 934, 941 (9th Cir. 2015) (approving service awards of $5,000 to class representatives in a consumer case). Moreover, the requested service award is comparable to service awards approved in other data breach cases with similar settlements. *See, e.g., Timios*, No. 2:21-cv-08661-VAP-(JCx), at ECF No. 52 (approving $2,500 service awards for class representatives). In light of Class Representatives' willingness to step forward on behalf of consumers on a class-wide basis, the Court should grant the requested service award.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant the instant motion for entry of an Order approving Class Counsel's request for: (i) an attorneys' fees and expense reimbursement award in the amount of $175,000.00; and (ii) payment of a Service Award of $2,000 to each Class Representative.

DATED:  March 3, 2023                   Respectfully Submitted,

                                        */s/ M. Anderson Berry*
                                        M. ANDERSON BERRY (SBN 262879)
                                        **CLAYEO C. ARNOLD,**
                                        **A PROFESSIONAL LAW CORP.**

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-23-

865 Howe Avenue
Sacramento, CA 95825
Tel: (916) 239-4778
aberry@justice4you.com

Terence R. Coates (admitted *Pro Hac Vice*)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E Court St., Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
Fax: (513) 665-0219
tcoates@msdlegal.com

Joseph M. Lyon (admitted *Pro Hac Vice*)
**THE LYON FIRM, LLC**
2754 Erie Avenue
Cincinnati, OH 45208
Phone: (513) 381-2333
Fax: (513) 766-9011
jlyon@thelyonfirm.com

*Attorneys for Plaintiffs and the Proposed Classes*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
EXPENSES AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT
Case No. 3:20-cv-00812

-24-